1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   THOMAS R. KAUFMAN, Cal. Bar No. 177936
2  tkaufman@sheppardmullin.com
   PAUL BERKOWITZ, Cal. Bar No. 251077
3  pberkowitz@sheppardmullin.com
   RACHEL P. HOWARD, Cal. Bar No. 273968
4  rhoward@sheppardmullin.com
   1901 Avenue of the Stars, Suite 1600
5  Los Angeles, California 90067-6055
   Telephone:  310.228.3700
6  Facsimile:   310.228.3701

7  Attorneys for Defendants
   COX COMMUNICATIONS CAL., LLC,
8  AND COX COMMUNICATIONS, INC.

9

                    UNITED STATES DISTRICT COURT
10
                   CENTRAL DISTRICT OF CALIFORNIA
11

12
   CHRISTONE FELTZS, on behalf of        Case No. 8:19 cv 02002
13 himself and others similarly situated
                                         **DEFENDANTS' NOTICE OF**
14                Plaintiff,             **REMOVAL OF ACTION**
                                         **PURSUANT TO 28 U.S.C §§ 1332,**
15 v.                                    **1441 AND 1446 (CLASS ACTION**
                                         **FAIRNESS ACT OF 2005)**
16 COX COMMUNICATIONS CAL.,
   LLC, a Delaware Limited Liability
17 Company; COX ENTERPRISES, INC.,
   a Delaware Corporation; COX           [Orange County Case No.
18 COMMUNICATIONS, INC., a               30-2019-01086069-CU-OE-CXC]
   Delaware Corporations; and DOES 1
19 through 100, inclusive,               Complaint Filed:  July 26, 2019

20                Defendants.

21

22

23

24

25

26

27

28

SMRH:4834-4169-8216.1

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL
DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL
OF RECORD:**

**PLEASE TAKE NOTICE** that, Defendants Cox Communications
California, LLC and Cox Communications, Inc. (collectively, "Defendants"),[1]
hereby remove the above-entitled action from the Superior Court of the State of
California in and for the County of Orange, to the United States District Court for
the Central District of California.  This Court has original subject matter jurisdiction
over Plaintiff's lawsuit under the Class Action Fairness Act of 2005 ("CAFA"), 28
U.S.C §§ 1332(d)(2) and 1453, because minimum diversity exists and the amount in
controversy exceeds $5 million.  Accordingly, removal is proper based on the
following grounds:

<u>**BACKGROUND**</u>

1.      On or about July 26, 2019, Plaintiff Christone Feltzs ("Plaintiff"),
individually and on behalf of all others purportedly similarly situated, filed a
Complaint against Defendants in the Superior Court of the State of California,
County of Orange, Case No. 30-2019-01086069-CU-OE-CXC (the "Complaint").
The Complaint asserted class claims for relief against Defendants arising out of
Plaintiff's employment with Defendant Cox Communications California, LLC
("Cox California").  Specifically, Plaintiff asserted class claims for Cox California's
alleged (1) failure to pay wages as a result of "illegal rounding;" (2) failure to
provide meal periods; (3) failure to pay all wages due at separation; (4) failure to
provide accurate wage statements; and (5) unfair competition.  Plaintiff asserted his
class claims on behalf of himself and all other technicians who worked in California
"providing installation and maintenance services" (referred to herein as Universal

---

[1]      Plaintiff was employed by Cox Communications California, LLC and no
other entity.  For purposes of this removal, however, the distinction between the
various defendant entities is irrelevant.

-1-

Home Technicians or "UHTs") from July 26, 2015 to the present.  Plaintiff made no specific allegations in the Complaint of the amount in controversy or even the size of the putative class (other than generically asserting that the class includes "over 50 people").[2]  A true and correct copy of the original Complaint is attached hereto as **Exhibit "A."**

2.      On August 21, 2019, Defendants accepted service of the Complaint by executing notices of acknowledgement of receipt (one for each entity).  A true and correct copy of those notices of acknowledgement of receipt are attached hereto as **Exhibit "B."**

3.      On October 16, 2019, before Defendants responded to the Complaint, Plaintiff filed a First Amended Complaint to add additional derivative penalty claims under the California Labor Code Private Attorneys General Act ("PAGA"). Plaintiff filed the First Amended Complaint after waiting the statutory 65 days following his electronic submission to the state Labor Workforce and Development Agency of a letter setting forth the underlying basis of the PAGA claims.  A true and correct copy of the First Amended Complaint is attached hereto as **Exhibit "C."**

4.      On October 18, 2019, Defendants answered the First Amended Complaint, by filing a general denial in the Orange County Superior Court.[3]  A true and correct copy of the Answer to the First Amended Complaint is attached hereto as **Exhibit "D."**  Exhibit "A" through "D" represent all pleadings and process filed in this action through the date of removal.

---

[2]      First Amended Complaint ¶ 43.

[3]      The caption of the Complaint and First Amended Complaint also name Cox Enterprises, Inc. ("CEI") as a defendant, but Plaintiff has not served CEI. Multiple district courts throughout the United States (including the Eastern and Southern Districts of California) have recognized that CEI is merely the parent of Cox Communications, Inc. and is not the employer of its direct or indirect subsidiaries' employees.  Those same courts also found that California lacked personal jurisdiction over CEI.

-2-

## MINIMUM DIVERSITY EXISTS UNDER CAFA

5.     The Court has original jurisdiction of this action under the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part in 28 U.S.C. § 1332(d)(2). Specifically, this action is removable, pursuant to the provisions of 28 U.S.C. §1441(a), as the amount in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which at least one class member is a citizen of a state different from that of at least one defendant.

6.     To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists – i.e., that one putative class member is a citizen of a different state from that of one defendant.  28 U.S.C. § 1332(d)(2)*; see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement). Not only does minimal diversity exist, but complete diversity of citizenship exists because Plaintiff is a citizen of California while Defendants are citizens of Georgia and Delaware.[4]

7.     Plaintiff Christone Feltzs is, and at all times relevant to this action was, a resident of California.  He worked for Cox California in Foothill Ranch, California and, at the time the lawsuit was filed, he was working for Dish Network in Riverside, California.  He resides in California, has a California drivers' license, is registered to vote in California, and pays income taxes in California.  Residence is prima facie evidence of domicile. *See State Farm Mut. Auto. Ins. Co. v. Dyer*, 19

---

[4]     Although its citizenship is irrelevant to removal, unserved defendant Cox Enterprises, Inc. is also a citizen of Delaware and Georgia, so considering it would not defeat diversity jurisdiction in any event.  Specifically, CEI is incorporated in Delaware with its principal place of business in Atlanta, Georgia.

-3-

1   F.3d 514, 520 (10th Cir. 1994).  In sum, Plaintiff qualifies under CAFA as a citizen

2   of California.

3       8.      For diversity purposes, a limited liability company is a citizen of "every

4   state of which its owners/members are citizens."  *Johnson v. Columbia Properties*

5   *Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  Its members are viewed under

6   the same analyses as for any other entity, such that a corporation is deemed to be a

7   citizen of the state in which it has been incorporated and the state where it has its

8   principal place of business.  See 28 U.S.C. § 1332(c)(1).  A corporation's "'principal

9   place of business' refers to the place where the corporation's high level officers

10  direct, control, and coordinate the corporation's activities," i.e., the corporation's

11  "nerve center."  *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1186 (2010).  The relevant

12  considerations under the "nerve center" test include the following: (a) where the

13  directors and stockholders meet; (b) where the executives live and have their offices;

14  (c) where the administrative and financial offices are located and the records kept;

15  (d) where the corporate income tax return is filed; (e) where the "home office" is

16  located; and (f) where day-to-day control of the business is exercised.  *Unger v. Del*

17  *E. Webb Corp.*, 233 F. Supp. 713, 716 (N.D. Cal. 1964).

18      9.      The proper defendant here, Cox California, is not a citizen of

19  California.  Cox California is a limited liability company organized under the laws

20  of Delaware.  Its sole member is Cox Communications, Inc.  Cox Communications,

21  Inc. is incorporated in Delaware, with its principal place of business located in

22  Georgia.  Cox Communications, Inc.'s corporate headquarters, located in Atlanta,

23  Georgia, is the actual center of direction, control and coordination of all major

24  human resources, payroll, legal and administrative functions.  The respective

25  officers for these departments work in Atlanta, Georgia and are responsible for

26  developing policies and protocols for Cox Communications, Inc.'s nationwide

27  operations.  As such, Cox Communications, Inc.'s corporate headquarters and nerve

28  center were, at the time of filing of the state court action, and remain to date, located

SMRH:4834-4169-8216.1

1   in Atlanta, Georgia.  Accordingly, because Cox Communications, Inc. is a citizen of

2   Delaware and Georgia and Cox Communications California, LLC is also a citizen of

3   these states and not California.

4        10.    **Doe Defendants**: Pursuant to 28 U.S.C. Section 1441(a), the residence

5   of fictitious and unknown defendants should be disregarded for purposes of

6   establishing removal jurisdiction under 28 U.S.C. Section 1332.  *Fristos v. Reynolds*

7   *Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not

8   required to join in a removal petition).  Thus, the existence of Doe defendants 1

9   through 100, inclusive, does not deprive this Court of jurisdiction.

10  **DEFENDANTS' REMOVAL IS TIMELY AS DEFENDANTS HAVE NEVER**
    **BEEN PRESENTED WITH A PLEADING OR OTHER PAPER THAT HAS**
11  **AFFIRMATIVELY REVEALED THAT THE AMOUNT IN**
    **CONTROVERSY EXCEEDS $5,000,000**

12       11.    28 U.S.C. Section 1446(b) provides two separate triggers for CAFA's

13  30-day deadline for removal.  Section 1446(b)(1) requires the notice of removal to

14  be filed 30 days after the defendant receives the initial pleading, but Section

15  1446(b)(3) provides that "if the case stated by the initial pleading is not removable"

16  the defendant can remove within 30 days after receipt of "a copy of an amended

17  pleading, motion, order or *other paper* from which it may first be ascertained that

18  the case is one which is or has become removable."  If a plaintiff's complaint,

19  pleadings, or other papers served on or received by a defendant do not affirmatively

20  reveal on their face that the amount in controversy exceeds $5,000,000, Section

21  1446(b)'s two separate 30-day removal periods *never* begin to run, and a defendant

22  in a CAFA case may remove the case "at any time."  *Kuxhausen v. BMW Fin.*

23  *Services NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013); *see also Roth v. CHA*

24  *Hollywood Med. Ctr., LP*, 720 F.3d 1121, 1125-26 (9th Cir. 2013) ("A CAFA case

25  may be removed ***at any time***, provided that neither of the two thirty-day periods

26  under § 1446(b)(1) and (b)(3) has been triggered.") (citations omitted) (emphasis

27  added); *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005)

28

1    (holding that for either 30-day period to be triggered, the ground for removal must

2    be shown in "the four corners of the applicable pleadings" or "from the face of the

3    document").

4         12.    Further, this "bright-line" requirement makes clear that the defendant

5    has no obligation to investigate or develop additional information as to

6    removability:  "[N]otice of removability under § 1446(b) is determined through

7    examination of the four corners of the applicable pleadings, not through subjective

8    knowledge or a duty to make further inquiry" by the defendant.  *Harris*, 425 F.3d at

9    694; *see also Kuxhausen*, 707 F.3d at 1141 ("[The defendant] was not obligated to

10   supply information which [the plaintiff] had omitted."); *Roth*, 720 F.3d at 1125

11   ("even if a defendant could have discovered grounds for removability through

12   investigation, it does not lose the right to remove because it did not conduct such an

13   investigation").  In other words, only a pleading or other paper served on or received

14   by the defendant may trigger either 30-day period, not the defendant's own

15   knowledge of jurisdictional information.  *See Kuxhausen*, 707 F.3d at 1141 n. 3 ("It

16   bears repeating that whether a defendant can establish that federal jurisdiction exists

17   and the question of when the thirty-day time period begins are not two sides of the

18   same question."); *see also Vigil v. Waste Connections, Inc.,* 2015 WL 627877, *2

19   (E.D. Cal. Feb. 11, 2015) (despite the fact that defendant already knew the

20   jurisdictional fact that the parties were diverse, removal was timely when filed

21   within 30 days of plaintiffs' discovery response stating their citizenship,

22   "[r]egardless of when [defendant] learned the parties were diverse").

23        13.    The Ninth Circuit recognized in *Roth* that the unlimited removal time

24   available to defendants in some CAFA cases means that "defendants may

25   sometimes be able to delay filing a notice of removal until it is strategically

26   advantageous to do so." *Id*. at 1126  (explaining that "plaintiffs are in a position to

27   protect themselves" from such a risk simply by making their pleadings sufficiently

28   definite).

SMRH:4834-4169-8216.1

14.     Here, as set forth above, Plaintiff has never presented a pleading or other papers affirmatively revealing that the amount in controversy exceeds $5,000,000.  Rather, as explained below Defendants have determined the amount in controversy as a result of Cox California's own investigation of its payroll and timekeeping records during the relevant period.  Accordingly, Defendants' removal is timely notwithstanding that it is happening more than 30 days after service of the original complaint.

## AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION

19.     Pursuant to CAFA, the amount in controversy is satisfied when the aggregated claims of the individual members in a class action exceed the sum of $5 million.  *See* 28 U.S.C. § 1332(d)(6).  Without making any admission of liability or damages with respect to any aspect of this case, or to the proper legal test(s) applicable to Plaintiff's claims, the alleged amount in controversy in this class action exceeds, in the aggregate, $5,000,000.  This conclusion is based on the known information set forth in the paragraphs below.  The Ninth Circuit recently reaffirmed that, in considering amount in controversy, the Court may rely upon plausible assumptions consistent with the pleading in the operative complaint in calculating the amount in controversy.  *See Arias v. Residence Inn by Marriott*, 963 F.3d 920, 927 (9th Cir. 2019) (reversing remand order and finding that defendant had satisfied amount in controversy requirement through reasonable assumptions: "assumptions made as part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'").[5]

---

[5]     There is no requirement at the removal stage to attach evidence to the petition support the factual allegations in the removal.  Rather, removal is governed by Rule 8 requiring only a "short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547,553 (2014).

SMRH:4834-4169-8216.1

a.     **The proposed class.**  Plaintiff worked for Cox as a Universal Home Technician or "UHT" from approximately February 2018 to December 2018. Although the proposed class definition is arguably broader than just California UHTs, for purposes of defining the class, Cox will operate on the assumption that the class is limited to the 520 individuals who it has identified from its timekeeping records as having held during the class period the job title of UHT (or a variation on UHT) that Plaintiff held.[6]

b.     **Wages Arising From Alleged Illegal Rounding**

Plaintiff asserts that Cox had an unlawful rounding policy that, in combination with an attendance policy, caused members of the putative class to be "systematically underpaid each pay period during the relevant time period."  (First Amended Complaint ¶¶ 59-60).  Plaintiff further contends the putative class is entitled to recover the unpaid wages plus an equal amount as liquidated damages (First Amended Complaint ¶¶ 59, 61).  Through September 13, 2019, Cox California's records reflect that UHTs worked a total of 244,309 workdays during the period relevant to the unpaid wages claim.  Assuming conservatively that the rounding of UHTs' time led to employees being systematically underpaid by two minutes per workday, that would translate into an underpayment of 8,142 hours for the period.  The average UHT compensation during this period was $31.68.  At that rate, the potential damages would be $257,938 plus an equal amount in liquidated damages for a total of **$515,876.**

c.     **Premium Pay for Failure to Provide Meal Periods.**  Plaintiff's meal period claim asserts that the UHTs in the proposed class were never provided meal periods when they worked more than 10 hours in a workday.  More specifically, Plaintiff asserts that putative class members "***consistently*** worked over

---

[6]     These 520 individuals constitute a putative class that is large enough to satisfy the minimum class size requirement under CAFA.  28 U.S.C. § 1332(d)(5)(B) (minimum class size of 100 for CAFA removal).

-8-

ten (10) hour shifts without a second meal period due to Defendants' policy of discouraging, dissuading and/or impeding Plaintiff and the Class members from taking a meal period."[7]  (emphasis added). Timekeeping records reveal that the putative class worked a total of 165,633 workdays where a UHT recorded in excess of 10hours in a single day, with the average wage of employees on these shifts of $31.95.  Assuming these shifts all triggered premium pay for failure to provide a second meal period, as Plaintiff alleges in the First Amended Complaint, total damages would be **$5,291,974**.[8]

          d.    **Waiting Time Penalties Arising From Unpaid Wages**.  Labor Code section 203 provides that if an employer willfully fails to pay wages to a terminated employee, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Cal. Labor Code § 203(a).  Plaintiff asserts that all class members were systematically underpaid wages as a result of unlawful rounding, which would entitle all former employees whose employment terminated on or after September 26, 2016 to 30 days of waiting time penalties measured at either 8 or 10 hours per day if Plaintiff proved his allegation that the underpayment was willful. *See Mamika v. Barca*, 68 Cal. App. 4th 487 (1998) ("day's pay" under Section 203 takes into account typical hours employee worked in a day multiplied by the hourly rate). A total of 57 UHTs terminated their employment on or after September 26, 2016, with the average wage of those individuals $27.00 at the time of termination.  If a conservative assumption of an 8-hour workday is assumed, each former UHT would be entitled to 240 hours of pay as a waiting time penalty, which translates into **$369,360.**

---

[7]    First Amended Complaint ¶ 63.

[8]    Although the caption of the complaint states that Plaintiff is asserting a claim for failure to provide rest periods, no rest period claim is actually pleaded in the body of the complaint.

SMRH:4834-4169-8216.1

e.      **Wage Statement Penalties.**  Labor Code section 226(e) allows an employee who received an inaccurate itemized wage statement to recover $50 for an initial violation, and $100 for each subsequent violations, up to a maximum of $4,000 per employee.  As a penalty claim, the statute of limitations on a Section 226(e) claim is one year.  Cal. Code Civ. Proc. § 340(a).  Plaintiff contends that the putative class was underpaid each pay period as a result of unlawful rounding, which would render all of their wage statements inaccurate.  The putative class worked a total of 12,574 pay periods during the one-year limitations period for a Section 226(e) claim.  Assuming all violations were knowing and intentional as Plaintiff alleges, each UHT's first defective wage statement would generate a $50 penalty and all subsequent ones would generate a $100 penalty.  Taken together, the total wage statement penalties would be **$1,235,650.**

f.      **Attorneys' Fees**.  Lastly, although potential damages and penalties amount to significantly more than $5 million standing alone on the unpaid wages, liquidated damages, wage statement, and waiting time penalties claims, the Complaint also alleges that class members are entitled to recover attorneys' fees.  Recent Ninth Circuit authority has clarified that, in evaluating amount in controversy, the calculation must include all attorney's fees likely to be incurred *through trial of an action*.  *See Fritsch v. Swift Transp. Co. of Arizona*, 899 F.3d 785, 794 (9th Cir. 2018); *Arias*, 936 F.3d at 927-28 (noting that it was error for court to refuse to consider likely attorney's fees *through trial* in evaluating CAFA amount in controversy).  Attorney's fees are typically set at 25% of the gross recovery in a wage/hour class action, although they can be higher if justified by a lodestar calculation of reasonable hourly rate times the amount of reasonable hours expended.  *Fritsch*, 899 F.3d at 796, n. 6 (noting that 25% value, while not dispositive in every case, is the usual benchmark).  To be conservative, setting fees at 25% of the recovery in items (a) through (e) above would yield a total of **$1,853,215** in attorney's fees.

-10-

20.     Adding up the above damages, penalties, and attorney's fee figures from above yields a total amount in controversy well in excess of **$9.2 million** using conservative, plausible estimates that are properly used to determine amount in controversy for purposes of CAFA.  *See Arias,* 936 F.3d 920; *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197-99 (9th Cir. 2015) (amount in controversy is based on reasonable assumptions supported by evidence).  And this value does not even include potential additional civil penalties that could arise under the derivative PAGA claims.  Accordingly, Cox has easily established the amount in controversy requirement here.

21.     Because minimum diversity of citizenship exists and because the amount in controversy exceeds $5 million dollars, this Court has original jurisdiction of the action pursuant to 28 U.S.C. § 1332(d)(6).  This action is therefore a proper one for removal to this Court.

## **VENUE**

22.     Venue lies in the Central District of California pursuant to 28 U.S.C. Section 1441, 1446(a), and 84(c)(2).  This action originally was brought in the Superior Court of the State of California, County of Orange, and Plaintiff worked at a Cox California location in Foothill Ranch, Orange County, California.

## **NOTICE OF REMOVAL**

23.     This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of Orange.

24.     In compliance with 28 U.S.C. § 1446(a), true and correct copies of all process and pleadings from the state court action served on Defendants or filed by Defendants are attached hereto as the following exhibits, including the Complaint (Exhibit A), the Notices of Acknowledgment of Receipt (Exhibit B), the First Amended Complaint (Exhibit C), and the Answer (Exhibit D).

SMRH:4834-4169-8216.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WHEREFORE**, Defendants request that the above action pending before the Superior Court of the State of California for the County of Orange be removed to the United States District Court for the Central District of California.

Dated:  October 21, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON

By      /s Thomas R. Kaufman
        THOMAS R. KAUFMAN
        Attorneys for Defendants
        COX COMMUNICATIONS CALIFORNIA,
        LLC and COX COMMUNICATIONS, INC.

-12-