UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Case No. SACV 19-2002 JVS (JDEx) | Date January 13, 2020 |
| Title Christone Feltzs v. Cox Communications Cal., LLC et al | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** [IN CHAMBERS] Order Regarding Motion for Remand

The Court, having been informed by the parties in this action that they submit on the Court's tentative ruling previously issued, hereby rules in accordance with the tentative ruling as follows:

Plaintiff Christone Feltzs ("Feltzs") moved to remand this action pursuant to 28 U.S.C. §1447(c). Mot., Dkt. No. 10. Defendants Cox Communications Cal., LLC and Cox Communications, Inc. ("Cox") opposed. Opp'n, Dkt. No. 13. Feltzs replied. Reply, Dkt. No. 14.

For the following reasons, the Court **DENIES** the motion.

### I. BACKGROUND

On July 26, 2019, Feltzs filed a Complaint against Cox in Orange County Superior Court, asserting class claims for relief arising out of Feltzs' employment. Complaint, Dkt. No. 1-1. The class claims alleged (1) failure to pay wages as a result of "illegal rounding;" (2) failure to provide meal periods; (3) failure to pay all wages due at separation; (4) failure to provide accurate wage statements; and (5) unfair competition. Id. ¶¶ 47-93.

On October 16, 2019, before Cox responded to the Complaint, Plaintiff filed a First Amended Complaint to add additional derivative penalty claims under the California Labor Code Private Attorneys General Act ("PAGA"). FAC, Dkt. No. 1-1, Ex. C. Feltzs asserted his class claims on behalf of "[a]ll current and former California hourly non-exempt employees of Defendants for the period of July 25, 2015 through the date of class

certification who provided installation and maintenance services for Defendants as a Universal Home Technician In-training, Universal Home Technician ("UHT"), Field Service Technician, Field Service Representative." Id. ¶ 41.  The FAC also alleges three sub-classes.  Id.

In the FAC, Feltzs alleges that Cox rounded all UHTs' time entries in a way that systematically led to shorting employees for their time worked, which resulted in the UHTs being under compensated for their wages.  Id. ¶¶ 30-33, 57.  Further, he alleges that Cox "consistently" failed to provide second meal periods to UHTs who worked more than 10 hours per day and failed to obtain proper waivers that would allow the UHTs to waive their right to a second meal period.  Id. 34, 67, 69.  Third, he asserts that, derivative of the first two claims, UHTs' wage statements were inaccurate in violation of Labor Code section 226(a).  Id. ¶ 35.  Fourth, he alleges that every UHT whose employment terminated since July 26, 2016 is entitled to waiting time penalties as a result of the rounding and second meal period violations.  Id. ¶ 36.  Fifth, he recasts the aforementioned Labor Code violations as unfair competition under the Unfair Competition Law, which can be used to extend the statute of limitations on certain Labor Code claims.  Id. ¶¶ 83-87.  Finally, Feltzs asserts his PAGA claim to obtain civil penalties for the alleged Labor Code violations.  Id. ¶ 103.

On October 21, 2019, Cox filed its Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441(a), and 1446.  Not., Docket No. 1.  Cox stated that Class Action Fairness Act ("CAFA") jurisdiction exists because there is minimal diversity between the parties, there are 520 putative class members, and the amount in controversy exceeds $5 million based on timekeeping and payroll records, wage statements, and attorneys' fees.  Id. ¶¶ 19-20.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action from state court to federal court so long as original jurisdiction would lie in the court to which the action is removed.  City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 163 (1997).  According to the Ninth Circuit, courts should generally "strictly construe the removal statute against removal jurisdiction."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  This "'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  Id. (quoting Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 712 n.3 (9th Cir. 1990)).

However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014). CAFA provides district courts with original jurisdiction over any class action in which (1) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (2) any plaintiff class member is a citizen of a state different from any defendant, (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief, and (4) the number of plaintiffs in the class is at least 100. 28 U.S.C. §§ 1332(d)(2), (d)(5).

### III. DISCUSSION

Feltzs moves to remand the case on the sole basis that Cox failed to establish by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 such that CAFA jurisdiction exists. Mot., Dkt. No. 10 at 1.

To satisfy the amount in controversy requirement under § 1332, the plaintiff's alleged class damages must exceed $5,000,000. 28 U.S.C. § 1332(d). To measure the amount in controversy, a court must not only assume that allegations of the complaint are true, but must also assume that a jury will return a verdict for the plaintiff on all claims made in the complaint. Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). Feltzs did not demand a specific amount of damages in the state-court Complaint. In such a situation, "where it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled . . . . [courts] apply a preponderance of the evidence standard." Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007) (citing Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996)). Moreover, the "defendant must do more than point to a state law that might allow recovery above the jurisdictional minimum," and "must submit 'summary-judgment-type evidence' to establish that the actual amount in controversy exceeds" the jurisdictional amount. Kenneth Rothschild Trust, 199 F. Supp. 2d at 1001 (citing Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)). The defendant "cannot speculate," but this burden is "not 'daunting'" and does not require that defendant "research, state, and prove the plaintiff's claims for damages." Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (internal quotation marks and citation omitted). The defendant's evidence must establish "that it is 'more likely than not' that the amount in controversy

exceeds that amount." Sanchez, 102 F.3d at 404.

       If the defendant meets this burden, then the burden shifts to the plaintiff, who must "show, as a matter of law, that it is certain he will not recover the jurisdictional amount." Kenneth Rothschild Trust, 199 F. Supp. 2d at 1001 (citing De Aguilar v. Boeing Co., 47 F.3d 1404, 1411 (5th Cir. 1995)).

       Feltzs contends that Cox's calculations are wholly based on speculation and fail to meet its burden to prove that the Court has jurisdiction over the case. First, Feltzs argues that Cox has not provided evidence to support its assumption that the class size is 520 individuals. Mot. at 4. Second, Feltzs argues that Cox provides no evidence to support its calculations regarding illegal rounding damages. Id. at 4-5. Third, Feltzs argues that the Notice of Removal "improperly uses an unsupported assumption of 100% violation rate," when the Complaint merely alleged that Cox "consistently" failed to provide meal breaks. Id at 5-6. Fourth, Feltzs argues that Cox has failed to provide evidence to support its determination of the average wages of individuals at the time of termination, and whether that rate included overtime. Id. at 6. Finally, Feltzs contends that the attorneys' fee figure is based on speculative underlying damage calculations. Id. at 7.

       Cox submitted the declaration of Kimberly Bronk, the employee who gathered the data used in Cox's analysis of the amount in controversy. Bronk Decl., Dkt. No. 13-2. Bronk's declaration establishes her method for analyzing Cox's timekeeping and payroll data, and states in relevant part:

> 3.    The data reflects that 539 unique individuals worked in a Universal Home Technician ("UHT") job title in California at some point between July 26, 2015 and September 13, 2019.
>
> 5.    There were 173,670 cases where an employee worked more than 10 hours of compensable time in a single workday. The total number of work shifts, including those of 10 hours of less, is 231,361.[1]

---

[1] Cox "[a]ssum[es] conservatively that the rounding of UHTs' time led to employees being systematically underpaid at the rate of just two minutes per shift, which would translate into an underpayment of 7,712 hours for the relevant period." Opp'n at 4.

6. The average hourly rate each UHT had on the date of the time punches at issue was $31.73 per hour.[2]

7. 72 individuals worked as UHT's in California in the relevant period terminated their employment, and the final, average pay rate for these 72 individuals is $28.38 per hour.

8. Payroll data showed a total of 10,122 pay periods for 390 UHT's.

Id. ¶¶ 3-8.

Cox argues that it has met its evidentiary burden of showing that the amount in controversy exceeds $5,000,000 by a preponderance of the evidence. It points out that Bronk's declaration provides evidence regarding how it calculated damages for the time rounding claim, denial of meal periods, inaccurate wage statements, waiting time penalties, and attorneys' fees. Opp'n, Docket No. 13 at 4-7. Multiplying the number of shifts by the noted pay rates and penalties, and adding attorneys' fees, yields an amount in controversy of $9.3 million. Id. at 8.

Taking just one claim as an illustrative example, Cox provides reasonable assumptions regarding damages for denial of second meal periods. Id. at 4-5. Cox points out that Feltzs asserts that putative class members "*consistently* worked over ten (10) hour shifts without a second meal period due to Defendants' policy of discouraging, dissuading and/or impeding Plaintiff and the Class members from taking a meal period." FAC ¶ 67 (emphasis added). Cox interprets this allegation to mean that employees who worked more than 10 hours in a day were always illegally deprived of a second meal period, pursuant to California labor law. Opp'n at 5. Based on this assumption, Cox uses timekeeping records, which reveal that the putative class "worked a total of 173,670 workdays where a UHT recorded more than 10.00 work hours in a single day, with the average hourly wage of employees on these shifts being $31.73," and "[a]ssuming damages of one hour of pay for each of these shifts, the total would be $5,510,549." Id.

The Court finds that Cox has met its burden of proof by the preponderance of the

---

[2] At that rate, Cox assumes that the potential damages would be $244,701 plus an equal amount in liquidated damages for a total of $489,402. Opp'n at 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-2002 JVS (JDEx) | Date | January 13, 2020 |
| Title | **Christone Feltzs v. Cox Communications Cal., LLC et al** | | |

evidence. Cox's amount in controversy is supported by reasonable assumptions, as laid out in the Bronk declaration. See Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) (explaining that "assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'"); see also Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197-99 (9th Cir. 2015). Cox cites to Feltzs' FAC, where necessary, to explain its assumptions – e.g., Cox takes the word "consistently" in the allegation regarding meal periods and explains how that supports a 100% violation assumption. Feltzs argues that allegations of "consistently" are not reasonable to establish a 100% violation rate. Reply at 1, 3-4. While district courts in the Ninth Circuit appear divided on what an appropriate assumed violation rate should be under similar factual scenarios, the Court finds that Cox's calculation of an 100% rate for the second meal period claim is reasonable in light of the allegations in the Complaint.

Accordingly, the Court finds that Cox has satisfied the amount in controversy requirement for exercising CAFA jurisdiction and **denies** the motion to remand.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion.

**IT IS SO ORDERED.**

| | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |