1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   THOMAS R. KAUFMAN, Cal. Bar No. 177936
2  tkaufman@sheppardmullin.com
   PAUL BERKOWITZ, Cal. Bar No. 251077
3  pberkowitz@sheppardmullin.com
   RACHEL P. HOWARD, Cal. Bar No. 273968
4  rhoward@sheppardmullin.com
   1901 Avenue of the Stars, Suite 1600
5  Los Angeles, California 90067-6055
   Telephone:  310.228.3700
6  Facsimile:  310.228.3701

7  Attorneys for Defendants
   COX COMMUNICATIONS CAL., LLC,
8  and COX COMMUNICATIONS, INC.

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

12 CHRISTONE FELTZS, on behalf of       Case No. 8:19-cv-02002-JVS-JDE
13 himself and others similarly situated
                                         Assigned to Hon. James Selna
14          Plaintiff,
                                         **DEFENDANT'S REQUEST FOR**
15       v.                              **JUDICIAL NOTICE IN SUPPORT**
                                         **OF ITS MOTION TO STRIKE**
16 COX COMMUNICATIONS CAL.,              **PLAINTIFF'S PAGA**
   LLC, a Delaware Limited Liability     **REPRESENTATIVE MEAL**
17 Company; COX ENTERPRISES, INC.,       **PERIOD CLAIM**
   a Delaware Corporation; COX
18 COMMUNICATIONS, INC., a               DATE:      August 30, 2021
   Delaware Corporations; and DOES 1     TIME:      1:30 P.M.
19 through 100, inclusive,               CRTRM:     10C
20          Defendants.
                                         Complaint Filed:  July 26, 2019
21

22

23

24

25

26

27

28

SMRH:4821-7265-4834.1                              REQUEST FOR JUDICIAL NOTICE

**TO THE COURT, PLAINTIFF AND HIS COUNSEL OF RECORD:**

On August 30, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable James Selna, Courtroom 10C, within the Ronald Reagan Building, located at 411 West 4th Street Santa Ana, California 92701, Defendant Cox Communications California, LLC ("Defendant" or "Cox") will and hereby does request that the Court take judicial notice, pursuant to Federal Rules of Evidence 201, of the following document:

1.      The minute order dated October 11, 2019 from Hon. Carolyn Kuhl of the Los Angeles Complex Court in *Wesson v. Staples The Office Superstore, LLC*, Case No. BC 593889, addressing the requirement that a PAGA claim be manageable if it is to proceed to trial, a true and correct copy of which is attached hereto as **Exhibit "A."**  This case has been appealed and oral argument on the appeal was conducted on July 15, 2021.

Federal Rule of Evidence 201(b) provides that a court may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."  Orders issued from of a superior court are public records and are readily verifiable.  Accordingly, this Court should take judicial notice of the contents of the attached court order.


DATED:  July 30, 2021           SHEPPARD MULLIN RICHTER & HAMPTON LLP


                                By   _____
                                          /s/ Thomas R. Kaufman
                                     THOMAS R. KAUFMAN
                                     PAUL BERKOWITZ
                                     Attorneys for Defendants
                                     COX COMMUNICATIONS CAL., LLC,
                                     and COX COMMUNICATIONS, INC.

SMRH:4821-7265-4834.1                                    REQUEST FOR JUDICIAL NOTICE

**EXHIBIT A**

**FILED**
Superior Court of California
County of Los Angeles

OCT 1 1 2019

Sherri R. Carter, Executive Officer/Clerk of Court
By_____, Deputy
Lori M'Greene

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| FRED WESSON, Individually, and On Behalf of All Other Aggrieved Employees, | Case No.: BC593889 |
| Plaintiffs, | **Opinion and Order Granting Defendant's Motion to Strike the PAGA Cause of Action from Plaintiff's First Amended Complaint** |
| vs. | |
| STAPLES, INC., a Delaware Corporation; STAPLES THE OFFICE SUPERSTORE, LLC, a Delaware Limited Liability Company; and DOES 1-50, Inclusive, | |
| Defendants. | Hon. Carolyn Kuhl Spring Street Courthouse Department 12 |

This case has been pending over four years. PAGA allegations were added to the operative Complaint three and one-half years ago. Plaintiff Fred Wesson has been given months to prepare and submit a Trial Plan to show how he intends to prove that Defendant Staples' 346 General Managers in various stores were misclassified as exempt employees such that PAGA penalties should be imposed for resulting wage-and-hour violations. Wesson's trial plan is to shift the burden to Staples to prove that the General Managers are exempt. The parties' estimates are that it would take six trial days per General Manager to put on the individualized proof needed to test exempt status. Plaintiff has not offered any alternative mode of proof through expert testimony, sampling or otherwise. Even if the

1  court assumes that consideration of the exempt status of each General Manager could be
2  done in three courts days, not six, the resulting trial would take over four years.

3      There is much about the practical application of PAGA in litigation that remains
4  undecided.  There are no published state court cases that directly address the question at
5  issue here:  When, if ever, should a trial court strike or otherwise dismiss a PAGA claim in
6  advance of trial if the proposed trial will be unmanageable?  What is known is that PAGA
7  does not create a substantive right; it is merely an alternative to direct filing by the
8  government of an action for civil penalties.

9      In PAGA proceedings, courts are required to protect the Due Process rights of
10 defendants to litigate their defenses.  Courts also have inherent authority to manage their
11 caseloads so as to ensure orderly administration of justice.  Here, the court determines that
12 the PAGA claims proposed to be aggregated by Wesson are unmanageable because trial of
13 those claims would require a multitude of individualized assessments.  Defendant's Motion
14 to Strike the PAGA Cause of Action from the First Amended Complaint is granted.

16 **I.      Procedural Background**

17     Plaintiff Fred Wesson (Wesson) alleges he was employed as a General Manager at
18 various Staples store locations in Los Angeles County from August 2004 until he was
19 terminated in May 2016.  Plaintiff initiated this action on September 4, 2015 and filed a
20 First Amended Complaint (Complaint) on April 5, 2016, asserting the following causes of
21 action: (1) failure to pay overtime compensation; (2) failure to authorize and permit rest
22 periods; (3) failure to provide meal periods; (4) failure to furnish accurate itemized wage
23 statements; (5) unlawful, deceptive, and/or unfair business practices; and (6) a claim for
24 relief for penalties for violation of the Labor Code brought pursuant to the Private Attorney
25 General Act (PAGA), Labor Code section 2699.
26     On April 17, 2017, this court denied Wesson's Motion for Class Certification on
27 behalf of a class of General Managers of Staples retail stores employed between March 11,

28

1  2010 and the present.  Staples classifies these employees as exempt.[1]  In denying

2  certification, this court held that the evidence presented by Plaintiff did not satisfy the

3  requirement that common issues of fact and law predominate.

4      The court found that: "The evidence demonstrates that there is great variation in

5  how Staples store general managers perform their jobs and the extent to which they

6  perform nonexempt tasks." (Op. & Order, Apr. 17, 2017, at p. 4.)  The court rejected, as

7  contrary to law, Wesson's suggestion that exempt managerial tasks should be considered

8  nonexempt because they must be performed in accordance with company policy.  (*Id.* at p.

9  3.)  The court also rejected Wesson's argument that he could show on a common basis that

10  general managers had to perform a substantial amount of non-exempt work in order to stay

11  within their assigned store budgets.  Noting the lack of expert testimony on this subject, the

12  court found that:  "Plaintiff here has failed to offer evidence from which it reasonably can

13  be inferred that the Defendant had a policy of widespread misclassification of employees,

14  and in particular Plaintiff has failed to offer common facts from which it can be reasonably

15  inferred that the labor budget policy caused general managers to spend more than fifty

16  percent of their time performing nonexempt tasks." (*Id.* at p. 7.)

17      Thereafter, Wesson sought to proceed on his PAGA claim.  Defendant, seeking to

18  head-off litigation of this claim at trial, filed a Motion to Strike the PAGA Cause of Action

19  from Plaintiff's First Amended Complaint on the ground that this cause of action could not

20  be litigated in a manageable trial.  On December 4, 2018, after hearing argument on

21  Defendant's Motion to Strike, the court issued a Minute Order, incorporating a tentative

22  ruling on Defendant's Motion to Strike and continuing the hearing to "provide Plaintiff

23  with a full opportunity to present a trial plan for the PAGA claims he seeks to litigate."

---

[1] The "executive exemption" is applicable to an employee who is paid above a specified amount and whose duties meet the following criteria: (1) the employee's duties and responsibilities involve the management of a department or subdivision of the enterprise; (2) he or she customarily and regularly directs the work of two or more employees; (3) the employee's recommendations as to the hiring or firing and promotion of other employees "will be given particular weight;" (4) the employee customarily exercises discretion and independent judgment; and (5) the employee "is primarily engaged in duties which meet the test of the exemption."  (Cal. Code Regs., tit. 8, § 11050, subd. (1)(B)(1).)

1    Subsequently, on July 2, 2019, Plaintiff filed a Supplemental Brief and Trial Plan.  On

2    August 12, 2019 Defendant filed a Supplemental Reply Memorandum.

3        In his Trial Plan, Wesson proposes to try a PAGA action on behalf of 346 General

4    Managers of Staples retail locations.  Plaintiff proposes that a trial on liability proceed as a

5    first-phase trial, with a penalties phase to follow.  In the liability trial, Plaintiff proposes to

6    offer a prima facie case of liability for violation of the California wage and hour laws by

7    showing that all General Managers worked overtime without pay and did not receive meal

8    and rest breaks.  Plaintiff argues that, having made this showing, the burden shifts to

9    Defendant to prove that the General Managers are properly classified as exempt.  (*See,*

10   *e.g., Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794-795.)

11       While Wesson does not expressly concede that the other criteria for designating an

12   employee as exempt are met for Staples General Managers, it is clear that the primary

13   focus of Wesson's contention at this stage of the litigation is that General Managers are

14   improperly classified as exempt because they are not "primarily engaged in duties which

15   meet the test of the exemption."  (Cal. Code Regs., tit. 8, § 11050, subd. (1)(B)(1)(e).)

16   Plaintiff acknowledges that, to prove its exemption defense, Staples must proffer evidence

17   concerning how each General Manager spent his or her time on a weekly basis so that a

18   determination can be made as to whether more than half of the General Manager's time

19   was spent on exempt tasks rather than on non-exempt work (such a stocking shelves or

20   working a check-out line in a context that is not a training exercise).  (*See* Plaintiff's

21   Supplemental Brief and Trial Plan in Further Opposition to Defendant's Motion to Strike

22   (filed July 2, 2019) at pp. 5, 13.)

23       At oral argument on Defendant's Motion to Strike on September 12, 2019, the court

24   questioned counsel on the specifics of how the liability phase of a trial would proceed.

25   The court asked counsel for each side how long it would take for direct and cross

26   examination of witnesses to present that side's case solely on the issue of whether a

27   particular General Manager was "primarily engaged in duties which meet the test of the

28   exemption."  Defense counsel estimated that it would take three days per General Manager

- 4 -

1  to present direct and cross examination to show that each General Manager did not spend
2  more than fifty percent of his or her time performing non-exempt work over the multi-year
3  period at issue in this case.  Plaintiff's counsel stated that it would take three days per
4  General Manager for Plaintiff to present direct and cross examination in opposition to
5  Defendant's evidence on this affirmative defense.  The court opined (at oral argument) that
6  a tightly-tried case would require three days *total* per General Manager for both sides'
7  evidence concerning non-exempt work by a particular General Manager.  Based on the
8  court's estimate (which is fifty percent less than the parties' combined estimates), trying
9  this aspect of the exempt classification defense for 346 General Managers would take 1038
10 court days, or more than four years (1038 days divided by 248 average court days per year
11 equals 4.185 years).

13 **II.    Legal Analysis**

14        The first matter at hand is consideration of the applicable legal principles.  The
15 analysis below considers:  (1) whether a motion to strike is an available procedure for
16 challenging whether a PAGA claim can proceed to trial; (2) Plaintiff's contention that
17 PAGA creates a substantive right personal to a PAGA plaintiff; (3) the Due Process rights
18 of a defendant in PAGA litigation and the implications of such rights for how a PAGA
19 claim can be litigated; and (4) whether a PAGA plaintiff must show that the penalty claims
20 he or she seeks to aggregate for trial can be presented in a manner that is manageable for
21 the parties and consistent with the public interest in the orderly administration of justice.

23   A.  Defendant's Motion to Strike is an Available Procedure for Challenging Whether a
24       PAGA Claim Can Proceed to Trial

25        Plaintiff argues that Defendant's Motion to Strike is untimely and is not an available
26 procedure to challenge his PAGA cause of action.  Plaintiff is correct that the Motion
27 would be procedurally untimely if strictly considered as a motion to strike a pleading
28 allegation pursuant to Code of Civil Procedure section 435.  However, courts have

discretion to deem a motion filed under one title as appropriate for consideration under a different procedural mechanism.  (*See Protect Agricultural Land v. Stanislaus County Local Agency Formation Com.* (2014) 223 Cal.App.4th 550, 556 (affirming judgment of the trial court which exercised its discretion to deem a demurrer and motion to strike to be a motion for judgment on the pleadings).)

In class actions, the appellate courts have permitted defendants to file motions to strike class claims before a plaintiff has filed a class certification motion, permitting a defendant to argue that the plaintiff never can meet her burden on class certification.  (*In re BCBG Overtime Cases* (2008) 163 Cal.App.4th 1293, 1297-1299.)  In *Carabini v. Superior Court* (1994) 26 Cal.App.4th 239, the Court of Appeal explained:

> As soon as practical after commencement of a lawsuit that purports to be a class action, a hearing must be held on whether it will be allowed to proceed as such.  The hearing may be held either on the motion of the representative to *certify* the case as a class action; or, on the motion by the party opposing the class to *dismiss* the class action allegations; or, by the court on its *own motion* . . . .

(*Id.* at p. 242 (internal quotation and citation omitted; emphasis in original).)

For the same reason that courts have allowed a motion to strike as a procedural device for determining whether a class can be certified, a defendant should be allowed to use a motion to strike to challenge whether a plaintiff's pursuit of PAGA claims at trial will satisfy Due Process and whether such claims will be manageable at trial.  Especially when managing complex litigation, courts are encouraged to reduce litigation costs by identifying issues for early resolution and deciding those issues after ensuring that the parties have had a full and fair opportunity for discovery and for presentation of the particular issue to the court.  (*See* Cal. Rules of Court, rule 3.400(a) (a "complex case" requires exceptional judicial management to "avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel").)

1    Importantly, just as a premature motion to strike class claims may not be allowed to

2    compromise a plaintiff's right to attempt to satisfy his or her burden of proof on class

3    certification, a motion to strike PAGA claims may not be used prematurely to forestall a

4    representative plaintiff's right to demonstrate that the claims the plaintiff seeks to litigate

5    are manageable.  (*See Shiferaw v. Sunrise Senior Living Mgmt.* (C.D.Cal. Mar. 21, 2016)

6    No. LA CV13-02171-JAK(PLAx), 2016 U.S.Dist.LEXIS 187548, at *48-*49 (*Shiferaw*)

7    (more information about the plaintiff's claims and the proposed evidence was necessary

8    before the court could make a determination as to the manageability of a PAGA case); *cf.*

9    *Williams v. Superior Court* (2017) 3 Cal.5th 531, 551 (*Williams*) (when the eventual scope

10   of a PAGA action is as yet uncertain, a plaintiff may proceed with discovery in order to

11   ascertain that scope).)

12   Here, Wesson has been given a full opportunity to take discovery and to present a

13   Trial Plan with respect to the PAGA claims he seeks to litigate.  He does not argue that he

14   needs additional time to take discovery or to present his Trial Plan to the court.

15   Defendants' Motion to Strike does not pose a formalistic pleading challenge based only on

16   the bare bones of the Complaint.  Rather, it is a fact-based Motion made after years of

17   discovery.  There is no value to the parties, their counsel, or the general public for the court

18   to start a lengthy trial and then to address whether manageability concerns are relevant.

19   Under these circumstances, the court finds that Defendant's Motion to Strike is

20   procedurally proper.

21

22   B. PAGA Is a Procedural Remedy

23   Wesson argues that a PAGA claim is "a substantive cause of action" rather than "a

24   procedural vehicle."  (Plaintiff's Supplemental Brief, filed July 2, 2019, at p. 6.)  He argues

25   that, although courts have significant discretion in deciding whether to certify a class

26   action because class certification involves "a discretionary *procedure*," the current Motion

27   to strike PAGA allegations involves "a *substantive claim.*"  (Plaintiff's Supplemental Brief

28   (filed July 2, 2019) at p. 7 (emphasis in original).)  He relies on the California Supreme

1 | Court's statements that PAGA penalties are "a substantive property right of the State of

2 | California" and that "the State is the 'owner' of the claims." (*Id., citing Iskanian v. CLS*

3 | *Transportation Los Angeles, LLC,* 59 Cal.4th 348, 388 and (*Correia v. NB Baker Electric,*

4 | *Inc.* (2019) 32 Cal.App.5th 602, 622.)

5 | The premise of Plaintiff's argument is incorrect. The State has a right to civil

6 | penalties recovered in a PAGA action. The civil penalty itself is the substantive right.

7 | PAGA is an alternative procedure to allow recovery of those penalties, which otherwise

8 | could be pursued in an action brought directly by the Labor Workforce Development

9 | Agency (LWDA). (Lab. Code, § 2699(a) (penalty claims may be recovered in a civil

10 | action brought by an "aggrieved employee" "as an alternative" to an action by the State).)

11 | The alternative procedure only can be used after a PAGA plaintiff has given the state

12 | enforcement agency advance written notice. (Lab. Code, §§ 2699, subd. (h) and 2699.3.)

13 | The LWDA has a period of time to commence enforcement before a PAGA plaintiff can

14 | proceed in his or her own name to use the PAGA procedure to recover penalties belonging

15 | to the State.

16 | Moreover, appellate authority has rejected Plaintiff's argument that PAGA creates a

17 | substantive right. In *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*

18 | (2009) 46 Cal.4th 993, a Union sought to pursue PAGA claims on behalf of employees

19 | who purported to have assigned those claims to the union. The California Supreme Court

20 | began its analysis with the proposition that a cause of action is assignable "if it arises out

21 | of a legal obligation or a violation of a property right." (*Id.* at p. 943.) The Court held that

22 | a PAGA claim does not create property or substantive rights: "[PAGA] is simply a

23 | procedural statute allowing an aggrieved employee to recover civil penalties – for Labor

24 | Code violations – that otherwise would be sought by state labor law enforcement

25 | agencies." (*Id.*; *accord Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562,

26 | 411.) Because PAGA does not create a substantive right, the claim was not assignable, and

27 | the union, as the purported assignee, had no right to proceed.

28 | A PAGA plaintiff does not have an ownership interest in either the rights of

1   individuals who were subject to the alleged Labor Code violations or in the right of the

2   State to penalties based on such violations.  (*See ZB, N.A. v. Superior Court of San Diego*

3   *County* (Cal., Sept. 12, 2019, No. S246711) 2019 WL 4309684, at *3 (*Lawson*) (holding

4   that an employee's personal right to wages is not at issue in a PAGA case, even though the

5   LWDA is authorized to recover underpaid wages).)  By allowing an aggrieved employee to

6   pursue remedies that otherwise would belong to the State, PAGA creates an alternative

7   procedure for recovery of Labor Code penalties, not a substantive right.

8

9       C.  A PAGA Trial Must Respect the Due Process Rights of a Defendant

10          All court procedures ultimately are subject to the requirements of Due Process

11   guaranteed by the Constitutions of the United States and of the State of California.  A

12   person cannot be deprived of property without due process of law.

13          In *Arias v. Superior Court* (2009) 46 Cal.4th 969, 984-987 (*Arias*), the California

14   Supreme Court held that the PAGA procedure must respect the Due Process rights of

15   defendants in such actions.  As discussed below, the requirements of Due Process have

16   implications both for the scope of the claims that can be litigated in a PAGA action and for

17   a defendant's right to present evidence in a PAGA proceeding.

18

19       1.  Avoiding One-Way Intervention

20          The California Supreme Court's decision in *Arias* applies to PAGA the Due Process

21   requirement that a defendant not be subject to non-mutual collateral estoppel.  *Arias*

22   affirms the right of a defendant to be free from "one-way intervention," that is,

23   participation in litigation that binds the defendant to an unfavorable result but does not

24   provide the defendant with the protections of collateral estoppel if the defendant prevails.

25   (*Id.* at p. 985; *see also Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1080.)

26          To protect a defendant's Due Process rights in PAGA cases, the California Supreme

27   Court required "nonparty employees as well as the government [to be] bound by the

28   judgment in an action brought under the act . . . ."  (*Arias, supra,* 46 Cal.4th at p. 986.)  A

PAGA action operates as the equivalent of an action brought by the government so that "a person who is not a party but who is represented by the agency is bound by the judgment as though the person were a party." (*Id.*)

One implication of the California Supreme Court's requirement that a PAGA case yield a binding judgment as to nonparty employees is that a PAGA trial must be conducted in such a way that the court (and the defendant) can determine at the outset which employees will be bound by the outcome of the litigation. Thus, Due Process requires a PAGA plaintiff to identify clearly prior to trial the employees on whose behalf he seeks to litigate Labor Code violations and any penalties flowing therefrom.

    2.  *Preservation of a Defendant's Right to Assert and Litigate Its Defenses*

Procedures for litigation of claims on an aggregate basis "may not be used to abridge a party's substantive rights." (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 34 (*Duran*).) "Altering the substantive law to accommodate procedure would be to confuse the means with the ends – to sacrifice the goal for the going." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 462 (quoted with approval in *Duran, supra,* 5 Cal.4th at p. 34.) Notably, in *Duran*, the court held that class action procedure could not be applied to "abridge [the defendant's] presentation of an *exemption* defense [in a wage and hour case] simply because that defense was cumbersome to litigate in a class action . . . ." (*Id.* at p. 35 (emphasis added).) The Supreme Court expressly grounded this holding both in "class action rules *and principles of due process*." (*Id.* (emphasis added).)

PAGA claims based on alleged misclassification can go forward where there is evidence that the employer's general policies do not comply with law, so long as the employer is allowed to offer evidence in rebuttal. (*See id.* at pp. 37-38 (decided in a class action context); *cf. Carrington v. Starbucks Corp.* (2018) 30 Cal.App.5th 504, 526 (evidence of meal break violations was not overly individualized so as to preclude a PAGA action where there was evidence that generally applicable corporate policies and procedures resulted in widespread violations of law).) The procedural mechanism

1  authorized by PAGA may not be applied so as to deny a defendant's Due Process right to

2  put on a defense – whether that defense is to impeach the plaintiff's claims generally or to

3  litigate affirmative defenses applicable to each allegedly aggrieved employee.

4

5      D.  <u>The Court Has a Managerial Duty to Supervise Legal Enforcement Actions by</u>

6          <u>Requiring that Trials Be Manageable for the Parties and the Public</u>

7        The California Supreme Court has rejected the argument that the PAGA statute

8  requires a private plaintiff to satisfy class action requirements when he or she seeks to

9  litigate civil penalties on a representative basis under PAGA. (*Arias, supra,* 46 Cal.4th at

10  p. 975.)  However, the California Supreme Court has affirmed its understanding that a

11  PAGA trial cannot be an open-ended exercise of undefined scope, but rather must be

12  "manageable." (*Williams, supra,* Cal.5th at p. 559.)  However, subsequent California

13  appellate authority has provided essentially no guidance as to what trial courts should

14  consider in making this determination.

15        In the discussion below, this court first sets forth the limited guidance provided by

16  the California Supreme Court.  The analysis then turns to the general principle that courts

17  have inherent authority to fashion procedures to insure the orderly administration of justice

18  and how that principle has applied in aggregate litigation.  Next, the court considers

19  persuasive authority from federal district courts that have grappled with issues of

20  manageability in PAGA litigation.  Finally, the court articulates a standard for

21  manageability based on the preceding analysis.

22

23      *1.  The Guidance of <u>Arias</u> and <u>Williams</u>*

24        The California Supreme Court has held that PAGA does not require a plaintiff to

25  satisfy class action requirements when seeking civil penalties on a representative basis

26  under PAGA. (*Arias, supra,* 46 Cal.4th at p. 975.)  *Arias* addressed a pleading challenge

27  by which the defendant sought to eliminate PAGA claims on the ground that the complaint

28  did not plead the prerequisites for class certification. (*Id.* at p. 981.)

1      The analysis of the Court in *Arias* was focused on the language of PAGA and its

2  legislative history.  The Court determined that the statute itself does not require a PAGA

3  plaintiff to demonstrate that a class can be certified.  (*Id.* at pp. 980-984.)  However, the

4  Supreme Court was not called upon to address whether principles for the regulation of

5  aggregate litigation are ever relevant to PAGA claims.

6      In *Williams, supra*, the California Supreme Court considered how discovery may be

7  conducted in a PAGA action.  The Court opined that the existence of a uniform policy is

8  not a precondition to "success" in a PAGA action because "recovery on behalf of the state

9  and aggrieved employees may be had for each violation, whether pursuant to a uniform

10  policy or not." (*Id.* at p. 558 (citing Lab. Code, § 2699(g)(1)).)  Nevertheless, the Supreme

11  Court noted that "proof of a uniform policy is one way a plaintiff might seek to render trial

12  of the action manageable." (*Id.*)  The *Williams* court did not elaborate on the concept of

13  manageability and subsequent appellate authority sheds no light on the concept.  Therefore

14  this court must consider the issue as a question of first impression.

15

16     *2.  Courts' Inherent Authority to Manage Litigation*

17      Courts must be able to manage their dockets consistent with the demands of all

18  matters pending before them and in such a way as to provide broad access to justice.

19  Courts have "inherent equity, supervisory and administrative powers" to "control litigation

20  before them" and these powers "are derived from the state Constitution and are not

21  confined by or dependent on statute." (*Cottle v. Superior Court* (1992) 3 Cal.App.4th

22  1367, 1377.)  Pursuant to these inherent powers, courts have been permitted to "fashion[ ]

23  new forms of procedures when required to deal with the rights of the parties and to manage

24  the caseload of the court." (*Id.* at p. 1377.)[2]

25

26

27  _____

[2] *See also Walker v. Superior Court* (1991) 53 Cal.3d 257, 266-267 (holding that a court has inherent power "to conduct a pretrial hearing in order to obtain information about whether the judgment to be rendered will justify transfer to the municipal court"); *James H. v. Superior Court* (1978) 77 Cal.App.3d 169, 175 (juvenile court properly

28  exercised inherent power to hold a competency hearing even though applicable law failed to provide for such a proceeding); *Peat, Marwick, Mitchell & Co. v. Superior Court* (1988) 200 Cal.App.3d 272, 285 (trial court was

PAGA allows an aggrieved employee to recover civil penalties for Labor Code violations as a substitute for an action for civil penalties by the LWDA.  (Lab. Code, § 2699(a).)  However, the PAGA statute itself does not define the scope of such representative action; that is, PAGA does not define how penalty claims based on wrongs done to other individuals may be aggregated.

As discussed below, where the Legislature has created aggregate remedies, California courts have found it important to set the parameters by which those remedies can be fairly and efficiently managed, with due regard for the rights of all parties, of any non-parties who might be affected by the adjudication, and of the courts themselves. Courts must exercise judicial discretion to effectively supervise litigation when a statute authorizes claims to be aggregated.  The American Law Institute's Principles of the Law Aggregate Litigation refers to the "bedrock point that aggregate treatment in litigation is a matter of judicial discretion that flows from the general authority of courts to exercise early and effective supervision of litigation and, often, from the particular statute or rule authorizing aggregate treatment."  (Principles of the Law Aggregate Litigation (ALI 2010) §2.02, com. a, at p. 83.)

### 3. *Courts' Inherent Authority Has Shaped California Class Action Jurisprudence*

In California, some of the most important requirements for class certification are judge-made law.  Code of Civil Procedure section 382, which authorizes class actions as a matter of California procedure, allows one person to sue "for the benefit of all" "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ."  Nevertheless, California courts have added to these statutory requirements.

In *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 697, 704, the California Supreme Court acknowledged that section 382 "appears to speak in the alternative," but nevertheless

---

permitted to exclude evidence based on abuse of the discovery process "notwithstanding the absence of a specific statutory authorization").

affirmed that there must be both an ascertainable class *and* a well-defined community of interest in the facts and law to be litigated.  Over several decades, courts have specified the requirements for certification of a class, "[d]rawing on the language of Code of Civil Procedure section 382 and federal precedent."  (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021.)

As the law has evolved, California courts have focused on whether the class action, as a procedural remedy, is advantageous for the courts as well as for the litigants.  Leading decisions have considered whether a class action is manageable, even though the Legislature provided no such directive in section 382.  (*Duran, supra,* 59 Cal.4th at p. 29 ("Trial courts must pay careful attention to manageability when deciding whether to certify a class action").)  Thus, in deciding whether a proposed class may proceed, courts consider whether "the maintenance of a class action *would be advantageous to the judicial process and to the litigants*."  (*Collins v. Rocha* (1972) 7 Cal.3d 232, 238 (emphasis added) (quoted with approval in *Lockheed Martin Corp v. Superior Court* (2003) 29 Cal.4th 1096, 1104, and in *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326).)

This court does not rely on class action authorities to argue that PAGA cases must meet class action requirements.  Rather, California courts' development of class action jurisprudence is instructive because it is an example of how courts exercise inherent power to require controversies to be presented in a form that can be tried consistent with Due Process and fair administration of justice.

*4.   Courts' Inherent Authority Has Been Applied to Limit the Scope of UCL Remedies*

Prior to the enactment of Proposition 64,[3] litigation of claims under the UCL also generated a need for courts to exercise their inherent authority to limit unmanageable litigation.  In *South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72

---

[3] Prior to Proposition 64, "any person" could sue under the UCL.  Proposition 64, which was approved by the voters in 2004, eliminated so-called "unaffected plaintiff" standing, requiring that the plaintiff have actually suffered injury as a result of the defendant's unfair competition.  (*See generally* Stern, Bus. & Prof.C. 17200 (The Rutter Group) Ch. 7-A ¶¶ 7:2, 7:3, 7:3.1, 7:3.2.)

1   Cal.App.4th 861, Plaintiff asserted a private attorney general claim for statewide relief

2   under Business and Professions Code section 17200 based on Defendant's assertedly

3   unlawful business practice of using a particular method of interest calculation without

4   specific contractual authorization and disclosure.  (*Id.* at p. 897.)  The Court of Appeal held

5   that the trial court acted within its discretion in dismissing the UCL claim on the ground

6   that plaintiff could not prove a representative claim based on common proof.

7         In *Bronco Wine Co. v. Frank A. Logoluso Farms,* (1989) 214 Cal.App.3d 699, the

8   Court of Appeal reviewed for abuse of discretion a trial court's denial of a pretrial motion

9   to strike UCL claims on behalf of non-party grape growers.  (*Id.* at pp. 715-716.)  At trial,

10  the court had awarded restitution to the non-party growers.  The Court of Appeal held that

11  the trial court had abused its discretion in denying the motion to strike the UCL claims

12  because the "denial of Bronco's pretrial motion led to the insurmountable control and

13  management problems associated with awarding judgments for or against nonparties not

14  subject to the court's jurisdiction."  (*Id.* at p. 720.)

15        Thus, even though the statutory authorization for representative actions brought

16  under the UCL did not, by its terms, require that such an action be based on facts common

17  to the allegedly injured non-parties, California courts crafted those limits by exercising

18  their inherent authority to manage matters before them.  (*See also Kraus v. Trinity*

19  *Management Services, Inc.* (2000) 23 Cal.4th 116, 138 (if "a  defendant can demonstrate a

20  potential for harm," a court "may decline to entertain [a UCL] action as a representative

21  suit"); *see generally Salazar v. McDonald's Corp.* (N.D.Ca. Jan. 5, 2017) 2017 U.S.Dist.

22  LEXIS 9641, *28-*29 (*Salazar*) (discussing UCL authorities in considering whether a

23  PAGA action must be manageable).)

24        In short, the history of the California courts' interpretation of the UCL, as well as

25  the history of the development of class action jurisprudence in California, illustrate that

26  courts are not without power when faced with an aggregate action that poses substantial

27  problems of manageability.

28

5.  *Federal District Court Decisions Requiring that PAGA Claims be Manageable at Trial*

Although there are no California appellate cases that discuss principles for determining whether a PAGA case is manageable, federal district courts faced with PAGA litigation have held that, where the litigation of a PAGA claim turns principally on individualized factual questions, the proposed trial is unmanageable.  These courts have granted motions to strike a PAGA claim on this basis.

In *Ortiz v. CVS Caremark, Corp.* (N.D.Cal. 2014) 2014 U.S.Dist. LEXIS 36833, (*Ortiz*), the court applied a manageability standard, but was careful to state that the standard should not sweep too broadly.  The court distinguished earlier federal district court cases that had rejected a manageability requirement on the ground that every PAGA action would require at least *some* individualized assessment.  (*Id.* at *11-*12.)  The *Ortiz* court "[did] not conclude that PAGA claims are unmanageable in general, but only that the circumstances of this case make the PAGA claim here unmanageable because a multitude of individualized assessments would be necessary."  (*Id.* at *11.)  The court carefully reviewed the evidentiary basis for the PAGA plaintiff's off-the-clock claims and granted the defendant's motion to strike those PAGA claims.  The court determined that "[p]roof of this claim would be unmanageable, and could not be done with statistical or survey evidence but only with detailed inquiries about each employee claimed to have [worked off-the-clock] and her manager's knowledge thereof."  (*Id.* at *13-*14)

In *Salazar, supra,* the court, having reviewed "a robust evidentiary record," struck the asserted PAGA claims on the ground that "the underlying claims require individualized determinations regarding belief and reliance."  (2017 U.S.Dist LEXIS at *29.)  In doing so, the court conducted a thorough review of decisions of other district courts as well as California UCL cases, and determined that California courts would exercise inherent power to manage PAGA litigation and would not allow trial of aggregated claims that would require numerous individualized determinations.

*Brown v. American Airlines, Inc.* (C.D.Cal. Oct. 5, 2015) 2015 U.S.Dist. LEXIS 150672, also is instructive.  In that case, the district court found that PAGA claims

1    regarding overtime required "too many individualized assessments to determine PAGA

2    violations" and thus struck those claims on the ground that they were unmanageable. (*Id.*

3    at *10.) However, the court allowed claims for PAGA penalties based on improper wage

4    statements to go forward insofar as the alleged violation concerned issuing wage

5    statements reflecting two different pay periods. (*Id.* at *11.)[4]

6            These federal district court cases are persuasive. They apply a balanced rule of

7    judicial management that precludes aggregation of PAGA claims only when a careful

8    review of the evidence demonstrates that proof necessarily would be so individualized as

9    to be unmanageable.

10

11       6.   *Trial of a PAGA Claim Must Be Manageable.*

12           An aggrieved employee who brings a PAGA case does not need to satisfy a

13   numerosity requirement as to the number of penalty claims asserted or the number of

14   employees who allegedly were subject to Labor Code violations. But it does not follow

15   that a PAGA plaintiff may litigate at trial an unlimited number of individualized PAGA

16   claims.

17           PAGA is primarily designed to protect the public rather than to benefit private

18

19   ─────────────────

20   [4] *See also Shiferaw, supra,* 2016 U.S.Dist.LEXIS 187548 at *49-*50 (manageability decision postponed to develop
     more "information about the precise claims that remain at the time of trial . . . as well as the nature and scope of the
     proposed evidence to be offered in support of them"); *Raphael v. Tesoro Ref. & Mktg. Co. LLC* (C.D.Cal. Sept. 25,
21   2015) 2015 U.S.Dist.LEXIS 130532 at *6-*7 (PAGA claims were unmanageable where court "would have to engage
     in a multitude of individualized inquiries" to determine violations as to thousands of employees); *Amey v. Cinemark
22   USA Inc.* (N.D.Cal. May 13, 2015) 2015 U.S.Dist. LEXIS 63524 at *50-*51 ("There is no per se rule that should be
     applied to PAGA claims that do not meet Rule 23 requirements. However, when the evidence shows, as it does here,
23   that numerous individualized determinations would be necessary to determine whether any class member has been
     injured by [the defendant's] conduct, then allowing a representative action to proceed is inappropriate").)
24           District court cases that have rejected application of a manageability requirement include: *Plaisted v. Dress
     Barn, Inc.* (C.D.Cal. 2012) U.S.Dist.LEXIS 135599 at *9-10 ("To hold that a PAGA action could not be maintained
25   because the individual assessments regarding whether a violation had occurred would make the claim unmanageable
     at trial would obliterate [PAGA's] purpose, as every PAGA action in some way requires some individualized
26   assessment regarding whether a Labor Code violation has occurred") (emphasis in original); *Zackaria v. Wal-Mart
     Stores, Inc.* (C.D.Cal. 2015) 142 F. Supp. 3d 949, 959 ("[h]olding that individualized liability determinations make
27   representative PAGA actions unmanageable, and therefore untenable, would impose a barrier on such actions that the
     state law enforcement agency does not face when it litigates those cases itself"). These cases were persuasively
28   distinguished in *Ortiz, supra,* 2014 U.S.Dist.LEXIS 36833 at *4, and in *Salazar, supra,* 2017 U.S.Dist. LEXIS 9641 at
     *26.

1    individuals.  (*Arias, supra,* 46 Cal.4th at p. 986; *Lawson, supra,* 2019 WL 4309684, at *4,

2    *11.)  It follows that the focus of a PAGA enforcement action should be on systemic

3    employer policies.  PAGA is not intended to compensate individual employees.  (*Lawson,*

4    at *11.)

5            The Legislature enacted PAGA to enhance the enforcement resources of State

6    agencies charged with enforcement of the Labor Laws.  As a general matter, state agencies

7    such as the LWDA are expected to, and do, exercise prosecutorial discretion, as they are

8    charged with enforcing the law in a manner that protects the public.  In enacting PAGA,

9    the Legislature did not expressly require that a PAGA plaintiff exercise prosecutorial

10   discretion.  However, in the absence of the prosecutorial restraint that could be expected to

11   be exercised by a co-equal Branch of government, the courts must ensure that a PAGA

12   plaintiff does not use the procedural device at his or her disposal to pursue penalties (and

13   the right to attorneys' fees they entail) by interfering with the Due Process rights of a

14   defendant or by placing unreasonable demands on the court as an institution.

15           This court holds that, when a PAGA case as framed in a trial plan presented by the

16   representative plaintiff cannot be litigated, consistent with due process, based on statistical

17   evidence or evidence of a pattern or practice of employer misconduct, but instead

18   fundamentally depends on individualized proof of violations as to numerous employees for

19   whom penalties are sought, the case is unmanageable and cannot be tried as an aggregate

20   PAGA action.

21

22   **III.   Plaintiff Has Not Demonstrated that a PAGA Trial Which Respects the Due
            Process Rights of the Defendant Would Be Manageable**

23           Wesson acknowledges that the regulation requiring exempt employees to be

24   "primarily engaged" in duties that qualify as exempt will result in individual, employee-

25   by-employee proof in this case.  Wesson characterizes this as Defendant's problem

26   because, according to Wesson, Defendant has made its determination of exempt status on

27

28

an individualized basis and "indiscriminately." (Plaintiff's Supplemental Brief, at pp. 12-13.)

Wesson's argument has no support either factually or legally. As to the facts of this case, Wesson has not suggested he will prove through presentation of documents, or through testimony of company employees or through compendiums of data by an expert, that Staples' exemption decisions were either "indiscriminate," or based on a misunderstanding of the nature of General Managers' responsibilities. Rather, in his Trial Plan, Wesson only has offered to prove that General Managers would have been entitled to overtime and to meal and rest breaks if they had been non-exempt workers. Thus, Wesson's contention that Staples' classification decision was inherently flawed is not supported by evidence Wesson indicates he will offer.

Wesson's argument also is premised on an incorrect reading of the law. Under the applicable legal standard, even if an employer classifies employees as exempt in willful disregard of applicable law, a violation of law is not made out on that basis alone. Rather, a plaintiff who challenges the classification status of one or more employees cannot recover unless the employees were not in fact subject to the exemption. (*Walsh v. IKON Office Solutions, Inc.,* (2007) 148 Cal.App.4th 1440, 1461; *accord Arenas v. El Torito Restaurants, Inc.* (2010) 183 Cal.App.4th 723, 735.) Thus, alleged wrongdoing by an employer in classifying employees as exempt must be proved by countering an employer's exemption defense with evidence that the defense is factually inapplicable.

It is not Defendant's fault (or Plaintiff's fault, for that matter) that the law allows an employee to challenge her exempt status on the ground that the employee spends more than half of her time on non-exempt tasks. The applicable regulations and case law interpreting them define what must be shown to challenge an employer's claim that an employee is exempt. (See *Batze v. Safeway, Inc.* (2017) 10 Cal.App.5th 440, 471-475 (*Batze*) (summarizing the complexities of this determination).) California regulations require that, for an employee to be properly classified as exempt based on the executive exemption, more than half the employee's work time must be spent on exempt tasks based

1    on the work actually performed and the time spent on the work "together with the
2    employer's realistic expectations and the realistic requirements of the job . . . ." (Cal. Code
3    Regs., tit. 8, sec. 11070 subd. (1)(A)(1)(3).)  State regulations further require consideration
4    of federal regulations which in turn list certain activities that are recognized as exempt.
5    Moreover, "identical tasks may be 'exempt' or 'nonexempt' based on the purpose they
6    serve within the organization or department." (*Heyen v. Safeway Inc.* (2013) 216
7    Cal.App.4th 795, 822 (quoted with approval in *Batze, supra,* 10 Cal.App.5th at p. 474).)

8         Wesson seeks to use the procedural mechanism of a PAGA case to aggregate claims
9    for penalties based on alleged misclassification of 346 General Managers in a factual
10   setting where Wesson's principal argument with respect to misclassification is that the
11   General Managers did not spend more than half of their time on exempt tasks.  Wesson
12   does not propose a common basis (for example, expert testimony or statistical proof) for
13   offering evidence as to all or many General Managers with respect to calculation of the
14   time they spent on non-exempt tasks.  Rather, Wesson seeks to impose the burdens of his
15   choice of which PAGA claims to aggregate on the Defendant and on the court.

16        As discussed at length above, a defendant has a due process right (1) not to be
17   subject to one-way intervention, which requires a PAGA plaintiff to identify the employees
18   on whose behalf the PAGA plaintiff seeks to litigate Labor Code violations and penalties
19   flowing therefrom; and (2) to put on a defense to a PAGA plaintiff's claims, whether that
20   defense is to impeach the plaintiff's claims or to assert an affirmative defense.  To the
21   credit of Plaintiff in this case, he has met the first due process requirement by clearly
22   stating that he intends to recover penalties for violations as to an identifiable group of
23   Staples General Managers.

24        However, Wesson fails to recognize that his Trial Plan must take into account
25   Defendant's due process right to litigate its affirmative defense of exemption as to each
26   allegedly aggrieved employee.  Without any basis, Wesson asserts that Staples' Due
27   Process rights are preserved even though his Trial Plan "does not accommodate Staples'
28   affirmative defense." (Plaintiff's Supplemental Brief and Trial Plan (filed July 2, 2019) at

1   p. 12 (initial capital letters used in original as a section heading of the brief).)  PAGA is a

2   procedural device, and Plaintiff has chosen to use it to aggregate the claims he proposes to

3   present in this case.  Plaintiff cannot ignore that the PAGA aggregation he has chosen

4   would require Staples to put its lawyers in a courtroom for nearly four years to defend

5   highly individualized claims of Labor Code violations.  In determining whether Plaintiff

6   has presented a manageable trial plan, a court must consider the necessity of litigating

7   Defendant's affirmative defenses.

8          Plaintiff does not argue that the results of the discovery he has conducted

9   demonstrate that all General Managers should be treated as non-exempt.  His Trial Plan

10  amounts to an aspirational hope that through trial he will find individual General Managers

11  who spent more than half of their time on non-exempt tasks.  Plaintiff's trial plan seeks to

12  aggregate claims pertaining to hundreds of individuals who, to be sure, work for the same

13  employer in the same job category, but as to whom a Labor Code violation can be proved

14  only by considering the individual daily work habits of such employees.  Four years of trial

15  time cannot be devoted to the use of the PAGA procedural device in this manner.  The

16  court has given Plaintiff every opportunity to demonstrate that his claims can be

17  manageably presented to a trier of fact.  Plaintiff, having full access to discovery with

18  respect to Staples' policies and an opportunity to contact the individual General Managers,

19  has not presented a plan to use an expert, or a compendium of data or any other device to

20  meet his ultimate burden of overcoming Defendant's defense that the General Managers

21  are exempt.  A four-year trial involving witnesses and documents individually pertaining to

22  each of 346 General Managers does not meet any definition of manageability.

23

24  **IV.    Conclusion**

25          Defendant's Motion to Strike is granted.

26

27  Dated: _Oct. 11, 2019_          _____

28                                          CAROLYN B. KUHL
                                            JUDGE OF THE SUPERIOR COURT

- 21 -