SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
THOMAS R. KAUFMAN, Cal. Bar No. 177936
tkaufman@sheppardmullin.com
PAUL BERKOWITZ, Cal. Bar No. 251077
pberkowitz@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  310.228.3700
Facsimile:   310.228.3701

Attorneys for Defendants
COX COMMUNICATIONS CAL., LLC,
and COX COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTONE FELTZS, on behalf of himself and others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>COX COMMUNICATIONS CAL., LLC, a Delaware Limited Liability Company; COX ENTERPRISES, INC., a Delaware Corporation; COX COMMUNICATIONS, INC., a Delaware Corporations; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 8:19-cv-02002-JVS-JDE<br><br>Assigned to Hon. James Selna<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF CERTIFIED CLASS CLAIMS**<br><br>*[Filed concurrently with Notice of Motion, Statement of Uncontroverted Facts and Conclusions of Law, Appendix of Evidence, and [Proposed] Order]*<br><br>DATE:          October 25, 2021<br>TIME:           1:30 PM<br>CRTRM:       10C<br><br>Complaint Filed:  July 26, 2019 |

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

II.   SUMMARY OF RELEVANT FACTS ................................................................ 3

    A.   Cox's Business in California and Its Employment of Universal Home Technicians ................................................................................................ 3

    B.   Cox's Timekeeping System for UHTs and Practice of Rounding Time Entries to the Nearest 15 Minutes .......................................................... 3

    C.   The Parties' Experts Are in Material Agreement on the Specific Impact of Rounding on UHTs' Hours Worked Over the Entire Five-Year Class Period ....................................................................................... 4

    D.   Cox's Pay Period and Provision of Wage Statements ............................. 7

    E.   Plaintiff's Various Claims in this Lawsuit That Are Premised on The False Notion That Rounding Time Violates the Labor Code ..................... 7

III.  LEGAL ARGUMENT ........................................................................................ 8

    A.   Plaintiff's First Cause of Action for Failure to Pay Wages Due To Rounding Fails Classwide As a Matter of Law ....................................... 8

        1.   The Controlling Case Law Deeming Rounding Systems Lawful Is Not Materially Distinguishable From This Case .......................... 8

        2.   The Recent California Supreme Court *Donohue* Case Does Not Impact The Analysis ..................................................................... 12

    B.   The Fourth Cause of Action for Inaccurate Wage Statements Fails as a Matter of Law Because Cox Was Entitled to Use Lawful Rounded Timekeeping Entries to Report Hours Worked on UHTs' Itemized Wage Statements ..................................................................................... 13

    C.   Plaintiff's Wage Statement and Final Pay Claims Fail for the Separate Reason That Cox Had a Reasonable Good Faith Belief That Its Rounding System Was Lawful ............................................................... 16

    D.   Plaintiff's Derivative Final Wage, Unfair Competition and PAGA Claims Fail Because They Require a Finding That Cox's Rounding System Resulted in Cox Failing to Pay Wages Owed to UHTs and/or Misreporting Their Hours Worked ............................................................ 18

IV.   CONCLUSION ................................................................................................. 18

-i-

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*AHMC Healthcare, Inc. v. Superior Court*
   24 Cal. App. 5th 1014 (2018) ................................................................. 9, 14

*Amaral v. Cintas Corp. No. 2*
   163 Cal. App. 4th 1157 (2008) ..................................................................... 17

*Corbin v. Time Warner Ent.*
   821 F.3d 1069 (9th Cir. 2016) ................................................................ 10, 12

*David v. Queen of the Valley Med. Ctr.*
   51 Cal. App. 5th 653 (2020) ................................................................... 10, 13

*Donohue v. AMN Services, LLC*
   11 Cal. 5th 58 (2021) .................................................................................... 12

*Ex Parte Trombley*
   31 Cal. 2d 801 (1948) ................................................................................... 17

*Ferra v. Loews Hollywood Hotel, LLC*
   40 Cal. App. 5th 1239 (2019) ............................................................ 9, 10, 13

*Frank v. McQuigg*
   950 F.2d 590 (9th Cir. 1991) ....................................................................... 17

*Lassiter v. CoxCom, Inc.*
   Case No. 37-2008-00084510-CU-OE-CTL ............................................. 2, 17

*Lemus v. Denny's Inc.*
   2015 WL 13740136 (C.D. Cal. July 31, 2015) ........................................... 14

*Magadia v. Wal-Mart Assocs.*
   999 F.3d 668 (9th Cir. 2021) ........................................................................ 15

*Price v. Starbucks Corp.*
   192 Cal. App. 4th 1136 (2011) ..................................................................... 18

*See's Candy Shops, Inc. v. Superior Court*
   210 Cal. App. 4th 889 (2012) ........................................................ 8, 9, 10, 14

*Silva v. See's Candy Shops. Inc.*
   7 Cal. App. 5th 235 (2016) .............................................................................. 9

-ii-

*Smith v. Rae-Venter Law Group*
    29 Cal. 4th 345 (Cal. 2002) ......................................................................... 17

*Soto v. Motel 6 Operating, L.P.*
    4 Cal. App. 5th 385 (2016) ......................................................................... 15

*Steinhebel v. Los Angeles Times Communications*
    126 Cal. App. 4th 696 (2005) ................................................................ 16, 18

*Troester v. Starbucks Corp.*
    5 Cal.5th 829 (2018) ............................................................................. 12, 13

*Woods v. Vector Marketing Corp.*
    2015 WL 2453202 (N.D. Cal. May 22, 2015) .............................................. 17

**Statutes**

Labor Code § 203 .............................................................................................. 16, 17

Labor Code § 204 ...................................................................................................... 14

Labor Code § 226 ........................................................................................... 15, 16, 17

Labor Code § 226.7 .................................................................................................... 12

Labor Code § 512 ...................................................................................................... 12

**Other Authorities**

29 CFR § 785.47 .......................................................................................................... 13

29 CFR § 785.48 ................................................................................................... 13, 14

-iii-

## I.  <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Defendants Cox Communications California, LLC and Cox Communications, Inc. (collectively "Cox") now move the Court for summary judgment as to all the claims the Court certified for class treatment as well as the derivative PAGA claims based on the same theories as the certified claims (i.e., for failure to pay wages due to rounding, failure to provide accurate wage statements, and failure to pay all final wages owed).  All of these claims fail as a matter of law on a classwide basis.

Following certification, the parties' respective experts have evaluated the full set of class timekeeping and pay data and have prepared sworn declarations summarizing what the data reflects concerning the impact of rounding time on Cox's calculation of employee work hours.  The two experts reveal no material discrepancy on any statistic concerning the impact of rounding.  Under the controlling cases that have identified the statistics relevant to assessing the lawfulness of a rounding system, all the *relevant* statistics support Cox's position that its rounding system complies with California law.  In his cross-motion, Plaintiff argues the opposite, but neither side argues that the facts are materially disputed.

Separate from the claim that Cox's system "underpays UHTs" for what they are allegedly owed in wages, Plaintiff separately contends that Cox has violated an alleged rule to show on the wage statement the total hours worked by UHTs as measured by their "raw" punch entries rather than as rounded.  To be clear, Plaintiff argues that this is a requirement *even if Cox was lawfully entitled to round time for purposes of calculating hours worked*.  Plaintiff is simply wrong on the law here. Where an employer lawfully uses rounded time entries to calculate the hourly wages it pays its employees, it must use those same rounded time entries to report "hours worked" on employees' itemized wage statements.  It is simply a made-up rule that has never been recognized in any case (published or unpublished) that Cox had a separate burden to list the "raw time" entries on the wage statement that were not used to calculate wages.  Indeed, imposing such a rule would only lead to employee

-1-

1  confusion as seeing dueling "hours worked" figures would undermine the entire

2  purpose of the law to help employees understand how they were paid.

3      In addition, even if the Court were now to reject the long line of authority that

4  held materially identical time rounding systems to be lawful under California law,

5  Cox would still be entitled to summary judgment on Plaintiff's claims for wage

6  statement and waiting time penalties arising from his "unlawful rounding" theories.

7  An essential condition to recover either type of penalty is that the employer lacked a

8  reasonable, good faith belief that its practices were lawful.  But there is no basis to

9  argue that Cox lacked such a belief given that (a) it relied on the well-established

10  precedents discussed below in the brief, (b) the DLSE Enforcement Manual  states

11  that employers can utilize the rounding practices adopted by Cox, and (c) the San

12  Diego Superior Court expressly ruled in Cox's favor in 2010 in *Lassiter v. CoxCom,*

13  *Inc.*,  Case No. 37-2008-00084510-CU-OE-CTL, that Cox's same rounding system

14  fully complied with California law.  At a minimum, Cox was reasonably entitled to

15  rely on a court opinion it received such that, as a matter of law, Cox cannot be

16  subjected to waiting time or wage statement penalties for continuing to round time

17  in the same manner since 2010.  Accordingly, even if Cox were required to change

18  its rounding system now, the Court should grant summary judgment as to claims to

19  recover ***penalties*** for any alleged rounding violations during the class period.

20      Finally, to the extent Plaintiff has asserted claims that are wholly derivative of

21  the allegation that Cox's rounding system underpaid employees for hours worked

22  (e.g., the UCL claim or final wages claim), those claims cannot survive a ruling that

23  Cox's rounding system was lawful and was a proper method to calculate employee's

24  hours worked for pay purposes.  As such, if the rounding system is deemed lawful,

25  those claims necessarily fail as a matter of law.

26      For all of these reasons, Cox respectfully request that the Court grant the

27  instant motion in full and deny Plaintiff's anticipated cross-motion.

28

## II.   SUMMARY OF RELEVANT FACTS

### A.   Cox's Business in California and Its Employment of Universal Home Technicians

Cox is one of the nation's primary cable companies. At all relevant times, Cox has employed UHTs to support its residential cable customers.  UHTs perform such services as installing and troubleshooting issues concerning residential internet, telephone, and video service.  UHTs work in the field without direct supervision throughout the work day at customer residences.[1]

### B.   Cox's Timekeeping System for UHTs and Practice of Rounding Time Entries to the Nearest 15 Minutes

At all relevant times, Cox has rounded non-exempt employee time entries recorded in the timekeeping system to the nearest 15-minute increment.  Thus, for example, a clock entry of either 7:57:20 a.m. or 8:03:09 a.m. would be rounded to 8:00 a.m.  Cox used these rounded time entries for purposes of calculating the hours UHTs worked, which in turn were used to calculate their pay and report their "hours worked" on itemized wage statements.  Cox notifies its UHTs during the onboarding process that it rounds time and how rounding operates.[2]

UHTs clock in and out themselves from remote locations.  The UHTs clock in and out from the field through an application that is accessible through their Cox phone or a tablet computer Cox provides them which captures the specific time they either clocked in or out.[3]  Cox operates under an honor system where UHTs are instructed to clock in when they start work and clock when they go off work.  UHTs also certify the accuracy of their time each pay period, which includes an acknowledgement that they recorded their work hours accurately.  For this authentication, UHTs view their raw, ***unrounded*** time entries.[4]  Because UHTs

---

[1]   Declaration of Linda Kavanagh ("Kavanagh Dec.") ¶ 2.
[2]   Kavanagh Dec. ¶ 3.
[3]   Kavanagh Dec. ¶ 4.
[4]   Kavanagh Dec. ¶ 4.

work all day in the field outside direct supervision and clock in and out remotely, when they are in the field they have the ability to take extended breaks on the clock while the timekeeping system reflects they were working.  Cox assumes for timekeeping purposes though that they are clocking in and out honestly.[5]

### C.   The Parties' Experts Are in Material Agreement on the Specific Impact of Rounding on UHTs' Hours Worked Over the Entire Five-Year Class Period

Following class certification here, both counsel had their respective experts analyze Excel spreadsheets of timekeeping and pay data for all UHTs in California for the entire class period to analyze the impact Cox's rounding system had over that period.  Cox's expert is Scott Sternberg and Plaintiff's expert is Bennett Berger and they have both submitted declarations setting forth their findings.  Both used a software program to conduct a mechanical, objective exercise that compared the difference between raw and adjusted time values (to account for rounding).[6]

Mr. Sternberg analyzed the impact of rounding using two separate methods that generated very similar results.  First he looked solely at the raw timekeeping data spreadsheet, which showed the specific "punch" times captured by Cox's timekeeping system (measured to the second).  He then replaced each punch time value with the value achieved by rounding that entry to the nearest 15 minute increment to match the method Cox undisputedly uses to round time.  He then measured the results under various metrics that all were based on the difference between the "raw" and "rounded" time values.[7]  His primary findings were that:

- Over 342,798 shifts he analyzed, rounding decreased total hours in 198,868 (58.0%) of the shifts, increased total hours in 111,361 (32.5%) of the shifts, and had no impact in 32,569 (9.5%) of the shifts.

- The aggregate impact of rounding was to reduce total hours by

---

[5]     Kavanagh Dec. ¶ 4.

[6]     Declaration of Scott Sternberg ("Sternberg Dec.") ¶¶ 6-36; Declaration of Bennett Berger ("Berger Dec.") ¶¶ 9-11.

[7]     Sternberg Dec. ¶¶ 7-16.

9,407.30 hours, representing a reduction of .28% of all recorded hours.

- Divided by the number of shifts (most of which were 10 hours), the rounding impact translates into an average reduction of 99.5 seconds per shift (1.66 minutes).[8]

Second, Mr. Sternberg compared the raw daily timekeeping dataset to a separate dataset that showed the hours that Cox ultimately had paid to the UHTs for the same workdays. While rounding was the primary cause of the datasets differing, it was impossible to isolate the impact of rounding from other reasons for adjustments (e.g., manual adjustments to correct errors). Indeed, in 2,588 shifts, Sternberg deemed the result anomalous because the difference in the raw and paid values could not be attributable to rounding (e.g., the difference was greater than the maximum 30 minutes that could result from rounding). Assuming, however, that all differences between the "raw" and "paid" calculation of time for the same shift that could be attributed to rounding were the result of rounding, the same aggregate statistics for the class are impacted only to a trivial degree:

- Over 340,210 shifts, rounding decreased total hours in 199,539 (58.7%) of the shifts, increased total hours in 111,406 (32.7%) of the shifts, and had no impact in 29,265 (8.6%) of the shifts.

- The aggregate impact of rounding was to reduce total hours by 9,314.50 hours, representing a reduction of .28% of all recorded hours.

- Divided by the number of shifts, the net rounding impact translates into a reduction of 98 seconds per shift (1.63 minutes).[9]

In comparison, Plaintiff's expert utilized only the second method of measuring rounding (comparing the raw and paid time datasets). In fact, Plaintiff's expert admitted that his method of comparing the raw and paid datasets did not isolate the impact on rounding time from other administrative adjustments that may have occurred to time entries and that he did not cross-check his method by

---

[8]     Sternberg Dec. ¶¶ 12-15.
[9]     Sternberg Dec. ¶¶ 17-21.

manually rounding all the raw entries to see if it achieved the same result as comparing the results of the raw and paid datasets.[10]

In Mr. Berger's methodology, he ignored any shift if the shift length was more than 24 hours, if there were punches in and out that were fewer than 3 minutes apart, or if the change from "raw" to "paid" was more than an hour.[11]  These anomalies impacted fewer than 1% of the shifts in the data.[12]  Mr. Berger admitted however, that rounding to the nearest 15 minutes could not cause a difference between the raw and paid time of a given person on a given day of more than 30 minutes given that each of the four punches was altered no more than 7.5 minutes (to be adjusted to the nearest 15-minute increment) and 4 daily punches times 7.5 minutes is 30 minutes rather than an hour.[13]  The slight difference in the experts' exclusion of shifts as anomalies caused their conclusions to vary slightly on the comparison of daily "raw" time and "paid" time data.  Berger's conclusions on the same statistics that Mr. Sternberg evaluated show the experts have no material disagreement on the numbers:

- Over 339,768 shifts, rounding decreased total hours in 197,795 (58.2%) of the shifts, increased total hours in 110,514 (32.5%) of the shifts, and had no impact in 31,459 (9.3%) of the shifts.  These figures are all within a fraction of a percentage of Mr. Sternberg's numbers.

- The aggregate impact of rounding was to reduce total hours by 9,317.50 hours.  This is a difference from Mr. Sternberg of less than .01%.

- The net rounding impact translates into a reduction of 98.7 seconds per shift (which Mr. Berger reported as 1.6 minutes).  This also comes

---

[10]     Deposition of Bennett Berger (Vol 2) ("Berger Dep.") 46:10-25, 48:19-49:9, 49:24-51:22 (Mr. Berger's depositions cites herein are collected as Exhibit D to the concurrently-filed Appendix of Evidence).
[11]     Berger Dep. 52:24-53:17.
[12]     Berger Dep. 56:9-11.
[13]     Berger Dep. 53:18-55:3.

within a fraction of a second of Mr. Sternberg's figure.[14]

Mr. Berger also reported on a statistic that Mr. Sternberg had not considered relevant—the number of UHTs who experienced a net increase or decrease, whatever the net magnitude of the difference (e.g., a 1-minute aggregate decrease for one UHT was weighed the same as an aggregate 2-hour increase for another UHT).  For that specific metric, Mr. Berger counted 462 UHTs with an aggregate decrease of at least 1 minute verses 109 with an aggregate increase of at least one minute.[15]  Mr. Sternberg confirmed in his declaration that, although he believes the metric to be meaningless, he concurred with Mr. Berger's count of the number of employees' whose aggregate time was decreased or increased by more than one minute over the entire class period due to rounding.[16]

### D.    Cox's Pay Period and Provision of Wage Statements

The pay period for Cox non-exempt employees in California is every two weeks.  Their wage statements contain each of the following items of information: (1) gross wages earned, (2) total (rounded) hours worked by the employee, (3) all wage deductions Cox applied, (4) net wages earned, (5) the inclusive dates of the period for which the employee is paid, (6) the employee's name and Employee ID number, (7) Cox's name and address, and (8) all applicable hourly rates in effect during the pay period and the corresponding number of hours (as rounded) worked at each hourly rate.  The hours worked are shown based on the rounded time entries Cox uses to pay the employees.[17]

### E.    Plaintiff's Various Claims in this Lawsuit That Are Premised on The False Notion That Rounding Time Violates the Labor Code

Plaintiff has two distinct theories as to why he believes Cox's rounding system allegedly violates California law.

---

[14]    Berger Dec. ¶ 11; Berger Dep. 57:7-61:25.
[15]    Berger Dec. ¶ 11(e); Berger Dep. 64:18-65:7.
[16]    Sternberg Dec. ¶ 29.
[17]    Kavanagh Dec. ¶ 5; Ex. C.

First, Plaintiff argues that to the extent the aggregate effect of Cox's rounding was to reduce UHTs' total of hours worked, it is unlawful and Cox must pay UHTs for any "underpayment" caused by rounding punches to the nearest 15-minutes.

Second, he argues that even if rounding *increases* a UHT's time, the fact that Cox reports the rounded hours as hours worked violates the wage statement law because it does not "accurately" report "hours worked." Instead, Plaintiff contends that Cox must report on the wage statement the total raw hours the UHTs recorded during the pay period, even assuming Cox is lawfully allowed to use rounded time entries to *pay* UHTs wages.

## III.   LEGAL ARGUMENT

### A.   Plaintiff's First Cause of Action for Failure to Pay Wages Due To Rounding Fails Classwide As a Matter of Law

#### 1.   The Controlling Case Law Deeming Rounding Systems Lawful Is Not Materially Distinguishable From This Case

Plaintiff's First Cause of Action is based entirely on a false premise that California law prohibits employers from rounding time entries to the nearest 15 minutes except in situations where the rounding increases the time from the "raw" time entry. In fact, both the Ninth Circuit and multiple California Courts of Appeal decisions have rejected this very same argument.

First, in *See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 903 (2012), the court addressed a pay system that rounded time to the nearest tenth of an hour. The court recognized "that time-rounding is a practical method for calculating work time and can be a neutral calculation tool for providing full payment to employees." *Id*. at 903. California (as reflected in official DLSE guidance) has thus adopted the federal standard that generally permits rounding to the nearest tenth or quarter of an hour, so long as the rounding is evenhanded (i.e., not in one direction only). *Id*. at 902, 907. Indeed, [r]ounding is lawful so long as "the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment." *Id*. at 901. The legal standard is not whether a

-8-

rounding practice works to an employee's disadvantage for any finite or identified time period, but instead whether the policy results in the systematic under-compensation of employees. *Id.*; *see also Silva v. See's Candy Shops. Inc.*, 7 Cal. App. 5th 235, 249 (2016) (subsequently granting summary judgment to See's Candy on rounding claim despite fact that rounding disadvantaged the plaintiff).

Following *See's Candy*, at least three state court decisions held that rounding is permissible even though the net effect of rounding reduces recorded work hours for some employees or even in the aggregate for a class of employees. Importantly, the reductions in these cases were sometimes greater than the net reduction caused by Cox's rounding system over five years.

First, in *AHMC Healthcare, Inc. v. Superior Court*, 24 Cal. App. 5th 1014 (2018), the court of appeal affirmed a summary adjudication of a rounding claim in favor of the hospital defendant and held that its use of a payroll system that automatically rounded employee time to the nearest quarter hour complied fully with California law. *Id.* at 1027. The court held that the rounding system at issue was neutral on its face and in practice, as the system did not systematically undercompensate employees over time. *Id.* The court found it immaterial that, with regard to the two plaintiffs, the rounding system had "reduced" their total work hours over time. *Id.* at 1027-28. Rather, the material question was whether the rounding system increased time in a sizable percentage shifts and decreased it in a sizable percentage of others. Even though employees who experienced a reduction averaged a loss of 2.33 minutes per shift worked, the court still concluded that the rounding system was sufficiently "evenhanded" and thus reversed the denial of the employer's summary adjudication motion. *Id.* at 108 n.4, 1028.

Then, in 2019, the California Court of Appeal again upheld a quarter-hour rounding policy in *Ferra v. Loews Hollywood Hotel, LLC*, 40 Cal. App. 5th 1239, 1254-55 (2019). The court held the rounding system lawful as a matter of law even though rounding increased the putative class's daily work hours in only 22.8% of

-9-

1   the shifts.  Notably, *Ferra* held that even where the net effect of a quarter-hour

2   rounding system is to slightly reduce employees' overall compensation, such

3   statistical differences do not qualify as a "systematic under-compensation"

4   necessary to render a rounding system unlawful.  *Id.*

5      Third, just last year, the California Court of Appeal decided *David v. Queen*

6   *of the Valley Med. Ctr.*, 51 Cal. App. 5th 653, 658 (2020) in which a similar even-

7   handed rounding system resulted in the reduction of more time entries than it

8   increased, and the net effect of rounding on average of rounding reduced hours

9   worked by 1.56 minutes per shift (a .26% reduction of aggregate hours worked).

10  The trial court granted (and the court of appeal affirmed) summary judgment to the

11  employer on the ground that such a small discrepancy in a system that automatically

12  rounded to the nearest set increment did not violate California law.  *Id.* at 659-60,

13  664-65 (noting that a .26% aggregate reduction from rounding "statistically

14  meaningless").

15     In addition, because this case is in federal court where Ninth Circuit precedent

16  controls, the Court is bound to follow *Corbin v. Time Warner Ent.*, 821 F.3d 1069,

17  1076-77 (9th Cir. 2016), which also held rounding to the nearest 15 minutes to be

18  lawful even where it decreases employees' total hours in specific cases.  Notably,

19  the Ninth Circuit commented that, even though the California Supreme Court had

20  never formally held that *See's Candy* (or its progeny) was correctly decided, the

21  Ninth Circuit must follow California appellate cases unless there is a clear indication

22  the California Supreme Court will reject them, especially where the DLSE has long

23  held the same enforcement position.[18]  *Id.* at 1076, n. 4.

24     There is no way to reconcile the holdings of this internally consistent line of

25  appellate authority with Plaintiff's allegation that Cox's time rounding system is

26  unlawful.  The rounding system here is materially indistinguishable from the ones

27

28    [18]  The manual specifically cites *See's Candy* in support.

-10-

upheld in these published cases in that all of the systems round clock entries to the nearest quarter hour.  In each case, the system increased hours in a sizable number of shifts and decreased it in a sizable (sometimes larger) number of shifts, and even where the system as a whole reduced time more than it increased it, the courts held as a matter of law that the small differences did not create a triable issue of fact that the rounding system was unlawful.  In every case where the system rounded to the nearest 15 minute increment, the Court granted summary judgment to the employer.

Plaintiff trumpets the metric that roughly four times as many UHTs experienced a net reduction of at least one minute from rounding as a net increase of at least one minute.  But no court has decided the lawfulness of rounding based on the number of individuals experiencing an aggregate increase or decrease of any size.  The statistic does not capture the true impact of rounding because it does not distinguish magnitude of changes, so it cannot fairly be used to assess whether the system on a day-to-day basis operated evenhandedly.

Assume, for example, that there are five employees who worked over different periods of time.  Two worked for just three weeks in 2019, two worked throughout 2020, and one worked an entire four-year class period.  For all of them, rounding increased or had no impact on their hours between 40-60% of the shifts, but the shortest term employees ended up with a net decrease of 1 minute, the medium-term employee ended up with a net decrease of 3 minutes, and the longest-term employee ended up with a net increase of 15 minutes.  The net impact of rounding for these employees was actually positive (+7 minutes), but 80% of them had their total time reduced as a result of rounding.  Moreover, the analysis does not account for the length of time any of these people worked.  In short, looking at the number of employees with a net decrease or increase is a poor substitute for looking at net impact for the class or the frequency that rounding increased or decreased the hours recorded by impacted shift.

The Court should draw two conclusions here.  First, where the facts are

-11-

materially undisputed, as they are here, as to the impact of a system that rounds time to the nearest 15 minutes on total hours worked for a class, the Court can properly decide the rounding claim on a motion for summary judgment (which is why both sides here are moving for summary judgment).  Second, there is not just one, but ***half a dozen binding precedents*** that support Cox's position and reject Plaintiff's. Rounding to the nearest 15 minutes for timekeeping purposes is entirely lawful, which justifies granting partial summary judgment as to the First Cause of Action.

### 2.   The Recent California Supreme Court *Donohue* Case Does Not Impact The Analysis

Plaintiff has previously argued and will likely argue again that the California Supreme Court's recent decision in *Donohue v. AMN Services, LLC*, 11 Cal. 5th 58 (2021) invalidates all the cases Cox cites above.  Plaintiff is mistaken.

In *Donohue*, the California Supreme Court addressed a distinct "meal period rounding" issue.  Specifically, it addressed whether an off-duty meal period would be deemed compliant with Labor Code Sections 226.7 and 512 when it was actually taken after the fifth hour worked or was less than 30 minutes but rounding the time entries would make it ***appear*** timely and the requisite 30 minutes in length.  In rejecting the notion that late or short meal periods can be "rounded" into compliance, the Court distinguished the analysis of meal period rounding from rounding for purposes of calculating time worked—which is the issue actually being addressed in this motion.  The Court expressly stated that it "assum[ed] the validity" of the existing precedents on rounding for timekeeping purposes and that it was ***not*** deciding "the validity of the rounding standard articulated in *See's Candy I.*" 11 Cal. 5th at 72.  As mentioned above, in the absence of the California Supreme Court disapproving of the unbroken line of rounding authorities, this Court is bound to follow the Ninth Circuit precedent in *Corbin* and the multiple state appellate decisions set forth above.  *See Corbin*, 821 F.3d at 1075 n. 4.

Similarly, Plaintiff may seek to confuse the issues by citing to *Troester v.*

1   *Starbucks Corp.*, 5 Cal.5th 829 (2018), where the California Supreme Court

2   addressed the extent that California recognizes the FLSA *de minimis* doctrine, under

3   which an employer could refuse to pay for work tasks it knows its employees

4   perform after clocking out each day that take only a few minutes to perform (such as

5   deactivating an alarm or locking up a store after closing).  Unlike rounding, there is

6   nothing "evenhanded" about simply systematically refusing to pay for work tasks

7   because they take small amounts of time.  In truth, the *de minimis* and rounding

8   doctrines are completely distinct and are governed by different federal regulations.

9   Compare 29 CFR § 785.48 (FLSA rounding regulation) and 29 CFR § 785.47

10  (FLSA *de minimis* regulation).  Furthermore, both the *Ferra* and *David* followed

11  *Troester*, and neither court recognized *Troester* as relevant to the rounding analysis.

12          In sum, Plaintiff has no case law to counter the line of cases Cox has cited the

13  confirm that rounding time entries to the nearest 15-minute increment is lawful.

14  **B.      The Fourth Cause of Action for Inaccurate Wage Statements Fails**
            **as a Matter of Law Because Cox Was Entitled to Use Lawful**
15          **Rounded Timekeeping Entries to Report Hours Worked on UHTs'**
            **Itemized Wage Statements**
16

17          Plaintiff has separately advanced the argument that, even assuming this Court

18  follows the unbroken line of binding precedents that hold that rounding is a lawful

19  means to measuring employee's hours worked for purposes of calculating their pay,

20  such employers who round nonetheless must list on the wage statement the total

21  "raw" hours worked during the pay period.  ***No case has ever adopted this view of***

22  ***the wage statement laws***, it is inconsistent with multiple published cases, and it also

23  is inconsistent with the entire notion that employers may measure employee time for

24  pay purposes by rounding it to the nearest increment.

25          The fundamental analytical error in Plaintiff's imagined version of the law, is

26  that it presumes that where an employer lawfully rounds, the law views the "hours

27  worked" as the raw clock entries rather than the rounded clock entries.  In fact,

28  where an employer rounds time, the rounded entries are the operative measure of an

-13-

employee's "hours worked."  The federal rounding regulation that California has adopted described rounding as an acceptable "practice of computing working time."  29 CFR § 785.48.  The DLSE Enforcement Manual further explains that California "utilizes the practice of the U.S. Department of Labor of 'rounding' employee's hours to the nearest five minutes, one-tenth or quarter hour *for purposes of calculating the number of hours worked*."  (emphasis added).  The Labor Commissioner does not limit this guidance simply to determining wages paid but for "enforcement purposes" generally.  DLSE Policies and Procedures Manual, § 47.3.

In *See's Candy*, 210 Cal. App. 4th 889, the Court of Appeal addressed and rejected the notion that rounded hours are something distinct from hours worked.  In that case, the plaintiff argued that Labor Code Section 204 requires employers to pay employees all wages, and "that using unrounded figures within a finite time period is the only way to measure 'all' earned wages."  The court in *See's Candy* rejected the entire premise of the argument that "hours worked" exist separately from the rounded figure, and noted that the governing regulation allowed the employer to *measure hours worked based on rounded figures*: "[T]he question whether all wages have been paid is different from the issue of how an employer calculates the number of hours worked."  *Id.* at 905.

It is thus unsurprising that in the cases that have granted summary judgment to the employer on rounding, such a ruling has included granting summary judgment to a derivative wage statement claim.   *See, e.g., AHMC Healthcare*, 24 Cal. App. 5th at 805-06, 815-16 (noting that plaintiff had also asserted a wage statement claim that would now be subject to order requiring trial court to grant summary adjudication on all rounding claims); *Lemus v. Denny's Inc.*, 2015 WL 13740136, at * 16 (C.D. Cal. July 31, 2015) (dismissing rounding and derivative wage statement claim on summary judgment).

Plaintiff contends that the purposes of the wage statement law is to provide employees the information to determine if their pay was calculated accurately.

While that is true as a general statement, it does not support the conclusion that the employer must list raw hours worked for the pay period that is not used to calculate their pay.

To the contrary, the court in *Soto v. Motel 6 Operating, L.P.*, 4 Cal. App. 5th 385 (2016), explained that Section 226 has very specific requirements and it is improper to interpret it "broadly," but rather courts should "apply common sense to the language at hand and interpret the statute to make it workable and reasonable." *Id.* at 390, 393. Using that method of interpretation, it rejected the argument that wage statements had to show the amount of accrued vacation wages the employee earned during the pay period. The court reasoned that, even if one were to assume that accrued vacation pay qualifies as wages, interpreting Section 226(a) to require the employer to list accrued vacation each pay period would violate the rule that statutes "must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." *Id.* at 392. Because the purpose of listing wages earned was so employees could see that it matched the value of their paycheck, requiring listing accrued vacation that was not paid out in that same paycheck would be inconsistent with the reason for the reporting requirement. *Id.* at 392-93; *Accord Magadia v. Wal-Mart Assocs.*, 999 F.3d 668, 680-81(9th Cir. 2021) (rejecting broad interpretation that would require employers to list an hourly rate and hours worked figure for overtime true-ups paid on quarterly bonuses).

The same logic applies here. The purpose of listing the "hours worked" figure on a wage statement is so the employee can see what the employer listed as the hours worked for purposes of calculating his or her wages. If the law permits employers to use rounded time entries for that purpose (which is plainly does), then the employer must list the ***hours worked figure it lawfully uses to calculate wages***, as the employee would have no way to determine from seeing the aggregate "raw hours" for the two-week pay period whether the employer had actually rounded every time clock entry to the nearest 15 minutes. To know that, the employer would

-15-

be required to list on the wage statement each raw and rounded punch, an exercise even Plaintiff does not advocate.  Requiring the employer to list both the total rounded and unrounded hours over a 14-day pay period would only cause employee confusion and create an administrative burden on employers who round time with no benefit to the employee whatsoever.  A "common sense" reading of the law that presumes that rounding is an acceptable practice would not interpret the wage statement law in such an arbitrary manner.  *See Steinhebel v. Los Angeles Times Communications,* 126 Cal. App. 4th 696, 709 (2005) (explaining that courts should avoid adopting novel interpretations of the Labor Code that suddenly declare longstanding accepted practices to be unlawful)

In sum, there is no triable issue of fact here whether Cox listed the items required on the wage statement accurately.  The only claimed inaccuracy—listing rounded time as hours worked rather than raw time—is not an error at all, but is simply part and parcel of how an employer who rounds time is supposed to report hours worked.  Accordingly, Cox respectfully requests that the Court grant classwide summary judgment as to the Fourth Cause of Action.

### C.     Plaintiff's Wage Statement and Final Pay Claims Fail for the Separate Reason That Cox Had a Reasonable Good Faith Belief That Its Rounding System Was Lawful

Separate and apart from the question of whether the Court holds that Cox's system of rounding UHT time to the nearest 15 minutes is lawful, Cox is entitled to partial classwide summary judgment on the class claims to recover wage statement or waiting time ***penalties*** arising from its rounding system.  Both Labor Code Sections 203 and 226(e) recognize a good faith defense to the award of penalties where the employer honestly and reasonably believed that it had paid all wages owed and reported such times accurately on the wage statement.  Under Section 203, a violation must be "willful" to trigger penalties while under Section 226(e) it must be "knowing and intentional."

The California Supreme Court has expressly held that the award of waiting time penalties is not "willful" where, as here, the employer has a reasonable good faith believe that no wages were owed.  *Smith v. Rae-Venter Law Group*, 29 Cal. 4th 345, 354 n.3 (Cal. 2002).  The California Supreme Court has also held that, under the Labor Code, the terms "willful" and "knowing and intentional" are functional equivalents.  *Ex Parte Trombley*, 31 Cal. 2d 801, 807-08 (1948); *see also Woods v. Vector Marketing Corp.*, 2015 WL 2453202, at *4 (N.D. Cal. May 22, 2015) (relying on *Trombley* to interpret "knowing and intentional" element of Labor Code Section 226(e) as equivalent to "willful.").

Here, Cox not only reasonably relied on the DLSE guidance and a long line of precedent that consistently held that rounding to the nearest 15 minutes was lawful, but a court issued a judgment in Cox's favor on the very issue in another class action brought on behalf of the same putative employee class, *Lassiter v. CoxCom, Inc.*, Case No. 37-2008-00084510-CU-OE-CTL.[19]  Although the class was never certified there, the trial court answered the question whether the rounding system as a whole was lawful without limiting its analysis to how the system impacted the named plaintiff.  Where a court rules that an employer's pay system is lawful, and the employer continues to operate under that system for the next 10 years without any material change in the law, that qualifies as the employer "reasonably and in good faith" understanding that its system is lawful.  To impose penalties on Cox for non-compliance with laws with which the courts expressly informed Cox complied with the law would be fundamentally unfair and inconsistent with the text of Sections 203 and 226.  *See Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1202-03 (2008) (where employer relied on taxing authority guidance that it did not owe further wages, imposition of waiting time penalties improper); *Cf. Frank v.*

---

[19]   A copy of the trial court's order is attached as Exhibit B to the concurrently-filed Appendix of Evidence.

-17-

1   *McQuigg,* 950 F.2d 590, 598-99 (9th Cir. 1991) (Postal Service entitled to good
2   faith defense where it relied on DOL opinion letters approving its practice).

3        **D.**    **Plaintiff's Derivative Final Wage, Unfair Competition and PAGA Claims Fail Because They Require a Finding That Cox's Rounding System Resulted in Cox Failing to Pay Wages Owed to UHTs and/or Misreporting Their Hours Worked**

5        Both the Fifth and Sixth Causes of Action for unfair competition and PAGA
6   violations, respectively, borrow other Labor Code violations and award additional
7   remedies for those same violations.  Thus, where the underlying claims fail as a
8   matter of law, so too do the PAGA and unfair competition claims.  *See Steinhebel*,
9   126 Cal. App. 4th at 712 (derivative unfair competition and waiting time penalties
10  claim fail with underlying Labor Code claims); *Price v. Starbucks Corp.*, 192 Cal.
11  App. 4th 1136, 1147 (2011) (same as to derivative PAGA claims).  For these
12  reasons, Cox respectfully requests that the Court grant classwide summary judgment
13  of the Fifth and Sixth Causes of Action to the extent they are derivative of the First
14  and Fourth Causes of Action even though the PAGA claims based on the same
15  underlying theories of wrongdoing are not technically part of the certified claims.

16  **IV.**  **CONCLUSION**

17       Based on the foregoing, Cox respectfully requests that this Court grant
18  classwide summary judgment in Cox's favor as to all the certified claims and to the
19  derivative PAGA claims.

21  DATED: September 27, 2021 SHEPPARD MULLIN RICHTER & HAMPTON LLP

23           By    */s/ Thomas Kaufman*
                  THOMAS R. KAUFMAN
24                    Attorneys for Defendants
25              COX COMMUNICATIONS CAL., LLC, and COX COMMUNICATIONS, INC.

-18-