David P. Myers (SBN 206137)
dmyers@myerslawgroup.com
Jason Hatcher (SBN 285481)
jhatcher@myerslawgroup.com
Cassandra A. Castro (SBN 334238)
ccastro@myerslawgroup.com
**THE MYERS LAW GROUP, A.P.C.**
9327 Fairway View Place, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 919-2027
Facsimile: (888) 375-2102

Attorneys for Plaintiff and the Class.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTONE FELTZS, on behalf of himself and all others similarly situated<br><br>PLAINTIFF,<br><br>V.<br><br>COX COMMUNICATIONS CAL., LLC, a Delaware Limited Liability Company; COX COMMUNICATIONS, INC. a Delaware Corporation; and DOES 1 through 100, inclusive<br><br>DEFENDANTS. | Case No.: 8:19-cv-02002-JVS-JDE<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PARITAL SUMMARY JUDGMENT**<br><br>Date:          October 25, 2021<br>Time:          1:30 p.m.<br>Courtroom: 10C<br><br>Action Filed: July 26, 2019<br>Removed: October 21, 2019 |

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................... 1

II.   PROCEDURAL BACKGROUND .................................................. 3

III. STATEMENT OF UNDISPUTED FACTS ................................... 4

  A.  Plaintiff and The Class' Job Duties ...................................... 4

  B.  Defendants' Time Shaving/Rounding Practice Systematically
      Undercompensates the Class Members ................................. 4

     1.  Time Records for Class Members ..................................... 4

     2.  Clock-In and Clock-Out Entries Establish Compensable Time.................. 5

     3.  Defendants' Punctuality and Tardiness Policies and Practice ..................... 6

     4.  Underpaid Hours and Wages Due to Defendants' Time Shaving/Rounding
        Practice ............................................................................ 6

  C.  Defendants' Wage Statements Omit Actual Total Hours Worked .................. 7

IV. ARGUMENT ................................................................................... 8

  A.  Standard for Rule 56 Summary Judgment............................ 8

  B.  Issue One: Defendants' Eleventh Affirmative Defense Fails As a Matter of
      Law as Defendants' Time Shaving/Rounding Practice Systematically
      Undercompensated the Class Members as a Group ......................... 9

     1.  California Net Effect Test for Systematic Undercompensation................. 10

     2.  Defendants' Time Shaving/Rounding Practice Fails Both Prongs of the Net
        Effect Test....................................................................... 11

        a) Net Surplus of Uncompensated Hours for Supermajority ............... 11

        b) Net Economic Loss to Supermajority of the Class............................ 12

C.  Issue Two: Liability is Established as a Matter of Law in Favor of the Class Members for Plaintiff's First Cause of Action for Unpaid Wages Due to Illegal Rounding ............................................................................................. 13

D.  Issue Three: Partial Summary Judgment in Favor of the Class Members for Plaintiff's Fourth Cause of Action for Defendants' Failure to Provide Accurate Wage Statements is Established as a Matter of Law ...................... 13

  1.  Defendants' Rounded Time Wage Statements Violate Labor Code §§ 226(a)(2) and 226(a)(9) .............................................................................. 14

  2.  Rounded Hours Paid Do Not Mirror Actual Hours Worked..................... 14

  3.  Actual Hours Worked Cannot Promptly and Easily Be Determined from the Wage Statement Alone ...................................................................... 17

  4.  Defendants Knowingly and Intentionally Failed to Comply with Labor Code 226 §(a) ............................................................................................ 18

E.  Issue Four: Partial Summary Judgment Should Be Granted As a Matter of Law on Plaintiff's Sixth Cause of Action for PAGA Civil Penalties for Wage Statement Violations.................................................................................... 20

V.  CONCLUSION........................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AHMC Healthcare, Inc. v. Superior Court*

(2018) 24 Cal.App.5th 1014.................................................................passim

*Bates v. Leprino Foods Co.*

(E.D. Cal. Oct. 30, 2020) 2020 U.S.Dist.LEXIS 204511, 17 ................................. 17

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,

509 U.S. 209 (1993) ................................................................................ 9

*Cabardo v. Patacsil*

(E.D.Cal. 2017) 248 F.Supp.3d 1002 ....................................................... 19

*Canh Le v. DirecTV, LLC,*

No. 2:16-cv-01369-SVW-AS et al, 2017 U.S. Dist. LEXIS 221945, 6 (C.D. Cal. Nov. 2, 2017) .................................................................................... 9

*Cicairos v. Summit Logistics, Inc.*

(2005) 133 Cal.App.4th 949 ................................................... 2, 14, 16

*Ellsworth v. Schneider Nat'l Carriers, Inc.*

(C.D. Cal. Dec. 11, 2020) 2020 U.S.Dist.LEXIS 251677, 18 ....................... passim

*Emblaze Ltd. v. Apple Inc.*,

38 F. Supp. 3d 1108 ................................................................................. 9

*Feltzs v. Cox Communs. Cal., LLC*

(C.D. Cal. June 1, 2021, No. SACV 19-2002 JVS (JDEx)) 2021 U.S.Dist.LEXIS 146418, 15 ...................................................................... 2, 4, 14

*Furry v. East Bay Publishing, LLC*

(2018) 30 Cal.App.5th 1072 .................................................................... 19

*Kao v. Holiday*

(2017) 12 Cal.App.5th 947 ....................................................................... 19

*Levanoff v. Dragas*

(2021) 65 Cal.App.5th 1079 ................................................................... 1, 10

*Maldonado v. Epsilon Plastics, Inc.*

(2018) 22 Cal.App.5th 1308 ............................................................. 16, 17

*Rebel Oil Co., Inc. v. Atl. Richfield Co.*,

51 F.3d 1421 (9th Cir. 1995) ..................................................................... 9

*See's Candy Shops, Inc. v. Superior Court*

(2012) 210 Cal.App.4th 889 ............................................................passim

*Silva v. See's Candy Shops, Inc.*

(2016) 7 Cal.App.5th 235 ................................................................ 10, 11

*SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*,

188 F.3d 11 (1st Cir. 1999) ....................................................................... 9

*Soto v. Motel 6 Operating, L.P.*,

4 Cal. App. 5th 385 .................................................................................. 18

*Southern California Gas Co. v. City of Santa Ana*,

336 F. 3d 885 (9th Cir. 2003) .................................................................... 9

*Tulalip Tribes of Wash. v. Wash.*,

783 F.3d 1151 (9th Cir. 2015) ................................................................... 9

*York v. Starbucks Corp.*

(C.D. Cal. Dec. 3, 2009) 2009 U.S.Dist.LEXIS 131489, 26 .................. 2, 14, 15, 16

*Zavala v. Scott Brothers Dairy, Inc.*

(2006) 143 Cal.App.4th 585 ......................................................... 2, 14, 16

**Statutes**

29 C.F.R. §785.48(b) ............................................................................... 11

Cal. Labor Code §§ 510, 1194, 1194.2 ................................................. 1, 13

Cal. Labor Code §§2699, *et seq*. ............................................................... 3

Cal. Labor Code §226(a) ......................................................................... 20

Cal. Labor Code §226(a)(2) .................................................................. passim

Cal. Labor Code §226(a)(9) .................................................................. passim

Cal. Labor Code § 226(e).................................................................... passim

Cal. Labor Code §226.3 .......................................................................... 20

Cal. Labor Code §226.3 and §2699 ......................................................... 3

Federal Rule of Civil Procedure §56(a) ................................................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

For the relevant time period of July 26, 2015 to June 1, 2021, Defendants' Cox Communications Cal., LLC and Cox Communications, Inc. (collectively "Defendants" or "Cox") time shaving/rounding practice resulted in (i) a net surplus of **9,317.5 *uncompensated* hours** for the Class Members; and (ii) a net economic loss to ***462 Class Members***, which is equivalent to ***80.5% of the entire Class***, that totaled ***$622,447.54*** in undercompensated work (including interest)[1]. [Uncontroverted Facts ("UF") 21, 22, 23]. The net surplus of uncompensated hours and net economic loss, at supermajority (over 75%) levels, resulted on an annual basis due to Defendants' time shaving/rounding practice. [UF 21-31].

The uncontroverted facts establish that Defendants' time shaving/rounding practice systematically, over time, and year after year, undercompensated employees such that Defendants failed to compensate the Class Members properly for all the time they have actually worked. Employers violate Labor Code §§ 510, 1194, 1194.2 and the Wage Order No. 4-2001 when the net effect of the rounding practice systematically undercompensates employees. *Levanoff v. Dragas* (2021) 65 Cal.App.5th 1079, 1099-1100; *AHMC Healthcare, Inc. v. Superior Court* (2018) 24 Cal.App.5th 1014, 1027-1028; *See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 901-902 ("*See's Candy I*").

Next, pursuant to California Labor Code §226(a)(2) and (a)(9), every employer shall, at the time of each payment of wages, furnish each of its employees with an accurate itemized statement in writing showing, among other things, (a)(2) the total hours worked by the employee in the pay period and (a)(9) the corresponding number of hours worked at each hourly rate by the employee for the pay period.

It is undisputed that Defendants issued wage statements to Plaintiff and the

---

[1] Interest is calculated through trial.

Class that omitted the precise, actual amount of total hours worked during the applicable pay period in violation of Labor Code §226(a)(2) and omitted the precise, actual amount of corresponding hours worked at each corresponding rate in violation of Labor Code §226(a)(9). [UF 32-35, 43-45].  Instead, Defendants issued Plaintiff and the Class Members "rounded time wage statements" that only listed the "rounded hours paid". [UF 32-35, 43-45].

Under Labor Code §226(a), the obligation to list the total hours worked and corresponding hours worked at each hourly rate "during the pay period ***can only be satisfied by listing the precise, actual number of hours worked***." *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 955 (Emphasis added); *Feltzs v. Cox Communs. Cal., LLC* (C.D. Cal. June 1, 2021, No. SACV 19-2002 JVS (JDEx)) 2021 U.S.Dist.LEXIS 146418, at *15-17; *Zavala v. Scott Brothers Dairy, Inc.* (2006) 143 Cal.App.4th 585, 591-592; *York v. Starbucks Corp.* (C.D. Cal. Dec. 3, 2009) 2009 U.S.Dist.LEXIS 131489, at *26-27.

It is undisputed that Defendants' deem that Class Members' compensable time starts when the Class Members clock into the timekeeping system and that compensable time ends when the Class Members' clock out of the timekeeping system. [UF 8-13]. Defendants capture the Class Members' clock-in and clock-out times by the minute and then calculate the actual hours worked down to the minute, which is represented in a decimal point. [UF 8-13]:

Despite this, Defendants do not pay Class Members based on this actual compensable time (i.e. the actual hours worked). Instead, prior to paying the Class Members, Defendants time shave or "round" the time entries and then pay the Class Members based on these "rounded hours". [UF 1-3, 21-31].

Defendants' "rounded time wage statements" violate Labor Code §226(a)(2) and §226(a)(9) on those occasions that the rounded hours do not exactly map on to the hours actually worked for the pay period. *Feltzs,* 2021 U.S.Dist.LEXIS 146418 at *15-17; [Dkt. 55 at p. 10].

For the statutory time period of July 26, 2018 to June 1, 2021, there were 22,192 wage statements issued where the actual hours worked on the Class Members' time records did not mirror the rounded hours paid for the same pay period. [UF 39]. It is undisputed that this establishes statutory penalties of $1,438,350.00, pursuant to Labor Code §226(e), and civil penalties of $5,548,000.00, pursuant to Labor Code §226.3 and §2699.

Given these undisputed facts, summary adjudication should be granted on all issues noticed in Plaintiff's motion in favor of the Class Members and against Defendants on the (i) Second Amended Complaint's ("SAC") First Cause of Action for Unpaid Wages Due to Illegal Rounding, (ii) SAC Fourth Cause of Action for Failure to Provide Accurate Wage Statements, (iii) SAC Sixth Cause of Action for Private Attorneys General Act as to civil penalties for unpaid wages and wage statement violations, and (iv) Defendants' Eleventh Affirmative Defense alleging Lawful Rounding.

## II.   PROCEDURAL BACKGROUND

On July 26, 2019, Plaintiff filed a Class Action Complaint in Orange County Superior Court. On October 16, 2019, Plaintiff filed a First Amended Complaint adding a sixth cause of action for a Private Attorneys General Act ("PAGA") claim pursuant to Labor Code §§2699, *et seq*.. On October 18, 2019, Defendants removed the case to this Court.

On Feburary 18, 2020, Plaintiff filed a Second Amended Complaint. [Dkt. 18]. The SAC alleges six causes of action (1) Unpaid Wages Due to Illegal Rounding, (2) Failure to Provide Meal Periods, (3) Failure to Pay All Wages Due at Separation, (4) Failure to Provide Accurate Wage Statements, (5) Unfair Competition, and (6) Private Attorneys General Act. [Dkt. 18].

Defendants' Answer to Plaintiff's Unverified First Amended Complaint ("Answer") is the operative Answer in this case. [Dkt. 17 at p. 2]. Defendants' Eleventh Affirmative Defense alleges Lawful Rounding. [Dkt. 1-1 at p. 58].

On April 23, 2021, Defendants field a Motion for Partial Summary Judgment against the SAC's First, Fourth, Fifth and Sixth Causes of Action. [Dkt. 34].

On April 26, 2021, Plaintiff filed a Renewed Motion for Class Certification and Defendants filed a Renewed Motion to Deny Class Certification. [Dkt. 36]; [Dkt. 35].

On June 1, 2021, the Court denied Defendants' Motion for Partial Summary Judgment. [Dkt. 55]; *Feltzs,* 2021 U.S.Dist.LEXIS 146418.

On June 1, 2021, the Court granted class certification as to Plaintiff's Time Shaving/Rounding Class and Wage Statement Class and denied class certification as to Plaintiff's meal period claims. [Dkt. 56]; *Feltzs,* 2021 U.S.Dist.LEXIS 146447. The Court granted certification with respect ot the time shaving/rounding and wage statement claims. (Id.)

## III.   STATEMENT OF UNDISPUTED FACTS

### A.   Plaintiff and The Class' Job Duties

Cox provides residential cable services, including internet, telephone, and video service throughout the nation. Cox employs Universal Home Technicians ("UHTs") (the Class) throughout California to provide residential installation and maintenance services to its California customers. [Dkt. 55 at p. 1].

### B.   Defendants' Time Shaving/Rounding Practice Systematically Undercompensates the Class Members

#### 1.   Time Records for Class Members

At all relevant times, Defendants' timekeeping system records the Class Members' clock-in and clock-out entries down to the minute. [UF 1].

| 619841 | Feltzs II,Christone T. | 6/25/2018 | 7:43:30AM | 2:14:03PM | 6.51 | |
|--------|------------------------|-----------|-----------|-----------|------|--|

| 619841 | Feltzs II,Christone T. | 6/25/2018 | 3:16:01PM | 7:34:30PM | 4.31 | |
|--------|------------------------|-----------|-----------|-----------|------|--|

After capturing the time entry by the actual minute, Defendants' system then calculates the actual hours worked down to the minute, which is represented in a decimal point. [UF 2].

Prior to paying the Class Members, Defendants then rounded the precise, actual

hours worked and paid the Class Members based on the rounded time. [UF 3]. At all relevant times, Cox rounds the actual minute time entry to the nearest 15-minute increment based on 7 minutes. [UF 4].

By way of example, for the Class Representative, on June 25, 2018, Defendants' timekeeping system recorded 6.51 hours for the time entries between 7:43:30 AM to 2:14:03 PM and 4.31 hours for the time entries of 3:16:01 PM to 7:34:30 PM. [UF 5].

This represents a total of 10.82 hours for the day or 10 hours and 49 minutes. After calculating the actual hours worked, and before paying the Class Representative, Defendants' timekeeping system/payroll system then converted the actual hours worked to rounded hours. [UF 6].

For June 25, 2018, Defendants' rounding/time shaving practice, via the timekeeping/payroll system, converted the Class Representative's 10.82 hours to 10.75 hours. [UF 7].

### 2. Clock-In and Clock-Out Entries Establish Compensable Time

Defendants deem that Class Members' compensable time starts when the Class Members clock into the timekeeping system, resulting in Cox's "immediate control" over the Class Members. [UF 8]. For Cox, immediate control is compensable time. [UF 8]. Defendants deem that time on-the-clock constitutes compensable time for the Class Member. [UF 9].

Defendants' policy and practice is that after the Class Members clock-in, Defendants have the control to instruct the Class Members what to do and the Class Members are subject to discipline. [UF 10]. Defendants are adamant that Defendants have a valid prohibition against employees working off the clock. [UF 11].

Defendants would never instruct the Class Members to clock out and continue working for 10 to 15 minutes in order for the company to save money. [UF 12]. Class Members are not subject to discipline for the Class Member's conduct while off-the-clock. [UF 13].

Defendants record and monitor Class Members via GPS data. [UF 14]. Defendants effectively manage the Class Members time while on the clock, Defendants terminated one UHT for failing to perform tasks and duties while on the clock based on GPS records. [UF 15]. Defendants' supervisors are accountable for reviewing and auditing Class Members' time entries.[UF 16].

### 3. Defendants' Punctuality and Tardiness Policies and Practice

Defendants do not take corrective action when a Class Member clocks in up to 7 minutes before the start of their shift. [UF 17]. Defendants have maintained a uniform attendance/tardiness policy and practice that places a premium on punctuality for the benefit of their customers' needs. [UF 18]. Clocking in even one minute late is considered tardy under Defendants' attendance policy. [UF 19]. For Defendants, "late is late" and warrants corrective action. [UF 20].

### 4. Underpaid Hours and Wages Due to Defendants' Time Shaving/Rounding Practice

Comparing the rounded hours paid to the actual hours worked from the time punch records, from July 26, 2015 through June 1, 2021, Defendants' time shaving/rounding practice resulted in a net surplus of 9,317.5 hours that were uncompensated. [UF 21]. Out of 574 Class Members, 462 Class Members had a net underpayment due to Defendants' time shaving/rounding practice. [UF 22]. Thus, 80.5% of the Class were underpaid due to Defendant's time shaving/rounding. [UF 23]. The total net underpayment of wages, including interest, due to Defendants' rounding/time shaving practice equals $622,447.54. [UF 21].

This result was consistent year after year. [UF 21-31]:

- From July 26, 2015 to June 1, 2021, there was a net surplus of 677.5 uncompensated hours for 299 Class Members, which represents 77.3% of the class and $50,826.11 in net underpaid wages (including interest). [UF 25].

- For the 2016 year, there was a net surplus of 1,793.0 uncompensated hours for 332 Class Members, which represents

81.2% of the class and $129,992.34 in net underpaid wages (including interest). [UF 26].

- For the year 2017, there was a net surplus of 1,560.5 uncompensated hours for 283 Class Members, which represents 76.7% of the class and $109,356.85 in net underpaid wages (including interest). [UF 27].

- For the year 2018, there was a net surplus of 1,404.8 uncompensated hours for 281 Class Members, which represents 77.2% of the class and $95,080.73 in net underpaid wages (including interest). [UF 28].

- For the year 2019, there was a net surplus of 1,558.4 uncompensated hours for 287 Class Members, which represents 78.2% of the class and $100,039.09 in net underpaid wages (including interest). [UF 29].

- For the year 2020, there was a net surplus of 1,609.1 uncompensated hours for 264 Class Members, which represents 79.8% of the class and $96,220.81 in net underpaid wages (including interest). [UF 30].

- From January 1, 2021 to June 1, 2021, there was a net surplus of 714.2 uncompensated hours for 263 Class Members, which represents 79.0% of the class and $40,931.61 in net underpaid wages (including interest). [UF 31].

## C. Defendants' Wage Statements Omit Actual Total Hours Worked

From July 26, 2018 to June 1, 2021, Defendants issued wage statements to the Class Members that did not list the the actual "total hours worked" or the actual "corresponding number of hours worked" to the applicable rate. [UF 33, 32]. Instead, Defendants issued wage statements to the Class Members that listed the total rounded hours paid and the corresponding number of rounded hours paid at the applicable rate. [UF 34, 35].

By way of example, the Class Representative's wage statement for the pay period of 6/16/2018 to 6/29/2018 lists a "Total" for "Current Hours" as 82.50 and "Overtime" hours as 2.50. [UF 36]:

1

2

3

4

5

6

7

8

9

10

11

**Cox Communications CAL., LLC**
1400 Lake Hearn Drive
Atlanta, GA 30319

| | | | Pay Group: | HFD-Hourly Friday End Date |
|---|---|---|---|---|
| | | | Pay Begin Date: | 06/16/2018 |
| | | | Pay End Date: | 06/29/2018 |

**Christone T. Feltzs II**

Employee ID: 00619841
Department: 4100053500-Install & Svc Res ORNG1
Location: CA Icon
Pay Rate: $23.960000 Hourly

TAX DATA
Marital Stat
Allowances
Addl. Pct.:
Addl. Amt.:

### HOURS AND EARNINGS

| | ------- Prior Period ------ | | | Current | ---------------- | ------------ YTD ---------- | | |
|---|---|---|---|---|---|---|---|---|
| Description | Begin Date | End Date | Rate | Hours | Earnings | Hours | Earnings | Description |
| Regular | | | 23.960000 | 78.00 | 1,868.88 | 267.00 | 6,270.60 | Fed Withho |
| Overtime | | | 35.940000 | 2.50 | 89.85 | 33.00 | 1,050.90 | Fed MED/E |
| Meeting | | | 23.960000 | 2.00 | 47.92 | 5.00 | 119.80 | Fed OASDI |
| Holiday | | | | 0.00 | 8.00 | 160.00 | | CA Withhol |
| PTO | | | | 0.00 | 8.00 | 10.00 | 200.00 | CA OASDI |
| Suspension | | | | 0.00 | | 3.50 | 70.00 | |
| Train Pay | | | | 0.00 | | 348.00 | 6,960.00 | |
| Total: | | | | 82.50 | 2,006.65 | 674.50 | 14,831.30 | Total: |

12      For the same pay period, Defendants' timekeeping records provide that the

13 Class Representative's total actual hours worked were 82.65, based on his unrounded

14 timekeeping entries, and not 82.50. [UF 37]. For the same pay period, Defendants'

15 timekeeping records provide that the Class Representative's actual overtime hours

16 worked were 2.65, based on his unrounded timekeeping entries, and not 2.50. [UF 38].

17      Defendants' wage statements issued to the Class Members omit the precise,

18 actual number of hours worked except for any occasion when the rounded hours

19 exactly match the hours actually worked. From July 26, 2018 through June 1, 2021,

20 Defendants issued 22,192 wage statements listing rounded hours paid that did not

21 exactly match the total hours actually worked and/or the actual corresponding hours

22 worked at each rate. [UF 39].

23 **IV.   ARGUMENT**

24      **A.    Standard for Rule 56 Summary Judgment**

25      Federal Rule of Civil Procedure §56(a) provides that a party may move for

26 summary judgment on a part of each claim, or an affirmative defense, and that the

27 court shall grant summary judgment if the movant shows that there is no genuine

28 dispute as to any material fact and the movant is entitled to judgment as a matter of

law. *Southern California Gas Co. v. City of Santa Ana*, 336 F. 3d 885, 888 (9th Cir. 2003). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them… [The Court] rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Canh Le v. DirecTV, LLC*, No. 2:16-cv-01369-SVW-AS et al, 2017 U.S. Dist. LEXIS 221945, at *6 (C.D. Cal. Nov. 2, 2017) (*citing Tulalip Tribes of Wash. v. Wash.*, 783 F.3d 1151, 1156 (9th Cir. 2015)).

"In the Ninth Circuit, expert "opinion evidence is itself sufficient to create a genuine issue of disputed fact sufficient to defeat" summary judgment, but when "expert opinion is not supported by sufficient facts to validate it in the eyes of the law, ***or when indisputable record facts contradict or otherwise render the opinion unreasonable***, it cannot support a jury's verdict." *Emblaze Ltd. v. Apple Inc*., 38 F. Supp. 3d 1108, 1114-1115 (Emphasis added) (*citing Rebel Oil Co., Inc. v. Atl. Richfield Co*., 51 F.3d 1421, 1436 (9th Cir. 1995) (*quoting Brooke Group Ltd. v. Brown & Williamson Tobacco Corp*., 509 U.S. 209, 242 (1993)) (*citing SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp*., 188 F.3d 11, 25 (1st Cir. 1999) ("Expert testimony that offers only a bare conclusion is insufficient to prove the expert's point.")).

**B.**   **Issue One: Defendants' Eleventh Affirmative Defense Fails As a Matter of Law as Defendants' Time Shaving/Rounding Practice Systematically Undercompensated the Class Members as a Group**

"Rounding" is an affirmative defense against an unpaid wage claim. Time rounding practice is unlawful if it "systematically undercompensate[s] employees." *See's Candy I,* 210 Cal.App.4th at 902. To establish a lawful "rounding" affirmative defense, the employer must prove that the practice is (1) neutral on its face ***and*** (2) neutral in application such that the practice does not systematically undercompensate

employees ("Neutrality Test"). *Id.* at 907; *AHMC,* 24 Cal.App.5th at 1027-1028; *Levanoff,* 65 Cal.App.5th at 1099-1100 (outlining the "net effect" test to determine whether in application the rounding practice systematiclly undercompensated the employee group).

### 1.    California Net Effect Test for Systematic Undercompensation

Relevant to this case is the "net effect" test of the second prong of the conjunctive Neutrality Test. Under the "net effect" test, the Court must determine whether the time shaving/rounding practice resulted in a (i) net surplus of uncompensated hours or overcompensated hours for the group of employees, and (ii) net economic loss or net economic benefit to the employees viewed as a group. *Levanoff,* 65 Cal.App.5th at 1096-1100; *referencing See's Candy I,* 210 Cal.App.4th at 900-903; *Silva v. See's Candy Shops, Inc.* (2016) 7 Cal.App.5th 235 at 235, 242, 252 ("*See's Candy II*"); *AHMC,* 24 Cal.App.5th at 1014-1022, 1027-1028.

The uncontroverted facts establish that Defendants' time shaving/rounding practice systematically, over the relevant time period and on a yearly basis, resulted in (i) a net surplus of uncompensated hours for Class Members as a group, and (ii) net economic loss to a super majority (over 75%) of the Class Members. [UF 21-31].

These uncontroverted facts do not meet the requirements of the "net effect" test and thus fail the second prong of the Neutrality Test.

A time shaving/rounding practice is neutral in application if it does not systematically undercompensate employees where it results in a net surplus of compensated hours and a net economic benefit to employees viewed as a whole. *Levanoff,* 65 Cal.App.5th at 1100; *citing AHMC,* 24 Cal.App.5th at 1028.

Conversely, if the "rounding" practice results in a (i) net surplus of ***uncompensated*** hours for the employee group, and (ii) net economic ***loss*** to the employees, viewed as a group, the "rounding" practice systematically undercompensates employees and is unlawful. *See Levanoff;* 65 Cal.App.5th at 1096-1102 (applying the rounding "net effect" test to a dual rate pay practice); *referencing*

*See's Candy I,* 210 Cal.App.4th at 900-903; *See's Candy II,* 7 Cal.App.5th at 235, 242, 252; *AHMC,* 24 Cal.App.5th at 1014-1022, 1027-1028. When this occurs, the employer's application of the rounding practice "result[ed], over a period of time, in [the] failure to compensate the employees properly for all the time they have actually worked." *See's Candy I*; *citing* 29 C.F.R. §785.48(b).

It defies reason, credibility, and logic to argue that a pay practice that results in a net surplus of uncompensated hours across the employee group and net economic loss to the employee group as a whole (at a supermajority level) did not result in a failure to compensate the employees properly for all the time they have actually worked.

### 2. Defendants' Time Shaving/Rounding Practice Fails Both Prongs of the Net Effect Test

#### a) Net Surplus of Uncompensated Hours for Supermajority

Comparing the rounded hours paid to the actual hours worked from the time punch records, from July 26, 2015 through June 1, 2021, Defendants' time shaving/rounding practice resulted in a net surplus of 9,317.5 hours that were uncompensated. [UF 21]. This affected 80.5% of the Class Members, or 462 out of 574 Class Members. [UF 22, 23]. On an annual basis there was a net surplus of uncompensated hours at 677.5 (partial 2015), 1793.0 (2016), 1560.5 (2017), 1404.8 (2018), 1558.4 (2019), 1609.1 (2020), and 714.2 (partial 2021). [UF 24-31]. On an annual basis this affected 77.3%, 81.2%, 76.7% (2017), 77.2%, 78.2%, 79.8% and 79% of the Class Members, respectively. [UF 24-31]. This represents that a supermajority of the Class Members were negatively impacted by Defendants' time shaving/rounding practice on a yearly basis and in aggregate for the relevant time period.

If the "rounding" practice, in application, resulted in a net surplus of uncompensated hours the practice is unlawful unless only "bare" or "slight" majority of the employees lost time over the defined period. *AHMC,* 24 Cal.App.5th at 1024.

A "bare" or "slight" majority is a percentage equal to or less than 55.8%. *See Id.* at 1025-1029 (holding 52.1% of employees losing time and pay constituted a "bare" or "slight" majority while collecting cases showing a "bare" or "slight" majority equaled 53%, 55.8%, and 52.1%) [citations omitted].

Clearly, in this case the uncontroverted facts show a net surplus of uncompensated hours for a supermajority (over 75%) of the Class Members as a group and not a "bare" majority. [UF 24-31]. Accordingly, Defendants' time shaving/rounding practice fails the "net effect" test here.

### b) Net Economic Loss to Supermajority of the Class

Comparing the rounded hours paid to the actual hours worked from the time punch records, from July 26, 2015 through June 1, 2021, Defendants' time shaving/rounding practice resulted in a net economic loss of $622,447.54, including interest. [UF 21]. This affected 80.5% of the Class Members, or 462 out of 574 Class Members. [UF 22, 23]. On an annual basis there was a net economic loss to the Class Members of $50,826.11 (partial 2015); $129,992.34 (2016); $109,356.85 (2017); $95,080.73 (2018); $100,039.09 (2019); $96,220.81 (2020); and $40,931.61 (partial 2021). [UF 24-31]. On an annual basis this affected 77.3%, 81.2%, 76.7% (2017), 77.2%, 78.2%, 79.8% and 79% of the Class Members, respectively. [UF 24-31]. This represents a  net economic loss to a supermajority of the Class Members on a yearly basis and in aggregate for the relevant time period.

If the "rounding" practice, in application, resulted in a net economic loss the practice is unlawful unless only a "bare" or "slight" majority of the employees suffered a net economic loss over the defined period. *AHMC,* 24 Cal.App.5th at 1024. A "bare" or "slight" majority is a percentage equal to or less than 55.8%. *See Id.* at 1025-1029 (holding 52.1% of employees losing time and pay constituted a "bare" or "slight" majority while collecting cases showing a "bare" or "slight" majority equaled 53%, 55.8%, and 52.1%) [citations omitted].

Clearly, in this case the uncontroverted facts show a net economic loss for a

supermajority (over 75%) of the Class Members as a group and not a "bare" majority. [UF 21-31]. Accordingly, Defendants' time shaving/rounding practice fails the "net effect" test here.

The uncontroverted facts show that Defendants' time shaving/rounding practice results in both (i) a net surplus of uncompensated hours and (ii) a net economic loss to a supermajority of the class members. Thus, Defendants' Eleventh Affirmative Defense for "Rounding" fails as a matter of law as the uncontroverted facts demonstrate that, in application, Defendants' time shaving/rounding fails to compensate the employees properly for all the time they have actually worked.

### C. Issue Two: Liability is Established as a Matter of Law in Favor of the Class Members for Plaintiff's First Cause of Action for Unpaid Wages Due to Illegal Rounding

Partial summary judgement should be granted in favor of the Class Members for Plaintiff's First Cause of Action for unpaid wages due to illegal rounding as the uncontroverted facts establish that Defendants' time shaving/rounding practice resulted, over a period of time, in the failure to compensate the employees for all the time they have actually worked. Plaintiff incorporates and restates the facts and arguments from Section IV.B herein, which also demonstrate Defendants' liability for unpaid wages pursuant to Labor Code §§ 510, 1194, and 1194.2 as well as Wage Order 4-2001 §3. Granting partial summary judgment on liability here merely leaves for trial the issue of the amount of damages.

### D. Issue Three: Partial Summary Judgment in Favor of the Class Members for Plaintiff's Fourth Cause of Action for Defendants' Failure to Provide Accurate Wage Statements is Established as a Matter of Law

Partial summary judgement should be granted in favor of the Class Members for Plaintiff's Fourth Cause of Action as the uncontroverted facts establish that Defendants issued wage statements that omitted the precise, actual total hours worked and the actual corresponding hours worked at the applicable rate in violation of Labor

Code §§226(a)(2) and (a)(9).

### 1. Defendants' Rounded Time Wage Statements Violate Labor Code §§ 226(a)(2) and 226(a)(9)

The uncontroverted facts establish that Defendants issued wage statements to the Class Members that listed only the rounded hours paid. [UF 32-35, 43-45]. Defendants violated Labor Code §226(a)(2) or §226(a)(9) on the occasions when the rounded hours listed on the wage statement do not map on to the hours actually worked for the pay period. *Feltzs,* 2021 U.S.Dist.LEXIS 146418, at *17 ("A plain-language understanding of the term 'precise, actual number of hours worked' would render Cox's rounded time wage statements inappropriate on the occasions that the rounded hours do not map on to the hours actually worked.").

### 2. Rounded Hours Paid Do Not Mirror Actual Hours Worked

The uncontroverted facts establish that for the relevant class period, July 26, 2018 to June 1, 2021, Defendants issued 22,192 wage statements where the rounded hours paid do not mirror the actual hours worked for the pay period. [UF 39].

Labor Code §226(a)(2), (a)(9) requires every employer to furnish employees *an accurate itemized* wage statement showing (a)(2) *total hours worked* by the employee and (a)(9) *the corresponding number of hours worked* at each hourly rate by the employee.

"The obligation to list the total hours worked during the pay period *can only be satisfied by listing the precise, actual number of hours worked*." *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 955 (Emphasis added); *Zavala v. Scott Brothers Dairy, Inc.* (2006) 143 Cal.App.4th 585, 591-592; *York v. Starbucks Corp.* (C.D. Cal. Dec. 3, 2009) 2009 U.S.Dist.LEXIS 131489, at *26-27. "The failure to list the precise number of hours worked during the pay period conflicts with the express language of the statute and stands in the way of the statutory purpose." *Id.* "If it is left to the employee to add up the daily hours shown on the time cards or other records so that the employee must perform arithmetic computations to determine the total hours

worked during the pay period, the requirements of section 226 would not be met." *Id*. (Emphasis original). The obligation "to [list] the ***precise, actual number of hours worked***" must be strictly construed and substantial compliance will not suffice. *York*, 2009 U.S.Dist.LEXIS 131489, at *25-27 (denying defendant's summary adjudication motion)(Emphasis added).

It is undisputed that Defendants deem the Class Members' compensable time as all time that the Class Members are clocked-in to the timekeeping system. (UF 40). Defendants' timekeeping system tracks timekeeping entries by the minute and calculates to the total hours worked by the minute that is represented by a decimal point. [UF 41]. Prior to paying the Class Members, Defendants "round" these timekeeping entries to the nearest quarter hour. [UF 42]. Defendants only list the "rounded time" on the Class Members' wage statements and not the actual hours worked. [UF 43].

By way of example, Plaintiff's wage statement for the pay period of 6/16/2018 to 6/29/2018 lists a "Total" for "Current Hours" as 82.50 and "Overtime" hours as 2.50:

**Cox Communications CAL., LLC**
1400 Lake Hearn Drive
Atlanta, GA  30319

| Pay Group: | HFD-Hourly Friday End Date |
| Pay Begin Date: | 06/16/2018 |
| Pay End Date: | 06/29/2018 |

**Christone T. Feltzs II**

| Employee ID: | 00619841 | | TAX DATA |
| Department: | 4100053500-Install & Svc Res ORNG1 | | Marital Stat |
| Location: | CA Icos | | Allowances |
| Pay Rate: | $23.960000 Hourly | | Addl. Pct.: |
| | | | Addl. Amt.: |

**HOURS AND EARNINGS**

| Description | ------ Prior Period ------ | | | Current | --------------- YTD --------- | | Description |
| | Begin Date | End Date | Rate | Hours | Earnings | Hours | Earnings | |
| Regular | | | 23.960000 | 78.00 | 1,868.88 | 267.00 | 6,270.60 | Fed Withho |
| Overtime | | | 35.940000 | 2.50 | 89.85 | 33.00 | 1,050.90 | Fed MED/E |
| Meeting | | | 23.960000 | 2.00 | 47.92 | 5.00 | 119.80 | Fed OASDI |
| Holiday | | | | | 0.00 | 8.00 | 160.00 | CA Withhol |
| PTO | | | | | 0.00 | 10.00 | 200.00 | CA OASDI |
| Suspension | | | | | 0.00 | 3.50 | 70.00 | |
| Train Pay | | | | | 0.00 | 348.00 | 6,960.00 | |
| Total: | | | | 82.50 | 2,006.65 | 674.50 | 14,831.30 | Total: |

[UF 36].

Defendants' timekeeping records for Plaintiff calculated Plaintiff's total actual hours worked for this pay period as 82.65 and not 82.50. [UF 37]. And, Defendants' timekeeping records provide that Plaintiff's actual overtime hours worked were 2.65 and not 2.50 for this payperiod. [UF 38].

Defendants' uniform practice here plainly violates Labor Code §§226(a)(2) and (a)(9) and gives rise to a statutory violation and statutory injury. As relevant here, section 226(e) states:

> An employee is deemed to suffer injury . . . if the employer fails to provide ***accurate and complete*** information as required by any one or more of items (1) to (9) inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following: (i) The amount of the gross wages or net wages paid . . . or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4) inclusive, (6) and (9) of subdivision (a).

*Ellsworth v. Schneider Nat'l Carriers, Inc.* (C.D. Cal. Dec. 11, 2020) 2020 U.S.Dist.LEXIS 251677, at *18; *quoting* Labor Code §226 (e)(2)(B), (e)(2)(B)(i) (emphasis added).

Defendants' wage statements only listed the "rounded hours paid" and the not the precise, actual number of hours worked on Plaintiff's wage statement resulting in violation of Labor Code §226(a)(2) and (a)(9). An employer's obligation under Labor Code §§226(a)(2) and (a)(9) "***can only be satisfied by listing the precise, actual number of hours worked***." *Cicairos,* 133 Cal.App.4th at 955 (Emphasis added); *Zavala,* 143 Cal.App.4th at 591-592; *York,* 2009 U.S.Dist.LEXIS 131489, at *26-27.

Incorrectly, incompletely, or omitting the precise, actual number of hours worked on the wage statement gives rise to an injury, whereas the failure to accurately state the gross or net wages earned does not. *Ellsworth v. Schneider Nat'l Carriers, Inc.* (C.D. Cal. Dec. 11, 2020) 2020 U.S.Dist.LEXIS 251677, at *20; *citing Maldonado v. Epsilon Plastics, Inc.* (2018) 22 Cal.App.5th 1308, 1336.

The listing of inaccurate or incomplete hours worked, or the omission of the

precise, actual "total hours worked" and/or "number of hours worked at each hourly rate" is a violation of Labor Code §§226(a)(2) and (a)(9), both of which produce a statutory injury. *Ellsworth,* 2020 U.S.Dist.LEXIS 251677, at *18-20; *citing Maldonado,* 22 Cal.App.5th at 1336-1337, fn. 14 (explaining the difference between "wages earned" and "hours worked" in relation to Labor Code §§226(a) and noting that whether recording rounding time violated Labor Code §§226(a)(2) and (a)(9) was not plead in the case and thus not at-issue and not part of the court's holding); *Bates v. Leprino Foods Co.* (E.D. Cal. Oct. 30, 2020) 2020 U.S.Dist.LEXIS 204511, at *17-20 (same).

In *Ellsworth*, the Court held that failing to include hours worked off the clock on the wage statement, if proven, is a violation of Labor Code §§ 226(a)(2) and (a)(9). Relying on *Maldonado*, the Court in *Ellsworth* explained that the distinction between inaccurate or incomplete "hours worked" and an inaccurate statement of "wages earned" is drawn from the statute itself. *Ellsworth, Id.* at 2020 U.S.Dist.LEXIS 251677, at *18-20.

### 3. Actual Hours Worked Cannot Promptly and Easily Be Determined from the Wage Statement Alone

Because the precise, actual number of hours worked are not separately listed on the Class Members' wage statements, a reasonable person is unable to readily ascertain the total actual number of hours worked and the actual corresponding number of hours worked at the appliable rate *without reference to other documents or information*. Defendants' wage statements only list the rounded hours paid.

There are 22,192 wage statements where the rounded time paid does not mirror the actual hours worked for the pay period. [UF 39]. This equates to 22,192 injuries.

Pursuant to Labor Code §226(e)(2), Plaintiff and the Class Members, are deemed to suffer an injury for these 22,192 wage statements as a reasonable person cannot "promptly and easily determine from the wage statement alone" the "total hours worked" or the "corresponding hours worked" during the relevant pay

period. Labor Code §226(e)(2)(B)(i); Labor Code §226(e)(2)(C) ("'promptly and easily determine' means a reasonable person would be able to readily ascertain the information without reference to other documents or information").

In this case, like the plaintiff in *Ellsworth*, Plaintiff alleges that the statements were not accurate and complete at they time they were issued because they did not include the precise, actual actual hours worked and instead only listed the "rounded hours" paid. Because Defendants omitted the actual hours worked on the wage statements, Plaintiff and the Class cannot determine the precise, actual number of hours worked.

Defendants' omission of the actual hours worked, and use of only the rounded hours paid, on the wage statements is egregious because the same helped to hide the systematic undercompensation for all hours worked (i.e. a net surplus of 9,317.5 uncompensated hours equating to $622,447.54 in underpaid wages (with interest)). This systematic undercompensation by Defendants' time shaving/rounding practice affected a supermajority (over 75%) of the Class Members.

Defendants' omission of the precise, actual hours worked runs afoul of the public policy behind Labor Code §226(a), which is "to insure that employees are adequately informed of compensation received and are not shortchanged by their employers.'" *Soto v. Motel 6 Operating, L.P.*, 4 Cal. App. 5th 385, 392 (quoting Assem. Com. On Labor and Employment, Analysis of Sen. Bill No. 1255 (2011-2012 Reg. Sess.).

### 4. Defendants Knowingly and Intentionally Failed to Comply with Labor Code 226 §(a)

It is uncontroverted that Defendants' failure to provide accurate wage statements was knowing and intentional. Defendants listed only the rounded hours paid on the wage statements as a matter of uniform and conscious policy and practice. [UF 44].

An employee suffering injury as a result of a knowing and intentional failure

by an employer to comply with subdivision (a) is entitled to statutory penalties of fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees. Labor Code §226(e)(1).

"To establish a "knowing and intentional" violation of Labor Code section 226, subdivision (a), an employee must demonstrate that the employer was 'aware of the factual predicate underlying the violation[s].'" *Furry v. East Bay Publishing, LLC* (2018) 30 Cal.App.5th 1072, 1085; *Cabardo v. Patacsil* (E.D.Cal. 2017) 248 F.Supp.3d 1002, 1010 (*Cabardo*). Defendants admit that they were aware that they issued wage statements to the Class Members that only listed the rounded hours paid. [UF 45].

"The employee is not required to demonstrate that the employer knew its conduct was unlawful." *Furry,* 30 Cal.App.5th at 1085*; citing Cabardo,* 248 F.Supp.3d at 1010. "[A] 'knowing and intentional failure' does not include an isolated and unintentional payroll error due to a clerical or inadvertent mistake." (Lab. Code, § 226, subd. (e)(3).) Defendants do not dispute that the Class Members' wage statements were deficient in the manner alleged, nor do Defendants contend that the requisite information was omitted due to a clerical or inadvertent mistake. Further, there is no "good faith" mistake of law defense to Labor Code §226 violations. *Furry,* 30 Cal.App.5th at 1085; *citing Cabardo,* 248 F.Supp.3d at 1010 (collective cases); *Kao v. Holiday* (2017) 12 Cal.App.5th 947, 961–962 (employer's good faith belief that employee is exempt amounts to mistake of law that is not excused under Lab. Code, § 226).

It is uncontroverted that the there are 22,192 wage statement violations equating to $1,438,350.00 in statutory penalties. [UF 39, 46]. Thus, the Court should grant summary judgment in favor of Plaintiff and the Class on the Fourth Cause of Action and set Plaintiff's deadline to file a motion for attorney's fees and costs as no later

than 14 days after entry of final judgment for the entire case.

### E. Issue Four: Partial Summary Judgment Should Be Granted As a Matter of Law on Plaintiff's Sixth Cause of Action for PAGA Civil Penalties for Wage Statement Violations

Partial summary judgement should be granted in favor of Plaintiff's Sixth Cause of Action for derivative PAGA civil penalties for the foregoing wage statement violations. *See supra* Section IV.D.2.

The amount of the PAGA civil penalties owed by Defendant is set by statute. Unlike statutory penalties for Labor Code §226(e), Labor Code §226.3 provides civil penalties without a showing of "injury" and purely based on a violation of Labor Code §226(a).

It is undisputed that Defendants issued 22,192 wage statements, for the period of July 26, 2018 to June 1, 2021, where the rounded hours paid that did not exactly match the toal hours actually worked and/or the actual corresponding hours worked at each rate. [UF 54]. Instead, these wage statements listed the total rounded hours paid and the corresponding rounded hours paid at the applicable rate that did not mirror the actual hours for the pay period. [UF 58-60]. Labor Code §226.3 provides a $250.00 civil penalty per violation of subdivision (a) of Section 226. The civil penalties under PAGA for the wage statement violations equals $5,548,000.00. [UF 61].

## V. CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant summary judgment on the issues discussed above and as set forth in the Notice of Motion.

Dated: 9/27/2021

Respectfully submitted,

**THE MYERS LAW GROUP, A.P.C.**

By:   /s/Jason Hatcher
David P. Myers,
Jason Hatcher,
Cassandra A. Castro,
Attorneys for Plaintiff and the Class
and Aggrieved Employees