SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
THOMAS R. KAUFMAN, Cal. Bar No. 177936
tkaufman@sheppardmullin.com
PAUL BERKOWITZ, Cal. Bar No. 251077
pberkowitz@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:   310.228.3700
Facsimile:   310.228.3701

Attorneys for Defendants
COX COMMUNICATIONS CAL., LLC,
and COX COMMUNICATIONS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTONE FELTZS, on behalf of himself and others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>COX COMMUNICATIONS CAL., LLC, a Delaware Limited Liability Company; COX ENTERPRISES, INC., a Delaware Corporation; COX COMMUNICATIONS, INC., a Delaware Corporations; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 8:19-cv-02002-JVS-JDE<br><br>Assigned to Hon. James Selna<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>DATE:      October 25, 2021<br>TIME:      1:30 PM<br>CRTRM:     10C<br><br>Complaint Filed:  July 26, 2019 |

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 1

II.    SUMMARY OF RELEVANT FACTS .......................................... 2

    A.    Most of the Relevant Facts Are Identical To Those Raised in Cox's Pending Motion for Classwide Summary Judgment ................. 2

    B.    Plaintiff Has No Evidence That Cox's General Tardiness Policy Impacted the Clocking Practices of a Single UHT ............... 3

III.   LEGAL ARGUMENT ...................................................... 4

    A.    Plaintiff's Motion to Grant Partial Summary Judgment That Its Rounding System Was Unlawful Should Be Denied Because The System Indisputably Is Lawful Under Controlling Precedent ............. 4

    B.    Plaintiff's Motion for Partial Summary Judgment That Cox Does Not Provide Accurate Wage Statements Should Be Denied Because it Is Based on a Misunderstanding of the Wage Statement Law .................................................. 10

        1.    The Wage Statement Law Permit Employees Who Lawfully Round to Use Rounded Time Calculations for Wage Reporting Purposes ......................................... 10

        2.    The Cases Plaintiff Cites on Wage Statements Do Not Address Rounding At All ........................................ 13

    C.    Plaintiff's Motion as to Wage Statements Should Also Be Denied on the Ground That It Does Not Dispose of Cox's Good Faith Affirmative Defense .................................. 14

    D.    There is No Basis to Grant Partial Summary Judgment as to a Set Dollar Amount of PAGA Civil Penalties ........................... 16

    E.    Plaintiff Has Failed to Establish the Recovery That Would Arise From a Finding of Liability As a Matter of Undisputed Fact ............ 17

IV.    CONCLUSION ........................................................ 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*AHMC Healthcare, Inc. v. Superior Court*
    24 Cal. App. 5th 1014 (2018) ................................................................. 6, 11

*Amaral v. Cintas Corp. No. 2*
    163 Cal. App. 4th 1157 (2008) ..................................................................... 16

*Carrington v. Starbucks Corp.*
    30 Cal.App.5th 504 (2018) ............................................................................ 16

*Cicairos v. Summit Logistics, Inc.*
    133 Cal. App. 4th 949 (2005) ........................................................................ 13

*Corbin v. Time Warner Ent.*
    821 F.3d 1069 (9th Cir. 2016)......................................................................... 7

*David v. Queen of the Valley Med. Ctr.*
    51 Cal. App. 5th 653 (2020) ............................................................................ 7

*Ellsworth v. Schneider Nat'l Carriers, Inc.*
    2020 U.S. Dist. LEXIS 251677 (C.D. Cal. Dec. 11, 2020) .................... 13, 14

*Ex Parte Trombley*
    31 Cal. 2d 801 (1948)..................................................................................... 15

*Ferra v. Loews Hollywood Hotel, LLC*
    40 Cal. App. 5th 1239 (2019) ...................................................................... 6, 7

*Fleming v. Covidien, Inc.*
    2011 WL 7563047 (C.D. Cal. Aug. 12, 2011)............................................... 17

*Frank v. McQuigg*
    950 F.2d 590 (9th Cir. 1991)......................................................................... 16

*Lassiter v. CoxCom, Inc.*
    Case No. 37-2008-00084510-CU-OE-CTL ................................................... 15

*Lemus v. Denny's Inc.*
    2015 WL 13740136 (C.D. Cal. July 31, 2015) ............................................. 11

*Levanoff v. Dragas*
    65 Cal. App. 5th 1079 (2021) .......................................................................... 9

-ii-

*Magadia v. Wal-Mart Assocs.*
    999 F.3d 668(9th Cir. 2021) ........................................................................ 12

*See's Candy Shops, Inc. v. Superior Court*
    210 Cal. App. 4th 889 (2012) ............................................................... passim

*Shiferaw v. Sunrise Senior Living Mgmt.*
    2016 U.S. Dist. LEXIS 187548 (C.D. Cal. Mar 21, 2016) .......................... 9

*Silva v. See's Candy Shops. Inc.*
    7 Cal. App. 5th 235 (2016) ........................................................................... 5

*Smith v. Rae-Venter Law Group*
    29 Cal. 4th 345 (Cal. 2002) ........................................................................ 15

*Soto v. Motel 6 Operating, L.P.*
    4 Cal. App. 5th 385 (2016) ................................................................... 11, 12

*Steinhebel v. Los Angeles Times Communications*
    126 Cal. App. 4th 696 (2005) .................................................................... 13

*Woods v. Vector Marketing Corp.*
    2015 WL 2453202 (N.D. Cal. May 22, 2015) ........................................... 15

*York v. Starbucks Corp.*
    2009 U.S. Dist. LEXIS 131489 (C.D. Cal. Dec. 3, 2009) .................... 13, 14

*Zavala v. Scott Brothers Dairy, Inc.*
    143 Cal. App. 4th 585 (2006) .................................................................... 13

**Statutes**

Labor Code §§ 203 ................................................................................. 14, 15, 16

Labor Code § 204 .............................................................................................. 11

Labor Code § 226 ................................................................................... 11, 14, 16

Labor Code § 226(a) ..................................................................................... 12, 13

Labor Code § 226(e) ..................................................................................... 14, 15

Labor Code § 2699(e)(2) ................................................................................... 16

Labor Management Relations Act ..................................................................... 14

**<u>Other Authorities</u>**

29 CFR § 785.48 ............................................................................................ 10

Rule 30(b)(6) ................................................................................................... 3

SMRH:4842-8306-0989.1

# I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's cross-motion for partial summary judgment agrees with Cox's motion for classwide summary judgment that there are no material disputed facts here.  Plaintiff, however, argues that the undisputed facts support liability and a fixed amount of damages, statutory penalties, and civil penalties.  Plaintiff is mistaken.  Each of his arguments is premised on a misunderstanding or distortion of the controlling law.  Most of these errors are addressed in Cox's classwide summary judgment brief, but in addition, this opposition addresses some of the specific case law that Plaintiff falsely contends supports a grant of summary judgment in favor of the UHT class and the smaller universe of PAGA "aggrieved employee" UHTs.

To summarize the reasons why Plaintiff's motion fails as a matter of law:

First, the case law uniformly supports granting summary judgment to Cox on the question of whether its rounding system lawfully pays for all hours worked under California law.  Cox has cited a long line of decisions supporting its position and Plaintiff failed to cite a single case where a court granted judgment to an employee or employee class on a claim where the system rounded time to the nearest tenth or quarter of an hour.  Furthermore, Plaintiff has no authority or evidence to support the argument that Cox's general tardiness policy renders its rounding system unlawful.

Second, Plaintiff is mistaken that California law requires an employer who rounds time to the nearest quarter hour to nonetheless list on the employee's wage statement the "raw hours worked" in the pay period that are not used to pay the employee.  The fundamental flaw with that theory is that it assumes that "rounded hours" are distinct from "hours worked," while both California case law and DLSE enforcement manual reject that view.  Again, no authority has ever adopted the view that an employer who lawfully rounds time violates the wage statement law by calculating "hours worked" on the wage statement solely using rounded time.

Third, Plaintiff contends that even if Cox reasonably believed it was in full

-1-

compliance with California law (because a court already held it was in compliance), that is no defense to a wage statement claim for statutory penalties that arise from a "knowing and intentional" violation. Again that is wrong, as the California Supreme Court has recognized that a "knowing and intentional" standard is equivalent to a "willfulness" standard. It is well established that a violation is not "willful" if the employer has a reasonable, good faith belief that it was in compliance with the law.

Fourth, Plaintiff incorrectly contends that the Court can grant summary judgment on a PAGA claim for the maximum level of PAGA penalties. In fact, the Court has broad discretion to reduce the penalties from the maximum level if it finds that granting the maximum amount would be unjust. Plaintiff has failed to set forth any sort of undisputed facts that would mandate the Court award maximum penalties here.

Finally, Plaintiff's purported expert has provided a damages calculation that allegedly would follow from a liability finding on all claims. In addition to the fact that the proper damages award here is zero (because of no liability), Cox's expert contradicts Plaintiff's expert's damages calculation, so summary judgment as to a non-zero level of damages would be improper at this stage of the litigation.

For all these reasons, Cox respectfully requests that the Court deny Plaintiff's motion for partial summary judgment and instead grant Cox's competing motion for classwide summary judgment.

## II.   SUMMARY OF RELEVANT FACTS

### A.   Most of the Relevant Facts Are Identical To Those Raised in Cox's Pending Motion for Classwide Summary Judgment

Cox incorporates the statement of facts from its own pending motion for classwide summary judgment (Dkt No. 70-1), which are the same relevant facts with regard to Plaintiff's cross-motion for partial summary judgment.

**B.      Plaintiff Has No Evidence That Cox's General Tardiness Policy Impacted the Clocking Practices of a Single UHT**

Most but not all UHTs participate in the Home Start program, where they clock in to start the workday at home (usually at 7:45 a.m.) and then drive in the company vehicle into the field to their initial customer appointment of the day (i.e., they are paid for the commute into the field).[1]  Plaintiff points out that Cox has a general tardiness policy, common among businesses, that employees are to start work by their scheduled start time, and failure to do so will be considered "tardiness."  Plaintiff asked Cox's Rule 30(b)(6) witness on operational issues, Justin Serrano, whether Cox required UHTs to clock in by the scheduled start of their shift and what the consequences were of clocking in late.  Mr. Serrano testified that UHTs were expected to clock in at the start time of their shift and that the policy treated all late clock-ins as tardiness, but discipline would arise only after a persistent pattern of tardiness violations:

> Q. Okay. And that corrective action for tardiness for the UHTs based in California is that one-minute clock-in after the scheduled start of the shift would constitute tardy; correct?
>
> A. Yes. It would be -- it would be tardy. It would take multiple occurrences of that course of behavior.
>
> * * *
>
> Q. Okay. California-based UHTs are instructed to clock in up to seven minutes before the start of their shift; correct?
>
> THE WITNESS: Our expectation is that UHTs clock in at the start of their shift, yeah. We have a seven-minute rounding policy, but the expectation is they -- they clock in on time.
>
> * * *
>
> Q. Okay. But they may clock in up to seven minutes prior to the start of their shift without corrective action?

---

[1]      Deposition of Justin Serrano ("Serrano Dep.") 69:9-70:3.

-3-

A.  Those would be -- you know, those would be situational. If -- *if a UHT consistently clocks in six or seven minutes after the start of their shift, there could be corrective action for that*.[2]

Plaintiff has not introduced any evidence that a single UHT was ever disciplined for clocking in one or two minutes late or that UHTs were even threatened with such discipline.  By contrast, Cox submitted with its opposition to class certification declarations from 20 UHTs (Dkt 35-2), all of whom testified that they were never told that clocking in a few minutes after the scheduled start time would lead to discipline for tardiness.  These UHTs also attested that they were never concerned about receiving a corrective action for a slightly late clock-in.[3]

## III.   LEGAL ARGUMENT

### A.   Plaintiff's Motion to Grant Partial Summary Judgment That Its Rounding System Was Unlawful Should Be Denied Because The System Indisputably Is Lawful Under Controlling Precedent

Plaintiff's motion does not dispute any facts, but argues that those facts support liability for "unlawful rounding" when the opposite is true.  He relies on two facts to argue that the rounding system violates California law: (1) over the nearly six-year class period, the aggregate impact of rounding on all combined UHT time was a reduction of 9,317.5 hours; and (2) 462 class members experienced an aggregate reduction in their hours from rounding over the class period of at least 1

---

[2]     Serrano Dep. 33:16-22, 34:12-21, 34:23-35:4 (emphasis added; objections omitted).

[3]     *See, e.g.*, Declaration of Aaron Asaro ¶ 4 (tardiness policy was never a concern of his); Declaration of Sandy Banks ¶ 17 (understood he could clock in up to 5 minutes after 7:45 without consequence); Declaration of Mario Carballo ¶ 5 (only talked to about tardiness if he missed a customer appointment window altogether); Declaration of Kwong Cho ¶ 16 (knew of tardiness policy but never been counseled for clocking in early or late for shift); Declaration of Samuel Constancio ¶ 17 (never received any feedback from supervisor about the specific time he clocked in to start the day). Declaration of Fabio Giraldo ¶¶ 4, 16 (was not on Home Start and sometimes arrived at work late due to traffic but was not disciplined for such tardiness).

1  minute.[4]  Plaintiff's motion simply ignores the equally undisputed metrics as to the

2  percentage of shifts had their time reduced as a result of rounding (only a little more

3  than half) or the aggregate impact of rounding on a per-shift basis (only 1.6 minutes

4  per 10-hour shift or less than 0.28% of the total hours recorded).[5]

5       Plaintiff does not cite a single case where a rounding system that rounded to

6  the nearest fifteen minute increment as Cox's does was held to violate California

7  law.  Instead, he appears just to assume that rounding is unlawful if the net effect

8  over an arbitrarily selected period is to reduce the work hours of a defined group of

9  employees.  In truth, both the Ninth Circuit and multiple California Courts of

10 Appeal decisions have rejected this very same argument.

11      First, in *See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889,

12 903 (2012), the court addressed a pay system that rounded time to the nearest tenth

13 of an hour.  The court recognized "that time-rounding is a practical method for

14 calculating work time and can be a neutral calculation tool for providing full

15 payment to employees." *Id*. at 903.  California (as reflected in longstanding official

16 DLSE guidance) has thus adopted the federal standard that generally permits

17 rounding to the nearest tenth or quarter of an hour, so long as the rounding is

18 evenhanded (i.e., not in one direction only). *Id.* at 902, 907.  Indeed, [r]ounding is

19 lawful so long as "the employer applies a consistent rounding policy that, on

20 average, favors neither overpayment nor underpayment." *Id*. at 901.  The legal

21 standard is not whether a rounding practice works to an employee's disadvantage for

22 any finite or identified time period, but instead whether the policy results in the

23 systematic under-compensation of employees. *Id.*; *see also Silva v. See's Candy*

---

24      [4]    Although the parties' respective rounding experts reached slightly

25  different figures on the metrics they addressed, the differences are so minor as to be
    inconsequential to the analysis of the lawfulness of the rounding system.

26

27      [5]    *See* Cox's motion for classwide summary judgment (Dkt 70-1), pp. 4-7
    for a detailed discussion of the experts' detailed conclusions on the various cited

28  metrics and how their numbers are essentially identical.

1   *Shops. Inc.*, 7 Cal. App. 5th 235, 249 (2016) (subsequently granting summary
2   judgment to See's Candy on rounding claim despite fact that rounding
3   disadvantaged the plaintiff).

4          Following *See's Candy*, at least three state court decisions held that rounding
5   is permissible even though the net effect of rounding reduces recorded work hours
6   for some employees or even in the aggregate for a defined class of employees.
7   Importantly, the reductions in these cases were sometimes greater than the net
8   reduction caused by Cox's rounding system over six years.

9          First, in *AHMC Healthcare, Inc. v. Superior Court*, 24 Cal. App. 5th 1014
10  (2018), the court of appeal affirmed a summary adjudication of a rounding claim in
11  favor of the hospital defendant and held that its use of a payroll system that
12  automatically rounded employee time to the nearest quarter hour complied fully
13  with California law.  *Id.* at 1027.  The court held that the rounding system at issue
14  was neutral on its face and in practice, as the system did not systematically
15  undercompensate employees over time.  *Id.*  The court found it immaterial that, with
16  regard to the two plaintiffs, the rounding system had "reduced" their total work
17  hours over time.  *Id.* at 1027-28.  Rather, the material question was whether the
18  rounding system increased time in a sizable percentage shifts and decreased it in a
19  sizable percentage of others.  Even though employees who experienced a reduction
20  averaged a loss of 2.33 minutes per shift worked, the court still concluded that the
21  rounding system was sufficiently "evenhanded" and thus reversed the denial of the
22  employer's summary adjudication motion.  *Id.* at 108 n.4, 1028.

23         Then, in 2019, the California Court of Appeal again upheld a quarter-hour
24  rounding policy in *Ferra v. Loews Hollywood Hotel, LLC*, 40 Cal. App. 5th 1239,
25  1254-55 (2019).  The court held the rounding system lawful as a matter of law even
26  though rounding increased the putative class's daily work hours in only 22.8% of
27  the shifts.  Notably, *Ferra* held that even where the net effect of a quarter-hour
28  rounding system is to slightly reduce employees' overall compensation, such

1   statistical differences do not qualify as a "systematic under-compensation"

2   necessary to render a rounding system unlawful.  *Id.*

3         Third, just last year, the California Court of Appeal decided *David v. Queen*

4   *of the Valley Med. Ctr.*, 51 Cal. App. 5th 653, 658 (2020) in which a similar even-

5   handed rounding system resulted in the reduction of more time entries than it

6   increased, and the net effect of rounding was to reduce hours worked by 1.56

7   minutes per shift (a .26% reduction of aggregate hours worked).  The trial court

8   granted (and the court of appeal affirmed) summary judgment to the employer on

9   the ground that such a small discrepancy in a system that automatically rounded to

10  the nearest set increment did not violate California law.  *Id.* at 659-60, 664-65

11  (deeming a .26% aggregate reduction from rounding "statistically meaningless").

12        In addition, because this case is in federal court where Ninth Circuit precedent

13  controls, the Court is bound to follow *Corbin v. Time Warner Ent.*, 821 F.3d 1069,

14  1076-77 (9th Cir. 2016), which also held rounding to the nearest 15 minutes to be

15  lawful even where it decreases employees' total hours in specific cases.  Notably,

16  the Ninth Circuit commented that, even though the California Supreme Court had

17  never formally held that *See's Candy* (or its progeny) was correctly decided, the

18  Ninth Circuit must follow California appellate cases unless there is a clear indication

19  the California Supreme Court will reject them, especially where the DLSE has long

20  held the same enforcement position.[6]  *Id.* at 1076, n. 4.

21        There is no way to reconcile the holdings of this consistent line of appellate

22  authority with Plaintiff's allegation that Cox's time rounding system is unlawful.

23  The rounding system here is materially indistinguishable from the ones upheld in

24  these published cases in that all of the systems round clock entries to the nearest

25  quarter hour.  In each case, the system increased hours in a sizable number of shifts

26  and decreased it in a sizable (sometimes larger) number of shifts, and even where

27  _____

28        [6]      The DLSE manual specifically cites *See's Candy* in support.

-7-

the system as a whole reduced time more than it increased it, the courts held as a matter of law that the small differences did not create a triable issue of fact that the rounding system was unlawful.  In every case where the system rounded to the nearest 15 minute increment, the Court granted summary judgment to the employer.

Plaintiff trumpets the metric that roughly four times as many UHTs experienced a net reduction of at least one minute from rounding as a net increase of at least one minute.  But no court has decided the lawfulness of rounding based on the number of individuals experiencing an aggregate increase or decrease of at least 1 minute.  The statistic does not capture the true impact of rounding because it does not distinguish **magnitude** of changes, so it cannot fairly be used to assess whether the system on a day-to-day basis operated evenhandedly.

Assume, for example, that there are five employees who worked over different periods of time.  Two worked for just three weeks in 2019, two worked throughout 2020, and one worked an entire four-year class period.  For all of them, rounding increased or had no impact on their hours between 40-60% of the shifts, but the shortest term employees ended up with a net decrease of 1 minute, the medium-term employee ended up with a net decrease of 3 minutes, and the longest-term employee ended up with a net increase of 15 minutes.  The net impact of rounding for these five employees was actually positive (+7 minutes), but 80% of them had their total time reduced as a result of rounding.  Moreover, the analysis does not account for the length of time any of these people worked.  In short, looking at the number of employees with a net decrease or increase of at least one minute is a poor substitute for looking at net impact for the class by its net impact per shift or as a percentage of total hours worked.

Nor does Cox's use of a general tardiness policy impact the analysis.  Multiple courts have considered and rejected the theory that making a late clock in a violation of policy renders a rounding system unlawful.  Most notably, in *See's Candy*, the court rejected the very argument.  It held that the mere fact See's Candy

-8-

had a policy that made late clock ins a tardiness violation was irrelevant to the analysis of whether a rounding system to the nearest 15 minutes is lawful where (as here) there was no evidence presented that employees actually received discipline for clocking in a few minutes late.  *See's Candy*, 210 Cal. App. 4th at 911 ("there was no evidence the discipline policy was ever applied to any employee because he or she was a few minutes late."); *see also Shiferaw v. Sunrise Senior Living Mgmt.*, 2016 U.S. Dist. LEXIS 187548 at *76 (C.D. Cal. Mar 21, 2016) (holding that existence of tardiness policy "is not sufficient to show the absence of neutrality" where rounding was to the nearest 15 minutes).[7]

Based on all of the above rounding cases and the record before the Court, the Court should draw two conclusions here.  First, where the facts are materially undisputed, as they are here, as to the impact of a system that rounds time to the nearest 15 minutes on total hours worked for a class, the Court can properly decide the rounding claim on a motion for summary judgment (which is why both sides here are moving for summary judgment).  Second, there is not just one, but ***half a dozen binding precedents*** that support Cox's position and reject Plaintiff's.  California permits employers to round time entries to the nearest 15 minutes for timekeeping purposes, which is a sufficient basis to deny Plaintiff's motion for partial summary judgment on the rounding issues and to grant Cox's motion.

///

///

///

///

///

---

[7]     Plaintiff also cites *Levanoff v. Dragas*,  65 Cal. App. 5th 1079 (2021), but that case is not a rounding decision.  Rather, the court summarizes some California rounding precedent to address the distinct issue of how to calculate overtime for employees who work at two different rates during one workweek.

**B.     Plaintiff's Motion for Partial Summary Judgment That Cox Does Not Provide Accurate Wage Statements Should Be Denied Because it Is Based on a Misunderstanding of the Wage Statement Law**

**1.     The Wage Statement Law Permit Employees Who Lawfully Round to Use Rounded Time Calculations for Wage Reporting Purposes**

Plaintiff moves for classwide partial summary judgment on his wage statement claim on the ground that Cox's use of rounded time to calculate hours worked renders all of the UHTs' wage statements inaccurate except in the small number of pay periods where rounded hours for the pay period exactly matches raw hours for the pay period.  This argument is independent of his argument that rounding is unlawful for purposes of calculating how much wages to pay employees.  That is, Plaintiff argues that employers who lawfully round time nonetheless must list on the wage statement the total "raw" hours worked over the pay period.  ***No case has ever adopted this view of the wage statement laws***, it is inconsistent with multiple published cases, and it also is inconsistent with the entire notion that employers may measure employee time for pay purposes by rounding raw clock entries to the nearest tenth or quarter hour.

The fundamental analytical error in Plaintiff's imagined version of the law is that it presumes that where an employer lawfully rounds, the law views the "hours worked" as the raw clock entries rather than the rounded clock entries.  In fact, where an employer rounds time, the rounded entries are the operative measure of an employee's "hours worked."  The federal rounding regulation that California has adopted described rounding as an acceptable "practice of computing working time." 29 CFR § 785.48.  The DLSE Enforcement Manual further explains that California "utilizes the practice of the U.S. Department of Labor of 'rounding' employee's hours to the nearest five minutes, one-tenth or quarter hour ***for purposes of calculating the number of hours worked***."  (emphasis added).  The Labor Commissioner does not limit this guidance simply to determining wages paid but for "enforcement purposes" generally.  DLSE Policies and Procedures Manual, § 47.3.

-10-

In *See's Candy*, 210 Cal. App. 4th 889, the Court of Appeal addressed and rejected the notion that rounded hours are something distinct from hours worked.  In that case, the plaintiff argued that Labor Code Section 204 requires employers to pay employees all wages, and "that using unrounded figures within a finite time period is the only way to measure 'all' earned wages."  The court in *See's Candy* rejected the entire premise of the argument that "hours worked" exist separately from the rounded figure, and noted that the governing regulation allowed the employer to **measure hours worked based on rounded figures**: "[T]he question whether all wages have been paid is different from the issue of how an employer calculates the number of hours worked."  *Id.* at 905.  It is thus unsurprising that in the cases that have granted summary judgment to the employer on rounding, such a ruling has included granting summary judgment to a derivative wage statement claim.  *See, e.g., AHMC Healthcare*, 24 Cal. App. 5th at 1017 and 1028 (noting that plaintiff had also asserted a wage statement claim that would now be subject to order requiring trial court to grant summary adjudication on all rounding claims); *Lemus v. Denny's Inc.*, 2015 WL 13740136, at * 16 (C.D. Cal. July 31, 2015) (dismissing rounding and derivative wage statement claim on summary judgment).

Plaintiff contends that the purposes of the wage statement law is to provide employees sufficient information to determine if their pay was calculated accurately. While that is true as a general statement, it does not support the conclusion that the employer must list the number of raw hours worked during the pay period when that sum of hours is not used in any way to calculate wages.

To the contrary, the court in *Soto v. Motel 6 Operating, L.P.*, 4 Cal. App. 5th 385 (2016), explained that Section 226 has very specific requirements, and it is improper to interpret it "broadly." Rather, courts should "apply common sense to the language at hand and interpret the statute to make it workable and reasonable."  *Id.* at 390, 393.  Using that method of interpretation, it rejected the argument that wage statements had to show the amount of accrued vacation wages the employee earned

-11-

1   during the pay period.  The court reasoned that, even if one were to assume that

2   accrued vacation pay qualifies as wages, interpreting Section 226(a) to require the

3   employer to list accrued vacation each pay period would violate the rule that statutes

4   "must be construed in context, and provisions relating to the same subject matter

5   must be harmonized to the extent possible."  *Id.* at 392.  Because the purpose of

6   listing wages earned was so employees could see that it matched the value of their

7   paycheck, requiring employers to list accrued vacation that was not paid out in that

8   same paycheck would be inconsistent with the reason for the reporting requirement.

9   *Id.* at 392-93; *Accord Magadia v. Wal-Mart Assocs.*, 999 F.3d 668, 680-81(9th Cir.

10   2021) (rejecting broad interpretation that would require employers to list an hourly

11   rate and hours worked figure for overtime true-ups paid on quarterly bonuses).

12          The same logic applies here.  The purpose of listing the "hours worked"

13   figure on a wage statement is so the employee can see what the employer listed as

14   the hours worked for purposes of calculating his or her wages.  If the law permits

15   employers to use rounded time entries for that purpose (which is plainly does), then

16   the employer must list the ***hours worked figure it lawfully uses to calculate wages***,

17   as the employee would have no way to determine from seeing the aggregate "raw

18   hours" for the two-week pay period whether the employer had actually rounded

19   every time clock entry to the nearest 15 minutes.  To know that, the employer would

20   be required to list on the wage statement each raw and rounded punch, a disclosure

21   even Plaintiff does not advocate.[8]  Requiring the employer to list both the total

22   rounded and unrounded hours over a 14-day pay period would only cause employee

23   confusion and create an administrative burden on employers who round time with

24   no benefit to the employee whatsoever.  A "common sense" reading of the law that

25   presumes that rounding is an acceptable practice would not interpret the wage

---

[8]     To the extent employees are entitled to know their raw time, Cox has
previously set forth undisputed evidence that UHTs see both their rounded and raw
time entries during the certification process UHTs follow each pay period.

-12-

statement law in such an arbitrary manner.  *See Steinhebel v. Los Angeles Times Communications,* 126 Cal. App. 4th 696, 709 (2005) (explaining that courts should avoid adopting novel interpretations of the Labor Code that suddenly declare longstanding accepted practices to be unlawful).

### 2. The Cases Plaintiff Cites on Wage Statements Do Not Address Rounding At All

Plaintiff cites several cases that pre-date *See's Candy* and that say nothing about rounding, but stand for the general proposition that wage statements must be accurate, and even slight inaccuracies in the reporting of one of the nine categories of information set forth in Labor Code Section 226(a) can trigger wage statement penalties.  *See Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 955 (2005); *Zavala v. Scott Brothers Dairy, Inc.*, 143 Cal. App. 4th 585, 591-592 (2006); *York v. Starbucks Corp.*, 2009 U.S. Dist. LEXIS 131489, at *26-27 (C.D. Cal. Dec. 3, 2009); *see also Ellsworth v. Schneider Nat'l Carriers, Inc.*, 2020 U.S. Dist. LEXIS 251677 (C.D. Cal. Dec. 11, 2020)(cited by plaintiff addressing off-the-clock claims).  Because these authorities do not address rounding or the question of whether the law considers the "hours worked" of an employee to be the employee's rounded time when the employer lawfully rounds, they are irrelevant here.

First, in *Cicairos*, 133 Cal. App. 4th 949, the issue was that the employer never listed the actual hours an employee worked but just listed 40 hours each week because the employee was not paid by the hour, but under a complex formula that used multiple metrics.  *Id.* at 956, 960.  Furthermore, the wage statement did not have the employer's full name "Summit Logistics, Inc." but just the word "Summit."  *Id.* at 960.  The court held that these inaccuracies violated Labor Code Section 226(a).

In *Zavala*, 143 Cal. App. 4th 585, the opinion does not address what inaccuracy in the wage statement purportedly triggered a violation, except it makes reference to the fact that rest periods allegedly were not paid.  The actual focus of

the case is on whether the Section 226 claim of a unionized employee was preempted by the Labor Management Relations Act.  As such, the case says nothing whatsoever about rounding and reporting hours worked on wage statements.

In *York*, 2009 U.S. Dist. LEXIS 131489, the issue was that the wage statement did not set forth the number of overtime hours worked at all, and the question was whether that omission caused a sufficient "injury" to trigger penalties under Section 226(e).  Again, the court did not address the issue of how an employer who rounds time should report time on the wage statement.

Finally, *Ellsworth*, 2020 U.S. Dist. LEXIS 251677, was an off-the-clock case where the employer was not paying for certain work tasks routinely performed.  It was not a rounding case where the employer listed the hours it was lawfully permitted to use calculate hours worked, but one where the employer did not capture certain work tasks in the timekeeping system at all.

In sum, none of the cases Plaintiff cites about "accurate wage statements" supports granting summary judgment on the theory that it is unlawful for an employer to use rounded time to report hours worked.  In truth, the only claimed "inaccuracy"—listing total rounded time rather than total raw time as hours worked—is not an inaccuracy at all, but is simply part and parcel of how an employer who rounds time is supposed to report hours worked according to every California authority to consider the issue.  Accordingly, Cox respectfully requests that the Court deny Plaintiff's motion for partial summary judgment as to the Fourth Cause of Action and instead grant Cox's motion to the contrary.

### C. Plaintiff's Motion as to Wage Statements Should Also Be Denied on the Ground That It Does Not Dispose of Cox's Good Faith Affirmative Defense

The Court should also deny Plaintiff's motion for partial summary judgment on the wage statement claim because Cox has a viable affirmative defense separate and apart from its argument that it was permitted to use rounded time to report hours worked on the wage statement.  Both Labor Code Sections 203 (waiting time

-14-

penalties) and 226(e) (wage statement penalties) recognize a good faith defense where the employer honestly and reasonably believed that it had complied with its pay or wage reporting requirements.  Under Section 203, a violation must be "willful" to trigger penalties while under Section 226(e) it must be "knowing and intentional."

The California Supreme Court has expressly held that the award of waiting time penalties is not "willful" where, as here, the employer has a reasonable good faith believe that no wages were owed.  *Smith v. Rae-Venter Law Group*, 29 Cal. 4th 345, 354 n.3 (Cal. 2002).  The California Supreme Court has also held that, under the Labor Code, the terms "willful" and "knowing and intentional" are synonyms. *Ex Parte Trombley*, 31 Cal. 2d 801, 807-08 (1948); *see also Woods v. Vector Marketing Corp.*, 2015 WL 2453202, at *4 (N.D. Cal. May 22, 2015) (relying on *Trombley* to interpret "knowing and intentional" element of Labor Code Section 226(e) as equivalent to "willful" in Section 203).

Here, Cox not only reasonably relied on the DLSE guidance and a long line of precedent that consistently held that rounding to the nearest 15 minutes was lawful, but a California court actually issued a judgment in Cox's favor on the very issue in another class action brought on behalf of the same putative employee class, *Lassiter v. CoxCom, Inc.*, Case No. 37-2008-00084510-CU-OE-CTL.[9]  Although the class was never certified there, the trial court answered the question whether the rounding system as a whole was lawful without limiting its analysis to how the system impacted the named plaintiff.  Where a court rules that an employer's pay system is lawful, and the employer continues to operate under that system for the next 10 years without any material change in the law, that must qualify as the employer "reasonably and in good faith" understanding that its pay system was lawful.  To

---

[9]     A copy of the trial court's order is attached as Exhibit B to the Appendix of Evidence Cox filed with its classwide summary judgment motion.

-15-

punish Cox by imposing penalties for non-compliance with laws with which the courts expressly informed Cox that it had complied with the law would be fundamentally unfair and inconsistent with the text of Sections 203 and 226. *See Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1202-03 (2008) (where employer relied on taxing authority guidance that it did not owe further wages, imposition of waiting time penalties improper); *Cf. Frank v. McQuigg,* 950 F.2d 590, 598-99 (9th Cir. 1991) (Postal Service entitled to good faith defense where it relied on DOL opinion letters approving its practice).

### D. There is No Basis to Grant Partial Summary Judgment as to a Set Dollar Amount of PAGA Civil Penalties

Cox has established that the PAGA claims here are invalid. However, Plaintiff seeks summary judgment as to a set level of PAGA penalties if the Court finds that Cox has violated the law. Plaintiff falsely contends that, to the extent any wage statement was inaccurate because of its use of rounded hours rather than raw hours, it necessarily follows that the Court must impose a civil penalty of $250 per wage statement. That is not how PAGA operates. Rather, even if the Court were to determine that violations occurred that supported PAGA penalties of up to $250 per violation, the Court still has discretion to reduce the penalty to a lower level to the extent it finds that awarding the maximum level would be unjust:

> "In any action by an aggrieved employee seeking recovery of a civil penalty available under subdivision (a) or (f), a court may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to **do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory**."

Lab. Code § 2699(e)(2) (emphasis added).

There are many examples in published cases where courts awarded a PAGA penalty that was steeply discounted from the maximum level possible under PAGA. *See, e.g., Carrington v. Starbucks Corp.*, 30 Cal.App.5th 504, 517 (2018) ("Rather than imposing the full penalty of $50 per violation, which the court noted in this

-16-

instance would be unjust, arbitrary, and oppressive, the court imposed a penalty of only $5 per violation") *Fleming v. Covidien, Inc.*, 2011 WL 7563047, at *2, 4 (C.D. Cal. Aug. 12, 2011) (reducing penalty by more than 80% from default maximum). This is especially proper in the event of a purely technical violations, like an inaccuracy on a wage statement based on a newly announced interpretation of the wage statement law that no authority has ever announced before.

Accordingly, separate from the fact that there is no basis to hold Cox liable for any claims Plaintiff has asserted, it would be improper for the Court to grant summary judgment as to any non-zero level of PAGA penalties.

### E.  Plaintiff Has Failed to Establish the Recovery That Would Arise From a Finding of Liability As a Matter of Undisputed Fact

Finally, although the amount of damages and penalties awarded here should be zero because Cox fully complied with the law, if liability were simply assumed on all claims, Plaintiff has failed to set forth a competent basis to support the calculations of damages and statutory penalties he has set forth as undisputed fact. Rather, his expert simply announces conclusions on these topics.[10]  Cox's expert disputes each of these calculations.  Accordingly, there is no basis for a partial summary judgment ruling on damages and wage statement penalties here (unless the Court agrees there is no liability, in which case the figure would be zero).  Rather, any damages award should be decided in a separate proceeding if and only if Cox is held liable on one or more of the claims at issue in this case.

///
///
///
///
///

---

[10]    See 9/29/2021 Declaration of Scott Sternberg, ¶¶ 7-25 (Exhibit F to concurrently filed Supplemental Declaration of Thomas Kaufman).

## IV.    <u>CONCLUSION</u>

Based on the foregoing, Cox respectfully requests that this Court deny Plaintiff's summary judgment motion and grant classwide summary judgment in Cox's favor as to all the certified claims and to the derivative PAGA claims.

DATED: October 4, 2021            SHEPPARD MULLIN RICHTER & HAMPTON LLP


By      /s/ Thomas Kaufman
                    THOMAS R. KAUFMAN
                    Attorneys for Defendants
                    COX COMMUNICATIONS CAL., LLC,
                    and COX COMMUNICATIONS, INC.