## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-2002 JVS (JDEx)) | Date | August 1, 2022 |

| | |
|---|---|
| Title | Christone Feltzs v. Cox Communications Cal., LLC, et al. |

| | |
|---|---|
| Present: The Honorable | **James V. Selna, U.S. District Court Judge** |

| | |
|---|---|
| Lisa Bredahl | Not Present |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **[IN CHAMBERS] Order Regarding Motion for Final Settlement Approval and Motion for Approval of Attorneys' Fees**

Plaintiff Christone Feltzs ("Feltzs") filed a motion for final approval of a class action settlement with Defendants Cox Communications California, LLC ("Cox California") and Cox Communications, Inc. ("Cox Communications") (collectively, "Cox"). Dkt. 119; see Approval Mot., Dkt. 119-1. Feltzs also filed a motion for attorneys' fees, costs, and incentive awards. Dkt. 121; see Fees Mot., Dkt. 121-1. Cox did not oppose either motion.

For the following reasons, the Court **GRANTS** the motion for final approval of the settlement, **GRANTS** Class Counsel $616,666.66 in attorneys' fees and $40,000 in costs, and **GRANTS** a service payment of $7,500 to Feltzs.

### I. BACKGROUND

*A.    Allegations and Procedural History*

The facts of the case are well known to the Court and the parties. Cox is one of the nation's primary cable companies. Serrano Decl., Dkt. 35- 3 ¶ 2. Cox employs Universal Home Technicians ("Technicians") to support its residential cable customers. Id. During the relevant time period for this action, Cox employed more than 500 Technicians in California. Id. Feltzs was employed as a Technician trainee between March 26, 2018, and July 31, 2018. Feltzs Depo., Dkt. 35-3, at 13–14.

On July 26, 2019, Feltzs filed a Class Action Complaint in Orange County Superior Court. See Notice of Removal., Dkt. 1. On October 16, 2019, Feltzs filed a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-2002 JVS (JDEx))    Date    August 1, 2022

Title    Christone Feltzs v. Cox Communications Cal., LLC, et al.

First Amended Complaint ("FAC") adding a Private Attorneys General Act ("PAGA")
claim pursuant to Labor Code §§2699, *et seq*. Id. On October 18, 2019, Cox removed
the case to this Court. Id. On February 18, 2020, Feltzs filed a Second Amended
Complaint ("SAC"). See SAC, Dkt. No. 18. The SAC alleges (1) unpaid wages due to
illegal rounding; (2) failure to provide meal periods; (3) failure to pay all wages due at
separation; (4) failure to provide accurate wage statements; (5) derivative unfair
competition; and (6) Private Attorneys General Act ("PAGA") claims. Id.

On June 1, 2021, the Court granted a motion to certify the class with respect to the
time shaving/rounding and wage statement claims and denied a motion to certify the class
with respect to meal period issues. See Class Cert. Order, Dkt. 56. On August 27, 2021,
the Court denied Cox's motion to strike the PAGA representative meal claim. See Dkt.
63. On October 21, 2021, the Court granted Cox's motion for reconsideration and
granted the motion to strike the PAGA representative meal claim. See Dkt. 83. On
October 27, 2021, the Court denied cross-motions for summary judgment. See Dkt. 89.

The jury trial in this case was scheduled to begin on December 7, 2021. See Dkt.
23. On November 8, 2021, the parties engaged in a mediation session that eventually led
to this settlement. See Hatcher Decl., Dkt. 92-2, ¶ 9. On November 9, 2021, the parties
notified the Court that they had reached a settlement in principle and requested that the
trial date be vacated. See Dkt. 90. On January 21, 2022, the Court denied a motion for
intervention from Don Gil ("Gil"), another former Cox technician. See Dkt. 110. Gil
ultimately dropped his appeal of the Court's order denying intervention. See Dkt. 118.
On March 2, 2022, the Court granted the parties' motion for preliminary settlement
approval. See Preliminary Approval Order, Dkt. 117.

    B.    *Summary of the Settlement*

        1.    *The Settlement Class*

The Settlement Class is defined as:

the Certified Class and all current and former California hourly non-exempt
employees of Defendants who provided installation and maintenance services for
Defendants, at any point between June 2, 2021 to November 30, 2021, as a
Universal Home Technician In-training, Universal Home Technician, Field Service

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-2002 JVS (JDEx))    Date    August 1, 2022

Title    Christone Feltzs v. Cox Communications Cal., LLC, et al.

Technician, Field Service Representative.

Settlement Agreement, Dkt. 93-2, ¶ 3. The Certified Class is defined as:

> all current and former California hourly non-exempt employees of Defendants for the period of July 26, 2015 through June 1, 2021 who provided installation and maintenance services for Defendants as a Universal Home Technician In-training, Universal Home Technician, Field Service Technician, Field Service Representative and did not request exclusion from or opt-out of the certified class pursuant to the Notice of Pendency of Class Action and Right to Opt Out [Dkt. Nos. 57 and 58].

Id. ¶ 2.

### 2. Settlement Amount

The Settlement Agreement provides that Cox shall pay $1,850,000 to fund the settlement of the Settlement Class claims and the PAGA claims. Id. ¶ 45. The total sum, defined as the "Gross Fund Value," will be divided among payments to Settlement Class members, the PAGA payment for civil penalties, an award of class counsel fees and reimbursement for litigation expenses, and a service award for the class representative. Id. ¶ 44. Subject to the Court's approval, the parties agreed to allocate $100,000 of the Gross Fund Value to the payment of PAGA penalties. Id. ¶ 48. The California Labor & Workforce Development Agency ("LWDA") will receive $75,000 of the PAGA payment, while the remaining $25,000 will be allocated to the Aggrieved Employees on a pro rata basis. Id.

After deducting the PAGA penalties, attorneys' fees and costs, service award, and administration costs, the remainder of the Gross Fund Value shall be distributed to Class Members. Id. ¶ 50. Based on the Settlement's maximum allocations to the other costs, the remaining "Net Fund Value" distributed to Settlement Class members would be $1,063,333.34. Id.; see Hernandez Decl., Dkt. 119-6, ¶ 14. As discussed below, the fund will be allocated among the settlement class members based on the number of time periods where each class member was negatively impacted. See infra Section III.B. The 603 participating settlement class members will receive an estimated average gross payment of $1,804.86, with a maximum estimated gross payment of $4,545.06.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-2002 JVS (JDEx))         Date    August 1, 2022

Title    Christone Feltzs v. Cox Communications Cal., LLC, et al.

Hernandez Decl. ¶ 14.

    3.    *Attorneys' Fees and Costs*

    The Myers Law Group, A.P.C. ("Class Counsel") request an attorneys' fee award
of $616,666.66 and $40,000 in litigation costs.  See Fees Mot. at 1–2.  As part of the
Settlement Agreement, Cox agreed that Class Counsel may apply for up to one-third of
the Gross Fund Value, or $616,666.66, in reasonable attorneys' fees and up to $40,000 in
documented litigation costs.  Settlement Agreement ¶ 46.  The final amount of any award
remains subject to approval by the Court.  If the Court awards a lower amount in
attorneys' fees and costs, any reduction from the maximum award would be allocated to
the Net Fund Value and distributed to Class Members.  Id.

    4.    *Administrative Expenses and Service Awards*

    The parties mutually agreed to appoint ILYM Group, Inc. ("ILYM Group") as the
Settlement Administrator, subject to Court approval. Settlement Agreement ¶ 35.  ILYM
submitted a declaration that its fees and costs, including anticipated costs for completion
of the settlement administration are $15,000.  Hernandez Decl. ¶ 15.  The Settlement
Agreement allocated up to $15,000 for the administration costs of the Settlement to be
paid out of the Gross Fund Value. Settlement Agreement ¶ 49.  If that allocation
ultimately exceeded the awarded administration costs, any remainder would be allocated
to the Net Fund Value and distributed to Class Members.  Id.

    Feltzs also requests a service award in the amount of $15,000.  Fees Mot. at 2.  As
part of the Settlement Agreement, Cox agreed not to object to an application from Feltzs
for an enhancement award of up to $15,000.  Settlement Agreement ¶ 47.  Any award
granted by the Court will be paid from the Gross Fund Value.  Id. If a lower amount is
awarded, the remainder would be allocated to the Net Fund Value.  Id.

    5.    *Release*

    There are two types of claims released as part of this Settlement.  First, the
agreement provides a release for Class Claims:

    Upon Final Approval by the Court, the Participating Settlement Class Members

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-2002 JVS (JDEx))                 Date    August 1, 2022

Title    Christone Feltzs v. Cox Communications Cal., LLC, et al.

will be deemed to have released Cox and the Releasees from the Release of Class
Claims.  The Release of Class Claims shall include any and all claims, debts,
liabilities, demands, obligations, guarantees, costs, expenses, attorney's fees,
damages, action or causes of action, contingent or accrued, which would
reasonably arise from the factual allegations or legal claims asserted in the Feltzs
original, First Amended or Second Amended Complaint for the period of July 26,
2015 to the Release Effective Date.  The claims asserted in the Feltzs complaint
were for unpaid wages due to rounding, failure to provide meal periods, failure
to provide accurate wage statements, failure to pay final wages, and derivative Unfair
Competition Law claim.  The release granted herein includes claims arising under
California Labor Code, and any other claims based on other state or federal statute
or wage order provision reasonably arising from the same factual allegations
asserted in either the original, First Amended, or Second Amended complaints in
this Lawsuit but does not include claims for unpaid overtime or double-time wages
based on an invalid Alternative Workweek Schedule.

Id. ¶ 66.  Additionally, the Settlement Agreement provides for the release of PAGA
claims:

> Upon final approval by the Court, the Aggrieved Employees, the State of
> California, and the LWDA will be deemed to have released Cox and the Releasees
> from the Release of PAGA Claims. The Release of PAGA Claims shall include any
> and all claims, rights, demands, liabilities and causes of action for civil penalties
> under the Labor Code Private Attorneys General Act, Labor Code §2698, et seq.,
> causes of action that were pled in Plaintiffs First Amended Complaint and Second
> Amended Complaint and alleged in Plaintiff Feltzs' letter to the LWDA that
> Plaintiff filed on July 26, 2019, which included claims for unlawful rounding,
> failure to provide first and/or second meal periods, failure to provide accurate wage
> statements, and waiting time penalties and covers the period of time from July 26,
> 2018 to December 31, 2021. This does not include PAGA claims for unpaid
> overtime or double-time wages under an invalid Alternative Workweek Schedule
> claim.

Id. ¶ 67.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-2002 JVS (JDEx))                    Date    August 1, 2022

Title    Christone Feltzs v. Cox Communications Cal., LLC, et al.

6.    *Notice*

The Court previously approved the parties' notice plan, subject to an extension of the deadline to object to the settlement or opt out. See Preliminary Approval Order at 19–20. On March 30, 2022, ILYM Group mailed a notice packet containing the Court-approved language to all 603 Settlement Class Members at the addresses provided by Cox. Hernandez Decl. ¶¶ 4–7. Eleven notice packets were returned as undeliverable. Id. ¶ 8. ILYM Group was able to identify new addresses for six of those class members through skip tracing. Id. ¶ 9. Five notice packets were ultimately deemed undeliverable after skip tracing was unsuccessful. Id. ¶ 10.

7.    *Opt-Out and Objection Process*

The Notice provided to Settlement Class Members informed them that they may opt out of the Settlement, dispute the information used to calculate their settlement payment, or object to the terms of the Settlement by sending a request via mail to ILYM Group within sixty days of the mailing of the Notice Packet. See Notice Packet, Dkt. 119-6, Ex. A, at 5. Consistent with California law, no Aggrieved Employee could opt out of or be excluded from participating in the settlement of the PAGA claims. Settlement Agreement ¶ 64.

C.    *Results of Notice*

After performing skip tracing, ILYM Group was able to successfully mail Notice Packets to 598 of the 603 class members. Hernandez Decl. ¶¶ 7, 10. The deadline for submitting a request for exclusion from the settlement or an objection was May 31, 2022. Notice Packet at 5. As of June 13, 2022, ILYM Group had not received any objections to the Settlement or requests for exclusion. Hernandez Decl. ¶¶ 11–12.

D.    *Request for Judicial Notice*

As a preliminary matter, Feltzs filed requests for judicial notice in support of the motion for final settlement approval. See Dkt. 120. Under Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record if the facts are not "subject to reasonable dispute." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); see Fed. R. Evid. 201(b). After review, the Court holds that all of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-2002 JVS (JDEx))          Date   August 1, 2022

Title   Christone Feltzs v. Cox Communications Cal., LLC, et al.

documents for which Feltzs seeks judicial notice are matters of public record that are not subject to reasonable dispute.  Accordingly, the Court **GRANTS** the request for judicial notice.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 23(e) states that "[t]he claims … of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . or compromised only with the court's approval." "The parties must provide the court with information sufficient to enable it to determine whether to give notice of the propos[ed] [settlement] to the class." Fed. R. Civ. P. 23(e)(1)(A).  "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the propos[ed] [settlement] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Id. 23(e)(1)(B)(i)(ii).

## III. DISCUSSION

### A.    Class Certification

The Court preliminarily certified the proposed Class in its prior order.  See Preliminary Approval Order at 12.  No party has given the Court reason to revisit that decision.  Therefore, for the reasons specified in the Preliminary Approval Order, the Court certifies the Settlement Class for final approval of the Settlement.

### B.    Approval of the Proposed Class Settlement

Under Rule 23(e)(2), if the proposed settlement would bind class members, the Court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate.  To make this determination, the Court must consider the following factors:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-2002 JVS (JDEx))                Date   August 1, 2022

Title      Christone Feltzs v. Cox Communications Cal., LLC, et al.

   (ii) the effectiveness of any proposed method of distributing relief to the
class, including the method of processing class-member claims;
   (iii) the terms of any proposed award of attorneys' fees, including timing of
payment; and
   (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

  Before the revisions to the Federal Rule of Civil Procedure 23(e), the Ninth Circuit
had developed its own list of factors to be considered. See, e.g., In re Bluetooth Headset
Products Liab. Litig., 654 F.3d 935, 964 (9th Cir. 2011) (citing Churchill Vill., L.L.C. v.
Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)). The revised Rule 23 "directs the parties
to present [their] settlement to the court in terms of [this new] shorter list of core
concerns[.]" Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "The goal of
[amended Rule 23(e)] is . . . to focus the [district] court and the lawyers on the core
concerns of procedure and substance that should guide the decision whether to approve
the proposal." Id.

    i.  *Adequacy of Representation by Class Representatives and Class
       Counsel*

  Under Rule 23(e)(2)(A), the first factor to be considered is whether the class
representatives and class counsel have adequately represented the class. This analysis
includes "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ.
P. 23(e)(2)(A), 2018 Advisory Committee Notes.

  The Court finds that there has been adequate representation by the class
representatives and class counsel. This case was extensively litigated since the complaint
was filed more than two years ago. See Compl., Dkt. No. 1. Class Counsel analyzed
more than a thousand pages of documents, engaged in multiple fact and expert witness
depositions, litigated a motion to compel deposition, engaged an expert to provide data
analysis and reports, and reviewed Cox's expert reports. Hatcher Decl., Dkt. 92-2, ¶¶
9–12. This action also involved extensive motion practice, including a motion to remand,
multiple motions regarding class certification, three motions for summary adjudication, a
motion to strike PAGA claims, and a motion for reconsideration of the motion to strike

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-2002 JVS (JDEx)) | Date | August 1, 2022 |
|---|---|---|---|

| Title | Christone Feltzs v. Cox Communications Cal., LLC, et al. |
|---|---|

PAGA claims. <u>Id.</u> At the time of mediation, the case was set to proceed to trial in less than a month. Thus, this factor weighs in favor of final approval of the settlement.

### ii. *Negotiated at Arm's Length*

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes; <u>accord Pederson v. Airport Terminal Servs.</u>, 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) (the oversight "of an experienced mediator" reflected noncollusive negotiations).

The Court finds that the Settlement has been negotiated at arm's length. Notably, the Settlement Agreement is the result of a mediation before Steven Rottman, Esq., an experience private mediator. Hatcher Decl., Dkt. 92-2, ¶¶ 8–12. The negotiations took place after the extensive motion practice in this case, and just thirty days before the parties were scheduled to proceed to trial. The Court is satisfied that the conduct of the negotiations was appropriate to protect the Class's interests.

### iii. *Adequacy of Relief Provided for the Class*

The third factor the Court considers is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee Notes.

The Court agrees with the parties that, at a high level, the relief is generally adequate. Based on a Net Fund Value of $1,063,333.34, the 603 class members will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-2002 JVS (JDEx))                Date    August 1, 2022

Title    Christone Feltzs v. Cox Communications Cal., LLC, et al.

receive an average gross payment of $1,804.86, with the highest gross payment estimated at $4,545.06. Hernandez Decl. ¶ 14. Feltzs estimates that if all of the claims were certified as class actions, proceeded to trial, and resulted in favorable verdicts, Cox's total exposure would be approximately $8,678,748.22, excluding PAGA civil penalties. Hatcher Decl., Dkt. 92-2, ¶ 12.

However, the Court only certified a class for the illegal rounding claims, with an estimated maximum value of $622,447.54, and the wage statement claims, with an estimated maximum value of $1,438,350.00. See Approval Mot. at 16–17; Dkt. No. 77-7 ¶¶ 3b, 15–16. The Settlement allocates 80% of the Net Fund Value, or approximately $850,666.67 to those claims. Settlement Agreement ¶ 52. This equates to the Settlement paying approximately 41% of the estimated maximum value of those claims.

The Settlement allocates the remaining 20% of the Net Fund Value , or $212,666.67, to pay the remaining class claims in the case. Approval Mot. at 16. Cox's estimated maximum exposure for those claims is $5,373,863.82 for the meal period claims and $1,244,086.86 for the waiting time penalties. Hatcher Decl., Dkt. 92-2 ¶ 16. The Settlement equates to approximately 3.2% of the maximum total value of those claims. While this is a significant discount, the Court agrees that it is appropriate given the previous denial of class certification and the extensive issues that plaintiffs would face in prosecuting those claims.

Thus, the Court now turns to consideration of the factors listed in Rule 23(e)(2)(C).

   a.  *Costs, Risks, and Delay of Trial and Appeal*

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. Here, the costs, risks, and delay of trial and appeal favor preliminary approval. "Proceeding in this litigation in the absence of settlement poses various risks such as . . . having summary judgment granted against Plaintiffs[] or losing at trial. Such considerations have been found to weigh heavily in favor of settlement." Graves v. United Indus. Corp., No. 2:17-cv-06983-CAS-SKx, 2020 WL 953210, at *7 (C.D. Cal. Feb. 24, 2020) (citing Rodriguez v. West Publishing Corp., 563 F.3d 948, 966 (9th Cir. 2009); Curtis-Bauer v. Morgan Stanley & Co., Inc., No. C 06-3903 THE, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-2002 JVS (JDEx))                Date    August 1, 2022

Title       Christone Feltzs v. Cox Communications Cal., LLC, et al.

For the uncertified class claims, there is a strong likelihood that there would be no recovery in the absence of a settlement. Feltzs would have had to successfully appeal the denial of class certification and then overcome substantial issues regarding the manageability of trying the claims. The certified class claims also faced significant risk. The parties reached the Settlement Agreement thirty days prior to trial. As the Court previously acknowledged, there is no bright-line rule under California law to determine whether or not an employer's rounding practice is neutral over time. See Dkt. 89 at 9. Even if the Plaintiffs were successful at trial, they would still face substantial delays, costs, and risk before reaching the ultimate resolution of this case. This subfactor therefore favors final approval of the Settlement Agreement because in its absence there would be inevitable costs, high risks, and delay.

### b.    Effectiveness of Proposed Method of Relief Distribution

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Id.

The method of distributing relief here is well-tailored to ensure that it is effective. As discussed above, ILYM Group sent Notice to all of the Settlement Class Members that included the calculation of their projected individual payment. See Hernandez Decl. ¶¶ 7–10; Notice Packet at 3. No class members opted out or requested exclusion from the Settlement. Hernandez Decl. ¶¶ 11–12. The Settlement Agreement provides that ten business days after the effective date of final approval of this settlement, ILYM Group will mail individual payments to each of the Participating Settlement Class Members, at which point they will have 180 days to cash the check. Settlement Agreement ¶¶ 57–58. This is a reasonable means of distributing relief, thus this subfactor weighs in favor of approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-2002 JVS (JDEx)) | Date | August 1, 2022 |
|---|---|---|---|

| Title | Christone Feltzs v. Cox Communications Cal., LLC, et al. |
|---|---|

        *c.*     *Terms of Proposed Award of Attorneys' Fees*

Third, the Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(c). In considering the proposed award of attorney's fees, the Court must scrutinize the Settlement for three factors that tend to show collusion: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." Briseño v. Henderson, 998 F.3d 1014, 1023 (9th Cir. 2021) (internal quotation marks omitted) (citing In re Bluetooth, 654 F.3d at 947). The Court must consider whether these factors exist in post-class certification settlements. Id. at 1025.

Class Counsel seek an award of $616,666.66 in attorneys' fees. Fees Mot. at 1. After considering Class Counsel's motion for attorney's fees, the Court concludes that the amount in attorney's fees is reasonable relative to the benefits to the Settlement Class Members. See infra Section III.E. While Cox does not oppose the attorneys' fee request, that does not support a finding of collusion in this instance. See Rodriguez, 563 F.3d at 961 n.5 (agreeing to sum certain of attorneys' fees is not evidence of collusion because it is consistent with the defendants' interest in minimizing their own liability). Critically, the Settlement Agreement does not include a reverter clause. If the attorneys' fees award is ultimately reduced, any reduction will automatically revert back to the Net Fund Value and be distributed to the Class Members. Cf. Bluetooth, 654 F.3d at 949 (holding that a court must give greater scrutiny to the reasonableness of a fee award where a clear sailing provision was paired with a kicker that reverted unpaid fees to the defendant instead of the class members). In light of the structure of the Settlement Agreement, Cox's non-opposition to the proposed attorneys' fees award is not indicative of collusion. Thus, this factor weighs in favor of approval.

        *d.*     *Agreement Identification Requirement*

The Court must also evaluate any agreement made in connection with the proposed Settlement. See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Class Counsel state that there is no agreement made outside of the Settlement Agreement. Hatcher Decl., Dkt. No. 92-2, ¶

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-2002 JVS (JDEx))    Date    August 1, 2022

Title    Christone Feltzs v. Cox Communications Cal., LLC, et al.

9.

Based on the foregoing analysis, the Court finds that the adequacy of relief for the Class weighs in favor of approval of the Settlement Agreement.

iv.    *Equitable Treatment of Class Members*

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes.

There are three key distinctions made among class members. First, the Settlement Agreement allocates 80% of the Net Fund Value to the claims for time rounding and wage statement penalties, and the remaining 20% of the Net Fund Value to the other non-PAGA claims. *See* Settlement Agreement ¶¶ 52-53. Thus, the Settlement pays 41% of the estimated maximum value of the time rounding and wage statement claims, and just 3.2% of the estimated maximum value of the remaining claims. This distinction is reasonable in light of the fact that the Court only certified a class with respect to the rounding and wage statement penalties claims. The Court finds that the Settlement "takes appropriate account of differences" between the certified and uncertified claims and their dramatically different likelihood of success. *See* Rule 23(e)(2)(D), 2018 Advisory Cmte. Notes.

Next, within each category of claim, each class member's payment will be calculated based on the number of individual pay periods where the class member was affected divided by the total number of pay periods affected. *See* Settlement Agreement ¶¶ 52, 53. 6% of the settlement class will receive payments in excess of $4,000 and 52% of the Settlement Class will receive payments in excess of $1,500. Hatcher Decl., Dkt. 119-2, ¶ 19. While not a perfect proxy, relying on the number of pay periods worked appears to be a reasonable and efficient way of effectively determining how to distribute relief among Class Members with variable claims.

Finally, Feltzs requests a service award of $15,000 for his role as class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-2002 JVS (JDEx))    Date    August 1, 2022

Title    Christone Feltzs v. Cox Communications Cal., LLC, et al.

representative.  Cox agreed not to object to an application from Feltzs for an enhancement award of up to $15,000.  Settlement Agreement ¶ 47. As discussed below, the Court finds that the requested enhancement award is excessive and grants Feltzs an award of $7,500.  See infra Section III.F.  Yet despite that request,  the Settlement Agreement as a whole still treats class members equitably.  The $7,500 difference between Feltzs' request and the award approved by the Court will be allocated to the Net Fund Value and distributed to the Settlement Class Members.  Settlement Agreement ¶ 47.  Thus, the Court finds that the relief is appropriately apportioned among the class.

Given the preceding analysis, the Court concludes that the Settlement meets the requirements of Rule 23(e)(2).

> *C.    The Proposed Settlement Meets the Notice Requirements Under Fed. R. Civ. P. 23(c)(2)(B).*

Under Rule 23(c)(2)(B), "for any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2)(B) further states that the notice may be made by one of the following: United States mail, electronic means, or another type of appropriate means.  Id.  "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Id.

The Court previously approved the parties' plan for sending notice to potential Class Members.  See Dkt. 117 at 19–20.  Consistent with the plan approved by the Court, Cox provided contact information for all of the potential settlement class members and ILYM Group successfully mailed the Notice Packet to 598 of the 603 class members. Hernandez Decl. ¶¶ 7,10.  The notice previously approved by the Court and implemented by ILYM Group satisfies this standard. Accordingly, the Court finds that the notice to the Settlement Class was fair, adequate, and reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-2002 JVS (JDEx))                    Date    August 1, 2022

Title    Christone Feltzs v. Cox Communications Cal., LLC, et al.

Given the foregoing analysis, the Court **GRANTS** Feltzs' motion seeking final approval of the Settlement.

D.    *Final Approval of the PAGA Settlement*

The final component of the Settlement Agreement concerns the PAGA claims. While the underlying facts are similar, the PAGA action is procedurally distinct from the class claims. See Baumann v. Chase Inv. Servs. Corp., 747 F.3d 1117, 1124 (9th Cir. 2017) ("Rule 23 and PAGA are more dissimilar than alike. A PAGA action is at heart a civil enforcement action on behalf of and for the benefit of the state, not a claim for class relief."). "Unlike Rule 23(c)(2), PAGA has no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action." Sakkab v. Luxottica Retail N. Am., Inc., 803 F.3d 425, 436 (9th Cir. 2015) (quoting Baumann, 747 F.3d at 1123). Those procedural requirements are not necessary to protect due process rights in the context of a PAGA action because "absent employees do not own a personal claim for PAGA civil penalties, and whatever personal claims the absent employees might have for relief are not at stake." Williams v. Superior Court, 3 Cal. 5th 531, 547 n.4 (2017) (internal citations omitted).

While the Court does not evaluate the PAGA settlement under the Rule 23 criteria, it must approve the settlement of an action brought under PAGA to "ensur[e] that any negotiated resolution is fair to those affected." Williams, 3 Cal. 5th at 549. "[A] trial court should evaluate a PAGA settlement to determine whether it is fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws." Moniz v. Adecco USA, Inc., 72 Cal. App. 5th 56, 77 (2021); see Williams, 3 Cal. 5th at 546 (describing how the Legislature "sought to remediate present violations and deter future ones" by passing PAGA). Through this review, the trial court "must scrutinize whether, in resolving the action, a PAGA plaintiff has adequately represented the state's interests and hence the public's interest." Moniz, 72 Cal. App. 5th at 89.

The Court previously determined that the PAGA Settlement was fair and reasonable. See Preliminary Approval Order at 20–25. In response to the concerns raised by Gil as an amicus, the Court concluded the class notice was sufficiently detailed, the overall settlement was fair, and that the parties complied with PAGA's procedural

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-2002 JVS (JDEx)) | Date | August 1, 2022 |

| | |
|---|---|
| Title | Christone Feltzs v. Cox Communications Cal., LLC, et al. |

requirements. Id. Consistent with Labor Code § 2699(l)(3), Feltzs submitted the proposed settlement to the LWDA. See Dkt. 123. There have been no new objections raised to warrant the Court revisiting its prior conclusion that the PAGA Settlement is fair, reasonable, and adequate.

Accordingly, the Court **GRANTS** final approval of the PAGA Settlement.

### E.    Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'" Staton, 327 F.3d at 963 (quoting Fed. R. Civ. P. 23(e)). "The reasonableness of any fee award must be considered against the backdrop of the 'American Rule,' which provides that courts generally are without discretion to award attorneys' fees to a prevailing plaintiff unless (1) fee-shifting is expressly authorized by the governing statute; (2) the opponents acted in bad faith or willfully violated a court order; or (3) 'the successful litigants have created a common fund for recovery or extended a substantial benefit to a class.'" In re Bluetooth, 654 F.3d at 941 (quoting Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 275 (1975) (Brennan, J., dissenting)).

"In class action cases where the defendants provide monetary compensation to the plaintiffs, 'courts have discretion to employ either the lodestar method or the percentage-of-recovery method.'" In re Hyundai and Kia Fuel Economy Litig., 926 F.3d 539, 570 (9th Cir. 2019) (en banc) (quoting In re Bluetooth, 654 F.3d at 942). Thus, the court evaluates the fee request under both methods.

#### i.    Percentage Method

The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). The benchmark is not rigid – it leaves room for the consideration the circumstances of the case. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047-50 (9th Cir. 2002). Relevant factors include the results achieved, the risk of the litigation, the skill required, and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-2002 JVS (JDEx)) | Date | August 1, 2022 |
|---|---|---|---|

| Title | Christone Feltzs v. Cox Communications Cal., LLC, et al. |
|---|---|

contingent nature of the fee.  Id.  The Court has discretion in determining what constitutes the total value of the settlement in the denominator.  See In re Online DVD, 779 F.3d at 953.  "[W]here the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained may courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees."  Staton, 327 F.3d at 974.

Here, Class Counsel request a fee award of $616,666.66, or one-third of the $1,850,000 gross fund value.  While this is more than the Ninth Circuit's 25% benchmark, they contend that the circumstances of the case support a larger fee award.  See Fees Mot. at 6–9.  After consideration of the relevant factors, the Court agrees that the 33% fee request would be a reasonable departure from the benchmark.  As discussed above, this case entailed significant work by class counsel and recovery was uncertain.  There were unsettled legal questions and Cox presented compelling defenses to some of the claims at issue.  Class Counsel also assumed the risk of litigating this case on a contingency basis.  In sum, these circumstances support an upward departure from the benchmark.

However, the Court notes that some of the additional rationale provided by Class Counsel is unpersuasive.  While adequate, there is no support for the contention that the monetary recovery is so extraordinary that it warrants a departure from the benchmark.  The amount received by each individual class member is already captured by the total value of the settlement.  Class Counsel also argue the Court should consider Cox's change to its time-rounding practices as non-monetary relief. But the Court did not award any injunctive relief and there is no evidence to support the conclusion that this lawsuit was the cause of that change.  See Fees Mot. at 6–7; Phelps Depo., Dkt. 81-2, at 7–10.  And while one-third of the common fund may be the market rate that is routinely awarded by courts, this does not change the fact that under Ninth Circuit case law the benchmark recovery is 25%.  Regardless, in light of the risk assumed by Class Counsel and the uncertainty of recovery, a modest departure from that benchmark is appropriate here.

Thus, the Court finds that the request for $616,666.66 in attorneys' fees is reasonable under the percentage method.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-2002 JVS (JDEx))                Date    August 1, 2022

Title    Christone Feltzs v. Cox Communications Cal., LLC, et al.

ii.    *Lodestar Method*

As a cross-check, courts routinely compare the "percentage of the fund" calculation with the lodestar method to ensure that class counsel is not overcompensated. Vizcaino, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." In re Bluetooth, 654 F.3d at 941 (citing Staton, 327 F.3d at 965). "Because of a 'strong presumption that the lodestar is sufficient,' a multiplier is warranted only in 'rare and exceptional circumstances.'" Chambers v. Whirlpool Corp., 980 F.3d 645, 665 (9th Cir. 2020) (quoting Purdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546-52 (2010)). Before applying a multiplier, "the district court must 'decide whether to enhance or reduce the lodestar figure based on an evaluation' of the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975), 'that are not already subsumed in the initial lodestar calculation.'" Parsons v. Ryan, 949 F.3d 443, 467 (9th Cir. 2020) (quoting Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 & n.4 (9th Cir. 2000)). The factors listed in Kerr include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

526 F.3d at 70 (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)). "Moreover, a multiplier must be 'supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high.'" Id. (quoting Van Gerwen v. Guarantee Mut. Life Ins. Co., 214 F.3d 1041, 1045 (9th Cir. 2000)).

Class Counsel submit declarations stating that they spent 954.1 hours on this case for a total lodestar of $451,157.50. Hatcher Decl., Dkt. 119-2, ¶ 15; Hatcher Decl., Ex. A, Dkt. 119-3. The hourly rates for the attorneys are between $325 and $750, consistent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-2002 JVS (JDEx))      Date   August 1, 2022

Title   Christone Feltzs v. Cox Communications Cal., LLC, et al.

with what other courts have found to be reasonable rates in similar wage and hour litigation.  See, e.g., Castellano v. Penn-Ridge Transp., Inc., 2020 WL 7786659, at *10–12 (C.D. Cal. Nov. 3, 2020).

The requested fee award represents a 1.37 multiplier over the lodestar.  Fees Mot. at 9.  Class Counsel argue that several factors support the multiplier in this case. See Fees Mot. at 11–14. The Court agrees. As discussed elsewhere in this Order, this case presented challenging legal questions and the facts were such that the outcome of the matter was uncertain.  Despite those obstacles, Class Counsel were able to obtain a successful outcome on behalf of the class members. Additionally, Class Counsel took this case on a contingency basis, creating a risk that they would not receive any payment if counsel was ultimately unsuccessful.

While a multiplier is not applied in every case, the requested multiplier of 1.37 is within the range of typical lodestar multipliers in this circuit.  See Vizcaino, 290 F.3d at 1051 n.6 (finding that multipliers in common fund cases ranging from 0.6 to 19.6, with 83% falling between 1.0 and 4.0, and 54% in the 1.5-3.0 range”).  See also In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 341 (9th Cir. 1998) (“[W]e are cognizant that [m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied[.]”) (internal quotation marks omitted).  Courts find multipliers to be appropriate particularly in cases like this where the contingent nature of the fee creates a significant risk of non-recovery.  “It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for . . . contingency cases.”  In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994).  The Court finds that the lodestar analysis does not call into question the reasonableness of the requested attorneys’ fees.

Thus, the Court **GRANTS** Class Counsel $616,666.66 in attorneys’ fees.

*F.    Service Payments*

Class Counsel also seek a $15,000 service payment for Feltzs.  Courts have discretion to issue incentive awards to class representatives. Rodriguez, 563 F.3d at 958–59.  The awards are “intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-2002 JVS (JDEx))          Date    August 1, 2022

Title    Christone Feltzs v. Cox Communications Cal., LLC, et al.

the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id.  Courts evaluate incentive awards relative to named plaintiff[s'] efforts, considering "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." Staton, 327 F.3d at 977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)) (alterations in original).  Courts also compare the incentive awards to the total settlement by looking at "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." In re Online DVD, 779 F.3d 934, 947 (9th Cir. 2015) (quoting Staton, 327 F.3d at 977).

In support of his request, Feltzs presents documentation of the effort he expended towards this action, including sitting for a deposition, attending the mediation, and communicating with Class Counsel regarding Cox's policies. See Feltzs Decl. 119-5 ¶ 18.  In total, he estimates that he spent over thirty hours working on this matter. Id. Additionally, Feltzs faced financial risk if Cox sought to recover the cost of the defense. Id. ¶¶ 14–15.  Feltzs also asserts that he fears that serving as the class representative may have a negative effect on his employability. Id. ¶ 14.  While there may be some potential impact on future employment, the Court notes that Feltzs brought this action more than eleven months after his employment with Cox ended.

Awarding Feltzs a payment of $15,000 would be more than 8 times the average class member recovery of $1,804.86.  In comparison to the total settlement amount paid to class members, this represents 0.8 percent of the Gross Fund Value.  This is within the range of what other courts have found reasonable. See In re Online DVD, 779 F.3d at 947-948 (approving incentive payment of $5,000 where it totaled 0.17% of the settlement fund); Staton, 327 F.3d at 976-77 (rejecting incentive awards of $30,000 totaling 6% of the settlement fund).

However, the Court finds that the requested service award would provide excessive compensation in light of the effort expended.  Feltzs's declaration states that he spent a total of thirty hours working on this case. Feltzs Decl. ¶ 18. A service award of $15,000 would constitute an hourly rate of compensation of $500. This Court has previously found service payments to be unreasonably large even when the hourly rate is significantly lower.  See Alvarez v. Sirius XM Radio, Inc., 2021 WL 1234878, at *12-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-2002 JVS (JDEx)) | Date | August 1, 2022 |
|---|---|---|---|

| Title | Christone Feltzs v. Cox Communications Cal., LLC, et al. |
|---|---|

*13 (C.D. Cal. Feb. 8, 2021) (finding $5,000 payments representing hourly rates between $250 to $417 to be excessive); Palmer v. Pier 1 Imports, 2018 WL 8367495, at *6 (C.D. Cal. July 23, 2018) (reducing $7,500 service payment that would have provided for an hourly rate of $375). The Court finds that the requested award here is excessive as well. Given the size of the recovery secured for the Settlement Class and the risks undertaken by Feltzs, the Court will reduce Feltzs' service payment so that it reflects an hourly rate of $250.

Thus, the Court **GRANTS** a service award to Feltzs in amount of $7,500. Per the Settlement Agreement, the balance of the request reverts back to the Net Fund Value to be divided pro rata among the Settlement Class Members.

G.    *Litigation Expenses*

Finally, Class Counsel seek reimbursement of $40,000 in litigation expenses. Fees Mot. at 14; Hatcher Decl., Dkt. 119-2, ¶¶ 16–17, Ex. B. "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." In re Omnivision Techs., 559 F. Supp. 2d at 1048. The Court has considered the details of the litigation expenses that have been submitted and finds them to be reasonable. See Hatcher Decl., Ex. B, Dkt. 119-4. The Court therefore **GRANTS** the motion with respect to litigation expenses.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the motion for final approval of the settlement, **GRANTS** Class Counsel $616,666.66 in attorneys' fees and $40,000 in costs, and **GRANTS** a service payment of $7,500 to Feltzs.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |